# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

MARGARET R. BRANTLEY,            )
                                 )
            Plaintiff,           )
                                 )
      v.                         )      Civil Action No. 06-1137 (ESH)
                                 )
DIRK KEMPTHORNE, Secretary       )
United States Department of the Interior, )
                                 )
            Defendant.           )
_____)

## DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY,
## MOTION FOR SUMMARY JUDGMENT

Defendant, Dirk Kempthorne, Secretary, United States Department of the Interior,

though his undersigned counsel, moves the Court, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, to dismiss Plaintiff's claims on the grounds that these claims

fail to state a claim upon which relief can be granted.  Alternatively, Defendant moves the

Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary

judgment on the grounds that no genuine issue of material fact exists and Defendant is

entitled to judgment as a matter of law.  In support of this motion, the Court is

respectfully referred to the accompanying Statement of Material Facts To Which There Is

No Genuine Issue and Memorandum of Points and Authorities in Support thereof,

attached hereto.  A proposed order is also attached.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/  Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Alexander Shoaibi
ALEXANDER SHOAIBI
Assistant United States Attorney
555 4th Street, N.W., Room 4218E
Washington, D.C. 20530
(202) 514-7236


  /s/  Judith A. Kidwell
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W., Room 4905E
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                  )
**MARGARET R. BRANTLEY,**         )
                                  )
       **Plaintiff,**         )
                                  )
    **v.**                       )    **Civil Action No. 06-1137 (ESH)**
                                  )
**DIRK KEMPTHORNE, Secretary**    )
**United States Department of the Interior,** )
                                  )
      **Defendant.**        )
_____)__

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

Pursuant to Fed. R. Evid. 56 and Local Rule 7(h), defendant submits the following

Statement of Material Facts To Which There Is No Genuine Issue.

### Background

1.    Plaintiff, Margaret R. Brantley, is an African-American female over the age

of 40.  She is an administrative officer, GS-11, Step 10, with the U.S. Department of the

Interior ("Department").  Plaintiff graduated from high school in 1966.  After several

other jobs, she  began her employment as a secretary (GS-5) with the Department in 1977.

Complaint ("Compl.") ¶ 12; Defendant's Exhibit ("Def. Exh.") A, Deposition of Plaintiff

Margaret Brantley ("Brantley Dep.") at 12:19-24, 13:15-16, 14:6-11, 20:15-18.

2.    In 1980, Plaintiff filed a complaint alleging discrimination with respect to a

nonpromotion claim.  While her first case was pending, Plaintiff filed a second claim

alleging discrimination concerning her nonpromotion.  In 1987, pursuant to a settlement

of her claims, Plaintiff was transferred to another office, became an administrative assistant and received several grade increases, including an eventual grade increase to a GS-11 in 1988. Def. Exh. A (Brantley Dep.) at 30:4-8, 31:4-25, 32:1-25, 33:1-25, 34:1-20, 36:13-18.

3.    Plaintiff contends that her retaliation claims are based on her discrimination case filed in 1980. Def. Exh. A (Brantley Dep.) at 122:25, 123:1-25, 124:1-9.

<u>Plaintiff's Supervisors</u>

4.    Nancy Davis was Plaintiff's supervisor for about one year from 1987 until 1988. Phil Haymond was Plaintiff's supervisor from 1988 until 1990. Albert Camacho was Plaintiff's second-line supervisor from 1988 through about July of 1991. Def. Exh. A. (Brantley Dep.) at 39:2-24, 40:1-21, 41:6-17.

5.    In 1995, as a result of a reduction in force ("RIF"), Plaintiff was reassigned from the Graphics Office and temporarily reassigned to the Office of the Secretary for one month as a staff assistant for B.J. Thornberry. Def. Exh. A (Brantley Dep.) at 44:20-25, 45:1-7, 17-25, 46:1-2.

6.    Plaintiff is not alleging that she was terminated as a result of the RIF, and she did not contact an EEO counselor nor file a formal complaint with the Department concerning her RIF. Def. Exh. A (Brantley Dep.) at 82:1-25, 83:1-2.

7.    After approximately one month in the Office of the Secretary, Plaintiff was reassigned to the Office of Audit and Evaluation and, subsequently, her title changed to

administrative officer.  Def. Exh. A (Brantley Dep.) at 45:8-25.

8.      Plaintiff's supervisor from 1995 to approximately 2000, was Linda
Richardson.  Plaintiff never requested a promotion from Linda Richardson.  After Linda
Richardson left the Office of Audit and Evaluation, Jerry Fiely became Plaintiff's first-
line supervisor.  Def. Exh. A (Brantley Dep.) at 46:12-25, 47:18-20; Def. Exh. B
(Transcript of Margaret Brantley) ("Brantley Tr."), at 17:9-13.

9.      Jerry Fiely was Plaintiff's first-line supervisor after Linda Richardson.
Jerry Fiely is currently employed in the Office of the CFO.  He is the Director of the
Office of Audit and Evaluation.  He has been the Director since 2001.  Jerry Fiely was
initially hired in 1997, as Deputy Director of the Office of Audit and Evaluation.  The
Director at that time was Linda Richardson.  Linda Richardson left the office sometime
before 2001.  Linda Richardson was Plaintiff's supervisor, however, Jerry Fiely provided
Plaintiff direction and prepared her performance appraisals and standards through 2001.
Def. Exh. C, Deposition of Jerry Fiely ("Fiely Dep.") at 7:4-17, 8:1-10, 9:1-21; 10:1-13,
13:7-17.

10.     Until he retired in June 2003, James McDivitt, was the Deputy Assistant
Secretary for Management ("Deputy ASM") in the Office of the Assistant Secretary for
Indian Affairs ("ASIA").  He was responsible for overseeing part of a reorganization of
the Office of the ASIA and the Bureau of Indian Affairs ("BIA") which started being
implemented in 1999-2000.  This reorganization was the result of a 1999 study by the

National Academy of Public Administration.  The reorganization was put on hold during

certain periods of time because of a change in administrations.  As a result of the

reorganization, employees of the  Office of the ASIA and the BIA were eventually

realigned or reassigned into new organizations.  Def. Exh. D, (Executive Summary, *A*

*Study of Management and Administration: The Bureau of Indian Affairs* (1999)); Def.

Exh. E, Deposition of James McDivitt (" McDivitt Dep.") at 8:1-6, 15:18-21, 16:2-7, 17-

19;  Def. Exh. F, Deposition of Debbie Clark ("Clark Dep.) at 20:1-13.

     11.    Debbie Clark was Plaintiff's second-line supervisor from approximately

2000 until April 2003.  Def. Exh. F, Clark Dep. at 20:1-8.

     12.    Until he retired in June 2003, James McDivitt worked with Plaintiff on

budget issues, because Jerry Fiely's expertise was more on the finance side.  After

Plaintiff filed her informal complaint with the Department, Mr. McDivitt requested a desk

audit of Plaintiff's position.  The desk audit did not support an accretion of duties for

Plaintiff's position. Def. Exh. E ( McDivitt Dep.) at 23:18-19, 28:14-21; Def. Exh. G

(Transcript of Donna Brannon ("Brannon Tr."), at 9:19-25, 10:1; Def. Exh. F, (Clark

Dep.) at 48:20-21, 49:1-3.

     13.    After James McDivitt's retirement, Woodrow Hopper became Acting

Deputy ASM.  Mr. Hopper is a 62-year old male.  His race is mixed and he has brown

skin color.  Mr. Hopper had no knowledge of Plaintiff's prior EEO activity.  Def. Exh. A

(Brantley Dep.) at 49:17-18; Def. Exh. H (Transcript of Woodrow Wilson Hopper)

("Hopper Tr.") at 3:19-25, 4:1-25, 5:1-5.

14.    Debbie Clark was ultimately selected to fill the position of Deputy ASM. She has been the Deputy ASM in the Office of the ASIA for approximately two and one-half years.   Ms. Clark has been employed at the Department since November 2000, and she had been the Chief Financial Officer ("CFO") until September 2004.  Clark Dep. at 7:3-10, 8:6-16, 19:7-21, 20:1-8.

15.    There are approximately 700 employees in the Office of the Assistant Secretary for Indian Affairs. Def. Exh. F (Clark Dep.) at 8:1-2.

16.    On August 4, 2003, an Administrative Support function was established and placed under the CFO.  Plaintiff, Daphne Berwald, and Karen Needy were initially assigned to this office.  Diane Murth, a 55-year old Native American Indian, was selected to supervise the employees in this Administrative Support function.  Ms. Murth had no knowledge of Plaintiff's prior EEO activity.  Def. Exh. I, (Memorandum from Woodrow Hopper) ("Hopper Memo"), Def. Exh. J (Affidavit of Diane Murth) ("Murth Aff.") at 1, 7.

17.    Plaintiff's position description was amended on August 20, 2003, to reflect her new assignment to this function.  Plaintiff's title, series, and grade remained the same. Def. Exh. K (Plaintiff's New Position Description).

18.    Diane Murth retired sometime in 2004.  Sally Hampton, a 54-year old Caucasian female, was one of Plaintiff's supervisors after Ms. Murth's retirement.  Ms.

5

Hampton had no knowledge of Plaintiff's prior EEO activity in 1980. Def. Exh. A (Brantley Dep.) at 50:14-23; Def. Exh. L (Transcript of Sally Hampton) ("Hampton Tr.") at 4:12-16.

19.    Victor Christiansen, a 54-year old, African American male was the Acting Director in the Office of Budget Management from May 2004 until January 2005. Plaintiff was detailed to work for Victor Christiansen in the Office of Budget Management. Plaintiff's detail ended in March 2005. Def. Exh. A (Brantley Dep.) 51:12-15; Def. Exh. M (Transcript of Victor Christiansen) ("Christiansen Tr.") at 3:19-25, 4:5-15.

20.    Victor Christiansen applied for the permanent position of Director for the Office of Budget Management, ASIA. However, Mary Jane Miller was selected as the Director. Def. Exh. F (Clark Dep.) at 62:6-18, 64:2-3.

21.    Ms. Miller is a 56-year old Caucasian female and she started her new position in January 2005. She had no knowledge of Plaintiff's prior EEO activity. Def. Exh. T (Transcript of Mary Jane Miller) at 3:7-25.

22.    After her detail in the Office of Budget Management ended, Plaintiff returned to her position with Sally Hampton as her supervisor. Def. Exh. F (Clark Dep.) at 64:11-14.

23.    In March 2005, Plaintiff was detailed to Robert Middleton, Director of Indian Energy and Economic Development, because he needed help setting up his office.

6

Mr. Middleton is a 57-year old Caucasian male.  He had no knowledge of Plaintiff's prior

EEO activity.  Plaintiff had sought or requested this detail.   However, this detail ended in

April 2005, at Mr. Middleton's request.  Def. Exh A (Brantley Dep.) 51:23-25, 52:1-6;

Def. Exh. N, Plaintiff's Responses to Request for Admissions ("Plff. Admissions") ¶ 9;

Def. Exh. O, (Transcript of Robert Middleton) ("Middleton Tr.") at 3:3-25, 4:1-25.

24.    Debbie Clark has received complaints about Plaintiff from other employees

because they had to do Plaintiff's work.  Def. Exh. F (Clark Dep.) at 91:3-11.

25.    Ms. Clark also received complaints between 2001 and 2006, including from

the Office of the Secretary, Accounts (Indian Affairs Accounts), about the accuracy of

Plaintiff's work.  Def. Exh. F (Clark Dep.) at 84:20-21, 85:1-21, 86:1-21, 87:1-18.

26.    On March 24, 2003, Plaintiff was accused of nepotism by Woodrow

Hopper.  At that time, Mr. Hopper was the head of the Personnel Office.  The accusation

stemmed from the hiring of Plaintiff's daughter into another office.  Plaintiff had

recruited her daughter for the position and had drafted a position description for her

daughter's position.  Def. Exh. H (Hopper Tr.) 6:23-25, 7:1-22.

27.    On March 26, 2003, Plaintiff contacted an EEO counselor.   She filed a

formal complaint with the Department on July 2, 2003.  Def. Exh. A (Brantley Dep.) at

55:16-18; Compl. ¶ 4.

28.    Plaintiff's initial administrative complaint alleged that "[S]ince 1988 when I

received the last of my settlement agreement from a prior complaint of 1980, I have had

the following reprisals bestowed upon me:

| | |
|---|---|
| 1989-present | 1.  Not promoted |
| 1992-1995 | 2.  Lied upon by Lisa Mahan (Graphics office) |
| Nov 1995 | 3.  Was Rifed from Graphics Office |
| Dec 1995 | 4.  Kicked out of the office I was Rifed to for no reason by Holly Tomilson |
| 1995-1998 | 5.  Not given cash awards by Linda Richardson - all others received one |
| Aug 1998 | 6.  Refused training by my supervisor Linda Richardson |
| 3/02-present | 7.  Not given the E-mail or any other device I would need to communicate with the Department by James McDivitt |
| 4/02-present | 8.  Had my office taken from me and given to a secretary by James McDivitt |
| 4/02-present | 9.  Not given proper facilities to do my work by James McDivitt. |
| 4/02-present | 10.  Made to walk three blocks to perform my work by James McDivitt |
| 4/02-present | 11.  Made sick more often (pneumonia, upper respiratory, stressed, colds and flu) by the actions of James McDivitt |
| Dec 02 | 12.  Was asked why was I begging for money after Donna Brannon in personnel told my supervisor James McDivitt of the various awards I was receiving |
| March 24/03 | 13.  Was accused of Nepotism by Woody Hooper (Personnel) when he knew it was not and he fired my daughter who would have been working with Dr. Velma Mason in the Office of Alcohol and Substance Abuse Prevention. |
| 1999-present | 14.  Not being acknowledged for the position I am in grade wise.  All the individuals who work for an Assistant Secretary in the Department are that of a GS-13 or 14. |

Def. Exh. P.  at 5.

29.  On August 15, 2003, Plaintiff amended her complaint to add the following

unrelated claims:  (a) on July 22, 2003, in a meeting held with the Directors, Plaintiff was

informed by her supervisor that she would not be receiving a computer that would enable

her to perform her daily duties; on August 4, 2003, Plaintiff was removed from her

8

position and her work was disbursed among three other employees, she was placed in a division under another supervisor, and disallowed to communicate with clients or go to the Main Interior building to complete her work; (c) on August 8, 2003, Plaintiff was asked about an assignment that had been given to someone else; and (d) on August 12, 2003, Plaintiff was asked by her supervisor to submit copies of all e-mails she received and responded to when no other staff members were asked to submit their e-mails.  Def. Exh. Q.

30.    On February 5, 2004, Plaintiff again amended her complaint to include the following additional unrelated claims of harassment: (a) on January 22, 2004, Plaintiff's supervisor (Diane Murth) called her into the supervisor's office and told Plaintiff not to communicate with anyone without talking to her first; and (b) on January 29, 2004, Plaintiff's supervisor (Diane Murth) tried to embarrass Plaintiff by telling another office head (Woody Hopper) that Plaintiff's co-worker (Daphne Berwald) was her best employee, and asked if Plaintiff wanted to go work in Mr. Hopper's area in place of Ms. Berwald.  Def. Exh. R.

31.    During the proceeding before the EEOC administrative judge, and without having contacted an EEO counselor or filed an administrative complaint, Plaintiff moved to amend her complaint on February 23, 2005, and proposed still more amendments in April 2005.  By Order dated June 22, 2005, over the Department's objections, the administrative judge accepted the amendments and ordered the

Department to investigate them.  Plaintiff's additional claims were as follows:

(a) Plaintiff was subjected to a hostile work environment, such as "being denied a promotion, having to pack office supplies in spite of her previously injured back, denied a private office, and being denied a key to her office;" and (b) being "denied a partition wall for her office space." Def. Exh. S (Decision and Final Order of the EEOC; Def. Exh. N (Plff. Admissions) ¶¶ 19-22.

     32.     Plaintiff's Complaint in this action alleges the following claims:

(1) her nonpromotion on a continuing basis between 1989 and 2005, while other similarly situated employees were promoted; (2) denial of access to the Internet and other computer systems in 2001 and 2002; (3) not being given any " meaningful or complex work assignments between 1989 and 2005; (4) her temporary relocation to another building at G Street, NW, in 2001, not being given proper work facilities, and being made to walk three blocks to perform her duties; (5) the cancellation of a vacancy announcement on or about February 11, 2005, for a position for which Plaintiff alleges that she applied and was qualified; (6) being asked to pack up her office supplies while she was suffering from a back injury; (7) the denial of a private office on January 24, 2005; (8) the denial of a key to her old office in January 2005; (9) while on a detail to another office, being given temporary office space that contained a refrigerator, coffee pot, microwave, and a closet with a sink; and (10) denial of the construction of a partition wall in her office in March-April 2005. *See Plaintiff's Response and Motion to Strike Defendant's Motion for a*

*More Definite Statement ("Plaintiff's Response to Defendant's Motion for a More*

*Definite Statement").*

<u>NonPromotion</u>

33.    Plaintiff cannot provide the dates when she asked for promotions between

1990 and 1995, nor when such promotions were denied.  Plaintiff identified Pat Watkins

and Nancy Davis as the "similarly situated" employees, identified in the Complaint, who

received promotions when she did not receive a promotion.  Comp. at ¶ 13; Def. Exh. A

(Brantley Dep.) at 60:25, 61:1-5, 22-24, 62:11-21, 63:1-10, 70:13.

34.    Pat Watkins is an African-American female who worked in the Office of

Water and Science when she received her promotion.  Plaintiff does not know when Pat

Watkins received a promotion.   Plaintiff does not know the age of Ms. Watkins at the

time of Ms. Watkins' promotion.  At the time of her promotion, Pat Watkins did not have

the same supervisor as Plaintiff, and Plaintiff does not know if Pat Watkins received her

promotion by applying for and being selected for a position.  Plaintiff did not contact an

EEO counselor nor file a formal complaint with the Department concerning Pat Watkins'

promotion.  Def. Exh. A (Brantley Dep.) at 63:17-25, 65:25, 66:1-3, 69:1-25, 70:1-3.

35.    Nancy Davis is a female Caucasian. At the time of her promotion, Nancy

Davis did not work in the same office or have the same supervisor as Plaintiff.  Plaintiff

does not know when Nancy Davis received a promotion or whether Ms. Davis applied for

and was selected for a position.  Plaintiff does not know the age of Ms. Davis at the time

11

of her promotion.  Plaintiff did not contact an EEO counselor nor file a formal complaint

with the Department in regard to Nancy Davis' promotion.  Def. Exh. A ( Brantley Dep.)

at 70:4-25, 71:1-23, 72:1-4, 74:8-10.

36.    Plaintiff discussed a promotion with James McDivitt in 2000-2001.

She also drafted position descriptions for a GS-12 and a GS-13 administrative officer,

that were sent to personnel.  In 2002, personnel advised Plaintiff that the position

descriptions were too vague.  Def. Exh. B (Brantley Tr.) at 18:9-23.

37.    Plaintiff contends that Ms. Clark discriminated against her because Ms.

Clark promoted Daphne Berwald, Iris Winston, Matt Cravatt, and Victor

Hodge, but did not promote Plaintiff when she worked just as hard.  Plaintiff concedes

that none of these employees were similarly situated to Plaintiff.  Def. Exh A (Brantley

Dep.) 89:12-25, 90:1; Def. Exh. F (Clark Dep.) at 79:1-5.

38.    In 2003, Daphne Berwald was a GS-11.  Ms. Berwald applied for and

was selected for a posted position.  Plaintiff did not apply for the position for which Ms.

Berwald was selected.  Ms. Berwald is now a GS-13, and she has received two

promotions.  Ms. Berwald was reassigned at the Assistant Secretary's request, and she

received a noncompetitive promotion to a GS-12.  Def. Exh. F   (Clark Dep.) at 34:12-21,

35:1-9, 57:3-5, 58:6-21, 59:5.

39.    Iris Winston is an African-American female.  She was a GS-11 in 2003, and

she is now a GS-13.  Iris Winston applied for a position as a Management Analyst, GS-

12/13, and she was selected for the position.  Def. Exh. F (Clark Dep.) at 36:20-21, 37:1-19, 90:16-19.

40.    Plaintiff has conceded that neither Daphne Berwald nor Iris Winston were similarly situated to Plaintiff.  Def. Exh. A (Brantley Dep.) at 89:25, 90:1.

<u>Less Meaningful and Complex Work</u>

41.    Plaintiff has received quality step increases and awards from various supervisors while working at the Department.  Def. Exh. A (Brantley Dep.) at 125:9-25, 126:1-25, 127:1-4.

42.    Plaintiff has conceded that she received cash awards for "meaningful and complex" work, including: (1) $2,000 in 1997; (2) $2,400 in 1999; (3) $13,500 in 2000; (4) $6,050 in 2001; (5) $6,900 in 2002; and (6) $1,000 in 2004.   Def. Exh. A (Brantley Dep.) at 125:9-25, 126:1-25,176:12-22.

<u>Move to G Street</u>

43.    In 2001-2002, Plaintiff and other employees working in the Office of Audit Evaluation were relocated to a building on G Street, NW.  Compl. ¶ 31; Def. Exh. A (Brantley Dep.) at 46:21-25.

44.    The move to G Street was prompted by the fact that, as part of an ongoing reorganization at the Department, more employees were brought into the office of the Deputy ASM and James McDivitt, the Deputy ASM, wanted to have all of his staff co-located in one place.  Def. Exh. C (Fiely Dep.) at 15:1-8.

13

45.     Employees that were moved to G Street had no connection to the Office of the Secretary's (OS) network or to the Internet.   Other employees that were moved to G Street also needed to send e-mails to employees of the OS.  Def. Exh. C (Fiely Dep.) at 17:14-21,18:1-21, 19:1-4.

46.     Plaintiff and other staff were relocated to G Street for about three years and then moved back to the Main building in 2004.  Def. Exh. A (Brantley Dep.) at 100:24-25, 101:1-14.

47.     Plaintiff concedes that other employees assigned to the G Street building also had to walk the three blocks to the Main Building during the day to conduct business.  Plff. Admissions, ¶ 6.

48.      Prior to July 2, 2003, Plaintiff had never filed a complaint concerning her move to G Street.  Compl. ¶ 4.

<u>Internet and Other Computer Systems</u>

49.     Plaintiff has conceded that numerous employees of the Department, including supervisors and Caucasian males under 40, were denied use of the Internet because of the *Cobell* litigation in federal court.  Def. Exh. N (Plff. Admissions) ¶¶ 3, 4; Def. Exh. A (Brantley Dep.) at 79:9-16; 159:3-9.

50.      Debbie Clark denied Plaintiff's request to be on the OS computer system, which had connection to the Internet, because almost no one in Indian Affairs had a connection to the OS computer system.  In fact, only a few senior employees had a

14

connection to the OS computer system, and no employee at the G Street building had their own connection to the Internet or OS network system.   Prior to July 3, 2003, Plaintiff had not filed a complaint with the Department concerning her denial of communication access.  Compl. ¶ 4; Def. Exh. F (Clark Dep.) at 28:2-21, 29:30.

<u>Vacancy Announcement in February 2005</u>

51.    While on detail to the Office of Budget Management,Victor Christiansen encouraged Plaintiff to apply for a GS-12 position that he intended to have filled.  Mr. Christiansen never promised Plaintiff a promotion.  Def. Exh. M (Christiansen Tr.) 4:23-25, 5:1-4.

52.    When Mary Jane Miller became the new Director in Janaury 2005, she wanted to understand her office before filling any positions.  She decided that the administrative position, which Mr. Christiansen was going to fill, did not need to be filled, because Ms. Miller had another employee, an African-American female, who had been performing some of the same administrative duties.  Ms. Miller never reviewed any applications concerning the vacant administrative position.  Def. Exh. T (Miller Tr.) at 5:8-17, 6:1-7.

<u>Private Office and Key to Old Office</u>

53.    Plaintiff was on detail to the Office of Budget Management when Mary Jane Miller became Director of the office.   Ms. Miller needed Plaintiff's office for a conference room.  Because Plaintiff was on detail and only temporarily in her office, Ms.

15

Miller requested that Plaintiff be moved into an office with another employee and return

her key to her old office.   Plaintiff concedes that other employees of the Department do

not have private offices or keys to their old offices.  Def. Exh. A (Brantley Dep.) at

163:20-25, 164:19-25, 165:1-25, 166:1-11; Def. Exh. N (Plff. Admissions) ¶ 7; Def. Exh.

T (Miller Tr.) at 5:8-17, 6:1-7.

Request to Pack Office Supplies

54.     Plaintiff was called at home and asked to pack her office supplies, after the

decision had been made to convert her office to a conference room. According to

Plaintiff, she advised the caller, Sally Hampton, that she could not come in because of a

back injury.  No action was taken against Plaintiff for not coming into the office and

packing her office supplies.  Compl. ¶¶ 45-49; Def. Exh. A (Brantley Dep.) at 80:9-12.

Construction of a Partition Wall

55.     In March 2005, Plaintiff was detailed to Robert Middleton, Director of

Indian Energy and Economic Development because he needed help setting up his office.

Plaintiff had sought or requested this detail.  Def. Exh. F (Clark Dep.) at 65:1-18, 66:10-

13; Plff. Admissions ¶ 9.

56.     Mr. Middleton had temporary quarters while waiting for building

renovations to  be completed.  Mr. Middleton was assigned only two offices because of

limited space. The outer office, which Plaintiff occupied, was large and already had a

refrigerator.  Mr. Middleton brought in a coffee pot and microwave.  Plaintiff mentioned

16

the idea of a partition wall to Mr. Middleton, but he indicated that he needed more

information.  Workmen came to the office to build a partition wall.  Mr. Middleton had

not authorized the building of the partition wall.  Plaintiff did not have Mr. Middleton's

approval to build a wall.  Plaintiff knew that she did not have authority to authorize the

building of a wall, and she knew that there was an approval process for building of a wall.

Def. Exh. O ( Middleton Tr.) at 4:12-25, 5:1-22, 6:1-25, 7:1-25; Def. Exh. N (Plff.

Admissions) ¶¶ 11-12; Def. Exh. A (Brantley Dep.) at 81:22-25, 82:3-5, 170:21-23,

171:1.

57.    Mr. Middleton requested that Plaintiff's detail to his office end after

Plaintiff authorized the construction of partition wall without his approval.  Def. Exh. O

(Middleton Tr.) at 9:4-10.

<u>Prior EEO Activity</u>

58.    Plaintiff has filed several EEO complaints during her employment with the

Department.  She did not appeal many of her cases after the Department made a decision.

However, the prior EEO or other statutorily protected activity on which Plaintiff relies for

her retaliation claims in this case was a discrimination case filed in 1980.  Def. Exh. P;

Def. Exh. A (Brantley Dep.) at 124:6-25, 125:1-8; Compl. ¶ 4.

17

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Alexander Shoaibi
ALEXANDER SHOAIBI
Assistant United States Attorney
555 4th Street, N.W., Room 4218E
Washington, D.C. 20530
(202) 514-7236


  /s/  Judith A. Kidwell
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W., Room 4905E
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov


18

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**MARGARET R. BRANTLEY,**               )
                                        )
        **Plaintiff,**   )
                                        )
    **v.**                             )    **Civil Action No. 06-1137 (ESH)**
                                        )
**DIRK KEMPTHORNE, Secretary**          )
**United States Department of the Interior,** )
                                        )
        **Defendant.**   )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

Plaintiff, Margaret Brantley, is an African-American female over 40 years of age.

She brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621 *et seq*., alleging that the United States Department of the

Interior ("the Department") discriminated against her on the bases of race, color, gender,

and age; retaliated against her for filing a discrimination complaint in 1980; and subjected

her to a hostile work environment.  Plaintiff is an administrative officer (GS-11, Step 10)

with the Department.  Plaintiff challenges:  (1) her nonpromotion[1] on a continuing basis

---

[1] Plaintiff uses the term "nonpromotion" to refer to both her failure to receive grade increases and her non-selection for positions for which she alleges that she had applied.

between 1989 and 2005, while other similarly situated employees were promoted;

(2) denial of access to the Internet and the Office of the Secretary's (OS) network in 2001

and 2002; (3) not being given any "meaningful or complex" work assignments between

1989 and 2005; (4) her temporary relocation to another building at G Street, NW, in 2001,

where she alleges that she did not have proper work facilities, and had to walk three

blocks to the Main building to perform her duties; (5) the cancellation of a vacancy

announcement on or about February 11, 2005, for a position for which Plaintiff alleges

that she applied and was qualified; (6) in January 2005, being asked to pack up her office

supplies while she was suffering from a back injury; (7) the denial of a private office on

January 24, 2005; (8) the denial of a key to her old office; (9) being given temporary

office space that contained a refrigerator, coffee pot, microwave, and a closet with a sink,

while on detail to another office; and (10) denial of the construction of a partition wall in

her office space.[2]

---

[2] It has been difficult to discern the parameters of Plaintiff's claims from the beginning of
this action. Although Plaintiff asserted that she was making seven claims in response to
*Defendant's Motion for a More Definite Statement* (*see Plaintiff's Response to Defendant's
Motion for a More Definite Statement*) it appears from her Complaint that Plaintiff is alleging 10
discrete acts of discrimination or retaliation. However, as recognized by the administrative law
judge of the Equal Employment Opportunity Commission ("EEOC"), not all of Plaintiff's claims
were accepted by the Department and she did not appeal the partial dismissals. *See* Def. Exh. S,
at FN 7. Moreover, it appears that some of these acts are alleged to have been part of a hostile
work environment claim, and not discrete acts of discrimination or retaliation. As discussed in
section B., FN 16 *infra*, Plaintiff's deposition added even more confusion to the nature of her
claims.

However, Plaintiff never contacted an EEO counselor nor filed an administrative complaint with respect to some of her claims. While in regard to other claims, she contacted an EEO counselor on March 26, 2003, well beyond the 45-day requirement for federal employees.[3] Plaintiff, therefore, failed to administratively exhaust her remedies with respect to her claims of: (1) nonpromotion;[4] (2) denial of access in 2001 and 2002 to the Internet; (3) denial of "meaningful or complex work" assignments from 1989 until 2005; and (4) relocation to G Street in 2001, and the related claims of being denied proper work facilities and having to walk three blocks to perform her duties. Moreover, Plaintiff concedes that she never contacted an EEO counselor or filed an administrative complaint with respect to the claims contained in her February 2005 or her April 2005 amendments.[5] Thus, Plaintiff also failed to administratively exhaust these claims.

---

[3] In her *Response to Defendant's Motion for a More Definite Statement*, Plaintiff took umbrage with Defendant's challenge that she had not exhausted her administrative remedies stating that "[I]n questioning whether the administrative remedies were exhausted, Defendant is essentially challenging the character and credibility of Plaintiff and her counsel." Defendant will leave it to the Court to decide, after a review of the record, whether Defendant's challenge was justified.

[4] Federal employees must contact an EEO counselor within 45 days of the alleged personnel action or adverse action. *See* 29 C.F.R. § 1614.105. Moreover, the 45-day requirement applies even when an agency has accepted and investigated an untimely claim. *See Duvall v. United States Postal Service*, 774 F.2d 510 (D.C. Cir. 1985). However, in this case, the Department raised the issue of untimeliness with respect to Plaintiff's claims in the EEOC administrative proceeding.

[5] These include the claim that Plaintiff was subject to a hostile work environment because she was: (a) denied a promotion when a vacancy announcement was cancelled in February 2005; (b) denied a private office and was not allowed to keep the key to her old office; and (c) had to pack up her office supplies despite a previously injured back. It also includes the claim that she was denied a partition wall in her office space. *See* Def. Exh. S, at 3.

3

Because timely contacting an EEO counselor and filing an administrative complaint are prerequisites to bringing Title VII or ADEA claims to district court, Plaintiff has failed to state a claim for which relief can be granted with respect to her claims of discrimination, retaliation, and hostile work environment and, therefore, these claims should be dismissed. Moreover, even if the Court determines that she has timely exhausted her claims, Plaintiff has failed to establish *prima facie* cases with respect to her claims of discrimination, retaliation, or hostile work environment. With the exception of her claim for nonpromotion, Plaintiff's remaining claims resulted in no materially adverse consequences, including loss of grade, pay or benefits. Also, she has failed to satisfy the standard of an "adverse personnel action" that would be actionable under Title VII or the ADEA. *See Brown v. Brody*, 199 F.3d 446, 456 (D.C. Cir. 1999) (requiring an adverse personnel action to include "a significant change in employment status, such as hiring, firing, failing to promote, or a decision causing a significant change in benefits."). Additionally, Plaintiff did not suffer objectively tangible harm with respect to any of these claims. *See Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir 2006). These claims should, therefore, fail as a matter of law.

In any event, even if this Court were to conclude that Plaintiff's claims are timely and that she has stated *prima facie* cases of discrimination and retaliation with respect to her claims, Defendant still would be entitled to summary judgment on these claims. Defendant submits that there is no evidence to support any of Plaintiff's claims that she

4

was subjected to unlawful discrimination, retaliation, or a hostile work environment on the bases of race, color, gender, age, or reprisal.  Instead, many of the challenged actions were business decisions made by officials within the Department and were based on valid non-discriminatory and non-retaliatory reasons.

Accordingly, for the reasons set forth in this memorandum, Defendant respectfully submits that he is entitled to dismissal, or alternatively, to summary judgment on Plaintiff's claims.

## Factual Background

Defendant respectfully refers the Court to the accompanying Statement of Material Facts As To Which There Is No Genuine Issue, which has been filed pursuant to Local Civil Rule 7(h), for a recitation of the undisputed facts in the case.

## ARGUMENT

## I.  THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Governing Law and Standards of Review

### 1.  Motions to Dismiss Under Rule 12(b)(6)

A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, __U.S. ___, 127 S. Ct. 1955, 1974 (May 21, 2007) (clarifying the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  These standards

apply equally in employment cases. *See, e.g., Kassner v. Second Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007; *EEOC v. Concentra Helath Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007); *Ofori-Tenkorang v. American Internat'l Group, Inc.*, 460 F.3d 296, 307 (2d Cir. 2006). The allegations in a plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in a plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.* 52 F.3d 373, 375 (D.C. Cir. 1995). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965.

## 2. <u>Administrative Exhaustion of Claims</u>

Prior to filing a civil action in federal court, a federal employee must exhaust administrative remedies before the concerned Federal agency. *See* 42 U.S.C. § 2000e-16(c); *Brown v. General Services Administration*, 425 U.S. 820, 832-33; *Jarrell v. United States Postal Service*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (a timely administrative charge is a prerequisite to initiation of a Title VII action in district court); *McKenzie v. Sawyer*, 684 F.2d 62, 72 (D.C. Cir. 1982) (a crucial feature of a plaintiff's case is a showing that the alleged Title VII charge is timely)). The Title VII exhaustion

6

requirement protects employers from the burden of defending claims that arise from decisions that were made long ago. *See Delaware State College v. Ricks*, 449 U.S. 250, 256-257 (1980).

An aggrieved federal employee must consult an EEO counselor within forty-five days of the allegedly discriminatory action, or in the case of a personnel action, within forty-five days of its effective date, in order to attempt to informally resolve the matter. *See* 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved through informal counseling, the aggrieved federal employee must, within fifteen days, file a written complaint with the agency that allegedly discriminated against the employee. *See* 29 C.F.R. § 1614.105(d). The agency is then obligated to investigate the matter within 180 days. *Robinson v. Chao*, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); *see* 29 C.F.R. §§ 1614.105(d) and 108(e).

At the conclusion of the agency's investigation of Title VII claims, an employee may either request a hearing before an EEOC administrative law judge or an immediate final decision by the agency. *See* 29 C.F.R. § 1614.108(f). An employee may either appeal a decision to the EEOC or file a civil action in federal district court, where he can challenge only those allegations that were contained in an EEO complaint, or those that are "like or reasonably related to the allegations of the charge and grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *see* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

7

Under the ADEA, a federal employee may bring an age discrimination claim through one of two "avenues." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003). The employee may bring the claim directly to federal court so long as the employee provides the EEOC with notice of the employee's intent to sue at least 30 days before commencing suit. *See* 29 U.S.C. § 633a(c); *see also Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) ("[b]efore suing under the ADEA [,] . . . an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC.")). Alternatively, the employee may follow the EEOC administrative process. *See* 29 U.S.C. § 626(d)(1).

## B. Plaintiff Failed to Exhaust Her Administrative Remedies

Plaintiff first contacted an EEO counselor on March 26, 2003. Brantley Dep. at 55:16-18. She filed her initial administrative complaint on July 2, 2003. Compl.¶ 4. Therefore, in order to have viable claims, Plaintiff would have to show discrete discriminatory acts or retaliatory acts that occurred after February 9, 2003, and for which she initiated contact with an EEO counselor and filed a formal complaint with the Department. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (holding that a Title VII plaintiff is required to exhaust his or her administrative remedies with respect to each discrete allegedly discriminatory or retaliatory act)).

8

### 1. Plaintiff Concedes That She Failed to Administratively Exhaust the Claims In the February 23, 2005 and April 27, 2005 Amendments

Plaintiff has conceded that she never contacted an EEO counselor with respect to any claims set forth in the February 23, 2005 or April 27, 2005 amendments[6] to her initial administrative complaint.[7]  Def. Exh. N (Plff. Admissions) ¶¶ 19-20.  She also conceded that the claims raised in her February 23, 2005 amendment were based on acts occurring between November 1, 2004 and February 11, 2005.  *Id.* at ¶ 21.

Of course, Plaintiff's end-run with respect to these amendments prevented the Department from having any opportunity to address Plaintiff's claims.  *See* 29 C.F.R. § 1614.105 (providing that a plaintiff must seek EEO counseling within 45 days of the date of the alleged discrimination to attempt to informally resolve a grievance). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985); *see also Kizas v. Webster*,

---

[6] These claims were submitted directly to the administrative law judge during the administrative proceeding and included the claims that Plaintiff was subject to a hostile work environment and denied a partition wall.  *See* Def. Exh. S.  Although a complainant "may file a motion with the administrative judge to amend [an employment-discrimination] complaint to include issues or claims [that are] like or related to those raised in the complaint," (*See* 29 C.F.R. § 1614.016(d)), in this case, the claims in Plaintiff's February 2005, and April 2005, amendments were totally unrelated to those raised in her initial administrative complaint.  In fact, they concerned different actions by different supervisors and had occurred shortly before the amendments were filed.

[7] Plaintiff has admitted that the Department raised the issues of failure to exhaust and the untimeliness of the claims at the administrative level.  Def. Exh. N, Plaintiff's Responses to Request for Admissions (Plff. Admissions), ¶22.  This defense was also raised in Defendant's Answer.  *See* Defendant's Answer, First Defense.

707 F.2d 524, 544 (D.C. Cir. 1983) ("[I]t is part and parcel of the Congressional design to

vest in the federal agencies and officials engaged in hiring and promoting personnel

'primary responsibility' for maintaining non-discrimination in employment.")).

Accordingly, the claims contained in Plaintiff's amendments of February 23, 2005, and

April 27, 2005, should be dismissed for failure to exhaust administrative remedies.  *See*

*Patterson v. Johnson*, 505 F.3d 1296, 1297 (D.C. Cir. 2007) (holding that examination of

a claim for which a plaintiff has not sought EEO counseling within 45 days "need not

detain the [Court] long.")).

### 2.  Plaintiff Cannot Salvage Her Nonpromotion Claims By Alleging A "Continuing Violation"

Plaintiff alleges that she was subjected to discrimination or retaliation on a

continuing basis for sixteen years because she was not promoted. Compl. ¶ 13.  Her

Complaint alleges that from 1989 until 2005, she was not promoted when other similarly

situated individuals were promoted.  *Id.*

However, the Supreme Court's decision in *National R.R. Passenger Corp. v.*

*Morgan* is fatal to Plaintiff's nonpromotion claim.  In *National R.R.*, the Court foreclosed

the use of a continuing violation theory that would allow a plaintiff to recover for alleged

discrete acts of discrimination or retaliation that were never administratively exhausted.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 122; *see also Shea v. Rice*, 409

F.3d 448, 451 (D.C. Cir. 2005) (observing that Morgan "foreclosed the use of the

continuing violation doctrine to restore an untimely claim . . . ."); *Law v. Continental*

*Airlines Corp.*, 399 F.3d 330, 333 (D.C. Cir. 2005) (holding that plaintiffs' age discrimination claims based on failure to promote were time-barred)).  The Court in *National R.R.* rejected the argument that claims based on discrete discriminatory acts occurring outside the limitations period can be saved from untimeliness if they are "plausibly or sufficiently related" to another discriminatory act for which a timely claim has been made.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 114; *see also Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) ("an untimely suit cannot be reviewed by pointing to effects within the limitations period of unlawful acts that occurred earlier.") (internal quotation marks and citations omitted).  Instead, each discrete discriminatory act, such as failure to promote, "starts a new clock for filing charges alleging that act."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 113.

Therefore, Plaintiff's only potential viable claims of nonpromotion based on discrimination or retaliation would be for any discrete acts which occurred after February 9, 2003,[8] and for which she administratively exhausted her claims.

### 3.  Plaintiff Cannot Allege Her Claim Of "Meaningful and Complex Work" Assignments For The First Time In District Court

Plaintiff avers that between 1989 and 2005, she "has not been given any meaningful or complex work assignments."  Compl. ¶ 59.  However, this claim does not appear in Plaintiff's initial complaint or any of her amendments.  She, therefore, cannot allege this claim for the first time in district court.  *See Patterson v. Johnson,* 505 F.3d at

---

[8] This would be 45 days prior to the date on which she first contacted an EEO counselor.

1297; *Park v. Howard Univ.*, 71 F.3d at 907 (holding that a plaintiff must exhaust applicable administrative remedies and cannot raise new allegations or charges in court that were not brought in the prior administrative proceedings).

Moreover, this claim suffers from the same malady as Plaintiff's nonpromotion claim. Plaintiff cannot idly sit by for sixteen years and escape the requirements of administrative exhaustion by alleging a continuing violation with respect to her work assignments. *National R.R. Passenger Corp. v. Morgan* 536 U.S. at 105. Especially, when she asserts that she has been filing numerous EEO claims during the same period of time. *See* Comp. ¶ 4. Accordingly, this claim should be dismissed.

### 4. Plaintiff's Claims Regarding Move to G Street and Denial of Internet and OS Connection Are Untimely

Plaintiff alleges that in 2001, she "was removed from her office in the Main building and forced into an office in the G Street Building." Compl. ¶ 31. She also alleges that when she "was forcibly moved to G Street, she was given inadequate work facilities, and she was not given the computer access she needed to do her job which further contributed to her need to have to walk three blocks several times a day between the Main building and the G Street Office." Compl. ¶ 36.

Here again, Plaintiff attempts to utilize a continuing violation theory starting in 2001, to save her claims, having contacted an EEO counselor well-beyond the required 45-day period of time under the EEOC's regulations. *See* 29 C.F.R. § 1614.105; *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 105. Accordingly, these claims

12

are untimely and should be dismissed for failure to exhaust administrative remedies.  *See*

*Patterson v. Johnson*, 505 F.3d at 1297.

## II.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT

### A.  Governing Law and Standards of Review

#### 1.  Motions for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56 (c).  A "genuine issue" is one whose resolution could establish an element of a

claim or defense and, therefore, affect the outcome of the action.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).   To determine which facts are material, the Court

must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there exists a genuine issue of

material fact sufficient to preclude summary judgment, the Court must regard the non-

movant's statements as true and accept all evidence and make all inferences in the non-

movant's favor.  *Id.*, at 255.  A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of her position.  *Id*. at 252.  By

pointing to the absence of evidence proffered by the non-moving party, a moving party

may succeed on summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. at 322.  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, at 249-250.   Summary judgment is

appropriate if the non-movant fails to offer "evidence on which the jury could reasonably

find for the [non-movant]." *Id.* at 252.  The non-movant cannot manufacture genuine

issues of material fact with "some metaphysical doubt as to the material facts."

*Matsushita Elc. Indus. Radio Corp.*, 475 U.S. 574, 586 (1986).

## 2. Summary Judgment in Title VII and ADEA Cases

In *Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter*

*alia*, that the 1991 amendments to Title VII codified two alternative ways of establishing

liability for intentional discrimination: (1) a single motive theory requiring that the

plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged

employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff

demonstrate that discrimination played a "motivating part" or was a "substantial factor"

in the employment decision.  *Id.* at 451.  Under either theory, a plaintiff must demonstrate

discrimination by a preponderance of the evidence[9] and may rely on direct or

circumstantial evidence to meet that burden.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90,

92-102 (2003).

In the absence of direct evidence, a plaintiff may attempt to establish that she was

---

[9] "Preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so. *Hopkins v. Price Waterhouse*, 737 F. Supp. 1202 (D.D.C. 1990), *aff'd* 920 F.2d 967 (D.C. Cir. 1990); *Metropolitan Stevedore Company v. Rambo*, 521 U.S. 121, 137 n.9 (1997).  "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose." *Id.*

the victim of intentional discrimination on the basis of her race, color, or sex by relying

on circumstantial evidence analyzed using the scheme first set forth in *McDonnell-*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10]  Under that scheme, a plaintiff must first,

by a preponderance of the evidence, establish a prima facie case of discrimination.  *See*

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  If the plaintiff succeeds, the

defendant then must introduce evidence of a legitimate, nondiscriminatory reason for its

action.  *See McDonnell Douglas*, 411 U.S. at 802.  Once it is established that both parties

have met their respective burdens of production (i.e., plaintiff by presenting a prima facie

case and defendant by producing a non-discriminatory reason for its actions), the burden

shifting scheme becomes irrelevant.  *St. Mary's Honor Center v. Hicks*, 509 U.S. at 510.

Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color,

religion, sex, or national origin was a motivating factor for any employment practice."

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

Alternatively, a plaintiff can meet the ultimate burden by demonstrating that the

defendant's legitimate, non-discriminatory reason is a pretext[11] and that discrimination is

the "but for" reason for the challenged employment action.  *St. Mary's Honor Center v.*

---

[10]  Reliance on the *McDonnell Douglas* scheme for testing the viability of plaintiff's circumstantial evidence is not limited to the "single-motive" theory of liability.  *See Fogg v. Gonzales*, 492 F.3d at 451.

[11]  Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

*Hicks*, 509 U.S. at 515-518.  This is a more difficult standard than the requirement under

Section 2000e-2(m) to show that discrimination was a motivating factor.  In the single

motive case *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000), Justice

O'Connor recognized occasions where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has
> established a prima facie case and set forth sufficient evidence to
> reject the defendant's explanation, no rational factfinder could
> conclude that the action was discriminatory.  For instance, an
> employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak
> issue of fact as to whether the employer's reason was untrue
> and there was abundant and uncontroverted independent evidence
> that no discrimination had occurred.

*Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. at 148.

Whichever standard is employed, in this case Plaintiff has failed to meet her

burden of coming forward with evidence to create a triable issue.  Assuming *arguendo*

that her claims are not dismissed for failure to exhaust administrative remedies, as

demonstrated below, the undisputed facts illustrate that Plaintiff cannot establish that

discrimination was a motivating factor, much less that it was the sole motivating factor in

the challenged decisions or actions at issue in this case.

Additionally, this circuit applies to ADEA cases the scheme for allocating

evidentiary burdens that has evolved in Title VII discrimination and retaliation cases.  *See*

*Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984).  Therefore, a plaintiff must first

establish a prima case of discrimination.  *Cuddy v. Carmen*, 762 F.2d 119, 122 (D.C. Cir.

1985).  The ultimate question is whether age was a determining factor in the disputed

employment decision.  In failure to promote cases, a prima facie case is made by showing:

(1) the plaintiff is at least forty years of age; (2) the plaintiff was qualified for the position

in question: (3) the plaintiff was not promoted; and (4) the plaintiff was disadvantaged in

favor of a substantially younger person.  *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C.

Cir. 1982).

As noted above, liability for discrimination under Title VII and the ADEA requires

an adverse employment action.  *Brown v. Brody*, 199 F.3d 446, 452-55 (D.C. Cir. 1999).

"An 'adverse employment action . . . is 'a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits.'"  *Broderick v.

Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006).

**B.  Plaintiff Has Failed To Establish A Prima Facie Case of Discrimination**

**1.  Nonpromotion Claim**

Plaintiff alleges that "[B]etween 1989 until 2005, [she] has been denied a

promotion while other similarly situated employees who worked for the Assistant

Secretary's office (ASO)[12] were at a higher graded level."  Compl. ¶ 13.  There are 600-

700 employees in the Office of the Assistant Secretary for Indian Affairs.  Def. Exh. F

(Clark Dep.) at 8:1-2.

_____

[12] We believe that this refers to the Assistant Secretary for Indian Affairs.

To be "similarly situated" for purposes of Title VII, a plaintiff must show that "all of the relevant aspects of her employment situation were 'nearly identical' to the comparable employee." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).  As the Court recognized in *Pierce:*

> In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of [her] employment situation are "nearly identical" to those of the employees who [she] alleges were treated more favorably.  The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d at 802 (quotations and citations omitted).

When asked to identify the "similarly situated" employees referred to in her complaint, Plaintiff, during her deposition, could initially identify only one employee:

> Pat Watkins. I don't know all their names. Pat is one of them I know.  They worked with different offices within Interior.  Pat Watkins is the only one I know right now.  Pat Watkins and other individuals within the Department that had the same duties I had.  I don't know their names, but they were there.

Def. Exh. A (Brantley Dep.) at 62:11-21; 63:1-10.  Upon further questioning, Plaintiff admitted that Pat Watkins is an African-American female, who worked in the Office of Water and Science, and that she had a different supervisor than Plaintiff when she received her promotion.  Plaintiff also conceded that she did not know: (1) when Pat Watkins received her promotion; (2) the age of Ms. Watkins at the time of this promotion;

18

or (3) whether Ms. Watkins received her promotion as a result of applying for and being selected for a position.  Def. Exh. A (Brantley Dep.) at 63:17-25, 69:11-25, 70:1-3.[13]

After a break in the deposition, Plaintiff was able to identify one other employee, Nancy Davis, who allegedly was similarly situated to Plaintiff and received a promotion. Def. Exh. A ( Brantley Dep.) at 70:13.  Nancy Davis, a Caucasian female, had been Plaintiff's supervisor for a year from 1987 until 1988.  Id. at 39:22-25, 40:1-2; 71:6-9. However, once again, Plaintiff was unable to provide any evidence with respect to: (1) when Ms. Davis received a promotion; (2) Ms. Davis' age at the time of this alleged promotion; or (3) whether Ms. Davis received her promotion by applying for and being selected for a position.  Plaintiff also conceded that Ms. Davis had a different supervisor at the time of this alleged promotion.[14]  Id. at 70:13-25, 71:1-25, 72:1-4.

Plaintiff also avers in her Complaint that:

When Plaintiff began working for Mr. Camacho, a director of Acquisition and Property Management, she requested a promotion to the GS-12 level because she was performing the same duties that Ms. Davis, a similarly situated employee outside the Plaintiff's protected class was performing for her supervisor.  Plaintiff was told that because she was no longer working for the Director's office but rather for a Division Chief, she could not be promoted to the GS-12 level.  In or about 1990, Plaintiff was assigned to the Graphics office.  When she asked for a promotion, she was again told

---

[13] Plaintiff first stated that she had contacted an EEO counselor, but had not filed a complaint with the Department concerning Ms. Watkins' promotion.  Def. Exh. A (Brantley Dep.) at 65:25, 66:1-3, 69:1-10.  She later contradicted her earlier testimony and stated that she had not contacted an EEO counselor about Ms. Watkin's promotion.  Id.  at 73:21-24.

[14] Plaintiff admitted that she had not contacted an EEO counselor nor filed a complaint concerning Nancy Davis' promotion.  Def. Exh. A (Brantley Dep.) at 70:4-25, 71:1-23.

that because she was in a Division she could not be promoted.

Compl. ¶¶ 18-20.[15]  Notwithstanding her allegations, Plaintiff cannot even provide dates

on which she sought and was denied a promotion.

 In 1987, pursuant to the settlement of discrimination claims of nonpromotion,

Plaintiff was transferred to another office and received several grade increases from a

GS-7 to eventually a GS-11 in 1988.  Def. Exh. A (Brantley Dep.) at 30:4-10, 31:4-25,

32:1-25, 33:1-25, 34:1-25, 36:13-25.  From 1987 until 1990, Plaintiff worked as an

administrative specialist in the Department's Library.  Compl. ¶ 16.  Nancy Davis was

Plaintiff's supervisor for a year from 1987 until 1988.  Def. Exh. A (Brantley Dep.) at

39:22-25, 40:1.  Phil Haymond was Plaintiff's supervisor after Nancy Davis from 1988

until 1990.[16]  Id. at 41:6-17.  In or about 1990, Plaintiff was assigned to the Graphics

Office.  Compl. ¶ 20; Def. Exh. A (Brantley Dep.) at 60:11-16.  Albert Camacho was her

second-line supervisor.  Id. at 42:16-18.  She worked in the Graphics Office until 1995.

Id. at 60:17-18.

---

[15] Plaintiff alleges that the following supervisors either discriminated or retaliated against her:  Linda Richardson, Albert Camacho, Victor Trillings, B.J. Thornberry, Phillip Haymond, Diane Murth, Robert Middleton, Debbie Clark, Woody Hopper, and James McDivitt.  Plaintiff also alleges that Donna Brannon, an employee/contractor in the Human Resources Department discriminated or retaliated against her.  Def. Exh.U, Plaintiff's Responses to Interrogatories, ¶ 8.

[16] In response to discovery requests, Plaintiff produced two undated letters with Phillip Haymond's name typed in the signature blocks. See Def. Exhs. X and Y.  A fair reading of these letters suggest that Mr. Haymond did attempt to secure Plaintiff a promotion, but was prevented by a hiring freeze.  Id.

During her deposition, when asked for dates that she sought a promotion while working in the Graphics Office, Plaintiff stated "[D]uring that period of time from 1990 to 1995, within that time frame. I don't know the exact date. In the course of the five years I was there with them." *Id*. at 60:25, 61:1-5, 61:22-24. With so sparse of detail, it is difficult to imagine how Plaintiff can demonstrate that Defendant took any type of adverse action, much less establish that Defendant intentionally discriminated against her.

In 1995, as a result of a reduction in force ("RIF"),[17] Plaintiff was reassigned from the Graphics Office and temporarily reassigned as a staff assistant to the Office of the Secretary for one month.[18] *Id*. at 44:20-24, 46:1-3. Thereafter, Plaintiff was reassigned to the Office of Audit and Evaluation as an administrative officer, GS-11. *Id*. at 45:1-25, 46:4-6.

From 1995 until approximately 2000, Linda Richardson, the Director of the Office of Audit and Evaluation, was Plaintiff's supervisor, although Jerry Fiely, the Deputy Director, provided Plaintiff direction and prepared her performance appraisals through 2001. Def. Exh. C (Fiely Dep.) at 13:1-15. Subsequently, Mr. Fiely became the Acting Director after Linda Richardson left the office. *Id*. at 10:1-13. In 2000-2001, as a result of a reorganization, the Office of Audit and Evaluation became a sub-division under the

---

[17] Plaintiff is not alleging that her employment was terminated as a result of the RIF. Moreover, she did not contact an EEO counselor nor file a formal complaint with respect to the RIF. Def. Exh. A (Brantley Dep.) 82:6-25, 83:1-3.

[18] It is rather remarkable that Plaintiff is alleging that her supervisor, B.J. Thornberry, discriminated against her by not giving her a promotion after one month.

Office of the Chief Financial Officer.  *Id*. at 10:9-17.  At that time, Mr. Fiely became the

Director of the office.  *Id*. at 10:9-17.

    Plaintiff has conceded that she never asked Linda Richardson, her supervisor from

1990 until 1995, for a promotion.  Def. Exh. B (Brantley Tr.) at 17:9-13.  Instead,

Plaintiff contends that in 2000, she discussed a promotion with James McDivitt, the

Deputy Assistant Secretary for Management ("Deputy ASM") in the Office of the

Assistant Secretary for Indian Affairs ("ASIA").[19]  Until he retired in June 2003, Mr.

McDivitt was the supervisor for the Chief Financial Officer, the Chief Information

Officer, the Chief of Personnel-Human Resources, the Director of an Office for Policy

Analysis, and several small offices responsible for records and the mail operation.  Def.

Exh. E (McDivitt Dep.) at 9:17-21, 10:1-2.  Mr. McDivitt was also responsible for

overseeing part of a reorganization of the Office of the ASIA and the Bureau of Indian

Affairs ("BIA") which started being implemented in 1999-2000, and continued until his

retirement.  *Id*. at 15:15-21.  This reorganization was the result of a 1999 study by the

National Academy of Public Administration.  Def. Exh. D, (*Executive Summary, A Study

of Management and Administration: The Bureau of Indian Affairs* (1999)).

    The reorganization was put on hold during certain periods of time because of a

change in administrations.  As a result of the reorganization, employees of the Office of

---

[19] It appears that at some point Plaintiff drafted position descriptions for an administrative officer (GS-12 and GS-13) that were submitted to personnel in an attempt to see if Plaintiff was eligible for a promotion.  However, the personnel office determined that the descriptions did not support a higher grade.  Def. Exh. G (Brannon Tr.) at 6:1-15, 7:3-8, 13-19, 9:3-25, 10:1.

the ASIA and the BIA were eventually realigned or reassigned into new organizations. Def. Exh. D (McDivitt Dep.) at 8:1-6, 15:18-21, 16:2-7, 17-19; Def. Exh. F (Clark Dep.) at 20:1-13.

    Although it is undisputed that Plaintiff raised the issue of a promotion on a number of occasions with Mr. McDivitt, because she believed that her position deserved a higher grade, Mr. McDivitt did not think that her position was unfairly graded.  Def. Exh. E (McDivitt Dep.) at 14:21,15:1-16.   Moreover, Mr. McDivitt knew that as part of the reorganization, a new structure was going to be established that would be responsible for certain activities that Plaintiff dealt with, such as budget issues. *Id*. at 16:1-7.   Mr. McDivitt's view was that the positions were going to get reorganized, rehoused, put into different locations.  *Id*. at 16:11-20.  Thus, Mr. McDivitt did not want to proceed with any type of new position description for Plaintiff, because new position descriptions were being drafted as a result of the reorganization.  *Id*. at 20:17-21, 21:1-11.  In addition,  Mr. McDivitt did not think Plaintiff's position would ever warrant an accretion of duties promotion.  *Id*. at 22:19-21.[20]

    Significantly, when asked why she believes that Mr. McDivitt had discriminated against her, Plaintiff stated, "by not pursuing [a promotion for her] and working with me

---

[20] At some point, Mr. McDivitt requested a desk audit of Plaintiff's position.  Def. Exh. P at 4.  However, the desk audit did not support an accretion of duties for Plaintiff's position.  Def. Exh. E (McDivitt Dep.) at 23:18-19, 28:14-21; Def. Exh. G (Transcript of Donna Brannon ("Brannon Tr."), at 9:19-25, 10:1; Def. Exh. F, (Clark Dep.) at 48:20-21, 49:1-3.  True to form, Plaintiff refers to this as a "fake" desk audit.  Def. Exh. P. at 4.

any further on it.  He is what I consider a passive person.  He just goes where the wind

blows, I guess."  Def. Exh. B (Brantley Tr.)  at 20:12-25.  Needless to say, neither this set

of facts nor Plaintiff's belief gives rise to even a minimal inference of discrimination

concerning Plaintiff's nonpromotion claim.

 In August 2003, an Administrative Support function was established as a sub-

division of the Chief Financial Officer.  *See* Def. Exh. I.  Plaintiff was reassigned to this

group.  *Id*.  Diane Murth, a 55-year old Native American Indian was selected to supervise

the employees in this Administrative group.  *Id*.; Def. Exh. J (Murth Affidavit).

Plaintiff's position description was amended to reflect her new assignment.  Def. Exh. K.

However, Plaintiff's title, series, and grade remained the same.  *Id*.  After Diane Murth

retired, Sally Hampton became one of Plaintiff's supervisors.  Def. Exh. F (Clark Dep.)

at 39:14-18.  Mary Jane Miller is presently Plaintiff's supervisor.  Def. Exh. A (Brantley

Dep.) at 12:25, 13:1.

In response to requests for information concerning her nonpromotion claim,

Plaintiff alleged that she applied for several positions from 2003 to 2005, but she does not

know who was selected for these positions.[21]  Def. Exh. A (Brantley Dep.) at 72:5-16.

---

[21]  Plaintiff also stated that she had never contacted an EEO counselor nor filed a
complaint with the Department concerning these alleged vacancies.  Def. Exh. A (Brantley Dep.)
at 75:16-24.  However, in response to discovery requests, Plaintiff provided Defendant with a
February 8, 2000, "Notice of Action on Application for Employment."  This Notice concerned
the cancellation of a vacancy announcement for a management analyst position in the Fish and
Wildlife Service of the Department.  *See* Def. Exh. V.  Plaintiff also provided Defendant with a
copy of a transcript from an EEOC proceeding in 1993.  Def. Exh. W.  The transcript suggests
that Plaintiff did file a complaint alleging reprisal concerning her nonselection in February 1991,

During her deposition, Plaintiff initially stated that she was not alleging discrimination with respect to her non-selection for these positions. *Id*. at 72:17-25, 73:1-20, 74:11-22. However, Plaintiff and her counsel later sought to change her position on this, as well as, other issues.[22]

In any event, Plaintiff has failed to establish *prima facie* cases of discrimination under either Title VII or the ADEA with respect to her nonpromotion claim. She has provided no evidence to document her application for positions or her qualifications for a higher graded position, and, therefore, she cannot establish that she suffered an adverse employment action. Moreover, Plaintiff has failed to produce even a scintilla of evidence to support a minimal inference of discrimination with respect to this claim.

_____

for one of two audit liasion specialist positions. Id. In that case, it appears that Plaintiff's prior EEO activity for her retaliation claims was also her 1980 case. The EEOC did not find discrimination or reprisal with respect to Plaintiff's nonselection for the position. *Id*.

[22] After several hours of deposition, the parties took a 40-minute lunch break. Upon their return, Plaintiff's counsel informed Defendant's counsel that Plaintiff wanted to change her responses to questions that had been asked of her earlier in the deposition. Plaintiff admitted that the reconsideration of her answers was the result of a conversation with her counsel during the lunch break. Plaintiff then attempted to justify her change of heart by suggesting that she was confused by the terms discrimination and retaliation. Incredibly, when Plaintiff was unable to articulate which answers she wished to modify, her counsel proffered her answers for her. It is fair to say, that the Court cannot conclude from Plaintiff's contradictory testimony or her counsel's attempt to "testify" for her that any genuine issue of material fact exists. Def. Exh. A (Brantley Dep.) at 85:10-14, 96:6-25, 97:1-25, 98:1-25, 99:1-25, 100:1-22, 103:17-25, 104:1-5; *see* Fed. R. Civ. P. 56 (e).

2.  February 2005 Vacancy Announcement[23]

Additionally, Plaintiff contends that she was denied a promotion as a result of discrimination when the Department cancelled a vacancy announcement for an administrative position in or about February 2005.  Compl. at ¶ 37.  Plaintiff alleges that she was qualified for and applied for this position.  *Id*. at ¶¶ 37, 43.  However, Plaintiff's contention is without merit for various reasons.  The cancellation of this vacancy announcement was not an adverse employment action to Plaintiff, and there is certainly no evidence to support an inference of discrimination concerning the cancellation of this announcement.

Plaintiff was detailed to the Office of Budget Management ("Budget Office") from November 2004 until March 2005.  Def. Exh. A (Brantley Dep.) at 51:12-15.  At that time, Victor Christensen, a 53-year old African-American male, was on detail as the Acting Director for the Budget Office ("Budget Director").  Def. Exh. M (Christensen Tr.) at 4:9-15.  Mr. Christensen had been in this position since May 2004.  *Id*. at 4:11.  Mr. Christensen gave Plaintiff work to do.  *Id*. at 8:10-15.  While Plaintiff was on detail, Mr. Christiansen had a vacancy in the office that was going to be advertised and he encouraged Plaintiff to apply for the position.  *Id*. at 4:23-25.  Debbie Clark had given Mr. Christensen approval to advertise the position.  *Id*. at 8:22-25.  However, Mr.

---

[23] A review of the EEOC Decision suggests that this was not alleged as a discrete act of discrimination or retaliation at the administrative level, but instead, was part of Plaintiff's hostile work environment claim.  Def. Exh. S.

Christensen "never promised [Plaintiff] a promotion."  *Id*. at 5:1-4.

Mr. Christiansen was unable to get the position advertised before he left his detail. *Id*. at 5:6-9.   Although Mr. Christiansen applied for the permanent position of Budget Director, he was not selected for the position, and his detail ended in January 2005.  At that time, Mary Jane Miller, a 56-year old Caucasian female, started as the new Budget Director.  Def. Exh. T (Miller Tr.) at 2:22-25, 3:9-16.

In January 2005, when Ms. Miller started her new job, the vacant position that Mr. Christiansen had sought to fill was being advertised.  Def. Exh. T (Miller Tr.) at 5:4-17. However, because Ms. Miller was new to the office, she wanted time to understand the office before filling any positions. *Id*. at 6:1-7.  She, therefore, made a legitimate business decision not to fill this position, because she had an African-American female working for her who was already performing administrative duties.  *Id*. at 5:8-17.

Indeed, Ms. Miller never reviewed any applications with respect to this vacant position, the position was never filled, and subsequently, the position was taken away from Ms. Miller's office.  *Id*. 5:8-17, 6:2-10.  In light of these facts, Plaintiff cannot establish an adverse personnel action in this instance.  Consequently, Defendant is entitled to summary judgment on this claim.  *See also Holcomb v. Powell*, 433 F.3d 889, 895 (2006) (in order to establish *prima facie* case for a nonselection claim, plaintiff must show that position remained open and employer continued to seek qualified candidates).

27

3.  <u>Move to G Street and Denial of Internet Access</u>

Plaintiff has alleged that she was "forcibly moved to G Street," and given "inadequate work facilities."  Compl. ¶ 36.  Plaintiff also alleges that she was denied access to the Internet and, as a result, had to "walk three blocks several times a day between the Main building and the G Street Office."  Compl. ¶¶ 28-30, 36.  Plaintiff's attempts to overdramatize the everyday tribulations of the workplace are without merit.

As discussed above, in late 1999 or early 2000, the Department began the reorganization of the ASIA and BIA.  Def. Exh. E (McDivitt Dep.) at 15:15-21.  The reorganization was the result of a comprehensive study of the BIA's management, organizational structure, and administration.  *See* Def. Exh. D.  This reorganization of offices continued through at least June 2003.  Def. Exh. E (McDivitt Dep.) at 15:15-21.  As a result of the reorganization, more employees were brought into Mr. McDivitt's office.  Def. Exh. C (Fiely Dep.) at 15:1-8.  He, therefore, wanted his staff in one location.  Id.  Thus, the entire staff of the Office of Audit and Evaluation, including Plaintiff, was moved to G Street in order to accomplish this goal.  *Id*.; Def. Exh. A (Brantley Dep.) at 46:21-25.

 Unfortunately, because of the *Cobell* litigation in federal court, the Department's access to the Internet was limited.  Def. Exh. N (Plff. Admissions) ¶ 4.  Employees who were moved to G Street, including Plaintiff, had no connection to the Internet or to the Office of the Secretary's network through which they could have accessed the Internet.

Def. Exh. C (Fiely Dep.) at 17:14-21, 18:1-21, 19:1-4; Def. Exh. N (Plff. Admissions) ¶¶ 3-5. In fact, almost nobody in Indian Affairs had a connection to the Internet. Def. Exh. F (Clark Dep.) at 28:15-19.

Notably, Plaintiff's Complaint fails to mention that other employees also had to walk three blocks to the Main building to conduct business, or that she was moved back to the Main building in 2004. Def. Exh. N (Plff. Admissions) ¶ 6; Def. Exh. A (Brantley Dep.) at 101:4-9. The suggestion that Plaintiff was moved or denied Internet or other communication access for discriminatory purposes is clearly unmeritorious. Simply put, she was not any more inconvenienced than anyone else (regardless of their protected status under Title VII or the ADEA), and her need for communication access was not any greater than any other employee's need. Def. Exh. F (Clark Dep.) at 29:4-7.

More importantly, these actions do not constitute adverse employment actions, because they were not "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a trier of fact could find objectively tangible harm.'" *Forkkio v. Powell*, 306 F.3d at 1131 (citing *Brown*, 199 F.3d at 457); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action")).

### 4.  Denial of Private Office, Request to Pack Office Supplies and Request to Return Key to Old Office

Plaintiff alleges that on January 24, 2005, she was denied a private office and was denied a key to her old office, because it was turned into a conference room. Comp. ¶ 50.

The Decision of the EEOC would suggest that these acts are alleged as part of a hostile work environment claim, not as discrete acts of discrimination or retaliation.  Def. Exh. S. Regardless, Defendant submits that these acts will not support either type of claim.

Plaintiff was on detail to the Office of Budget from November 2004 until March 2005.  Def. Exh. A, (Brantley Dep.) at 51:12-17.   Mary Jane Miller, the new Director of the office, needed a conference room.  Def. Exh. T (Miller Tr.) at 2:25, 7:12-16.  Because Plaintiff was only in the office on a temporary basis, Ms. Miller made a legitimate business decision to turn Plaintiff's office into a conference room, and have Plaintiff share an office with another employee for the remainder of her detail.  *Id*. at 7:12-25.  Not surprisingly, since Plaintiff no longer needed a key to her old office, she was asked to return her key.  Moreover, Plaintiff conceded in her deposition that there was nothing discriminatory about not having a private office,  Def. Exh. A (Brantley Dep.) at 81:11-13, and it is somewhat strange to think that an employee should keep the key to a federal government office which she no longer occupies.

Plaintiff also alleges that on or about January 12, 2005, she was asked "to pack up her office supplies in spite of known previous back injuries, which caused a re-aggravation of her back condition."  Compl. at ¶ 45.  Whether Plaintiff is alleging this as a discrete act or part of a hostile work environment claims is of no relevance.  The facts of this event suggest that it was Plaintiff, not Defendant, who was at fault in this case.

 Obviously, since Plaintiff was moving from the office that was being converted to

a conference room, she was asked to pack her office supplies.  According to Plaintiff, she

told Sally Hampton that she could not come into the office because of a back injury.

Plaintiff has conceded that she suffered no adverse action as a result of refusing to come

in and pack her office.  Def. Exh. A (Brantley Dep.) at 80:9-18.  In fact, in her deposition

when asked about the request to pack her office supplies, Plaintiff stated " they were just

being nasty." *Id*. at 105.  However, Title VII does not operate to police the level of

civility in the workplace.  *See Oncale v. Sundowner Offshore Serv., Inc*., 523 U.S. 75, 80

(1998).  If Plaintiff re-injured her back while packing her supplies, it was not the result of

an adverse employment action or discrimination.  Accordingly, Defendant is entitled to

summary judgment on this claim.

### 5.  Denial of Partition Wall

Plaintiff alleges that, as a result of discrimination, she was denied a partition wall

in her office, while working for Mr. Middleton.  Comp. ¶ 52.  Nothing could be farther

from the truth.

From March until April 2005, Plaintiff was on a detail to Robert Middleton's

office.  Def. Exh. A (Brantley Dep.) at 51:17-25, 52:1-4.  She had sought or requested this

detail.  Def. Exh. N (Plff. Admissions) ¶ 9.  While working for Mr. Middleton, Plaintiff

knew that there was an approval process for construction of a wall, and that it was

standard practice to obtain approval for the construction of a partition wall.  Def. Exh. A

(Brantely Dep.) at 81:22-25, 82:3-5; Plff. Admissions ¶ 12.  However, without Mr.

Middleton's approval, Plaintiff "authorized" the construction of a partition wall in her office space.  Def. Exh. O (Middleton Tr.) at 6:1-25, 7:1-25, 8:1-25, 9:1-3.  When Mr. Middleton learned of this, he stopped the construction of the wall and ended Plaintiff's detail.  *Id*. at 9:4-12.  Plaintiff's attempts to deflect her bad conduct by alleging discrimination with respect to this incident is, at best, disingenuous.

### 6.  "Meaningful or Complex" Work

Plaintiff alleges that between 1989 and 2005, she was not given any meaningful or complex work assignments.  Compl. ¶ 59.   She appears blind to the fact that this claim contradicts her claim that, during this same time period, she was eligible and qualified for a promotion.  Compl. ¶ 13.  It also contradicts her sworn testimony that she received numerous awards for "meaningful and complex" work.  Def. Exh. A (Brantley Dep.) at 176:12-22.  Suffice to say, Plaintiff has failed to provide any evidence of an adverse employment action or of an unfavorable action that gives rise to an inference of discrimination with respect to this claim.  Accordingly, Defendant is entitled to summary judgment on this claim.

### C.  **Plaintiff Has Failed To Establish A Prima Facie Case of Retaliation**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish that: "(1) [she] engaged in protected activity; (2) her employer took a materially adverse action against her; and (3) a causal relationship existed between the two." *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006); *see also Forman v. Small*,

32

271 F.3d 285 (2001).  In the context of a retaliation claim, Plaintiff is required to show
that she suffered a "materially adverse action."  This type of adverse action occurs "when
an employee 'experiences materially adverse consequences affecting the terms,
conditions, or privileges of employment or future employment opportunities such that a
reasonable trier of fact could find objectively tangible harm.'"  *Holcomb v. Powell*, 433
F.3d at 902 (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)).
"[P]urely subjective injuries, such as dissatisfaction with a reassignment, are not adverse
actions.  *Forkkio v. Powell*, 306 F.3d at 1130-31 (quoting *Brown v. Body*, 199 F.3d at
457)).  Moreover, material adversity denotes significant, rather than trivial harms.  *See*
*Burlington N. & Santa Fe Ry. Co.*, 126 S. Ct. 2405, 2415 (2006).  Significantly, "[A]n
employee's decision to report discriminatory behavior cannot immunize that employee
from those petty slights or minor annoyances that often take place at work and that all
employees experience."  *Id.* at 2415.

　　　In her deposition, Plaintiff stated that "[A]ll the things that happened between
1989 up until present were retaliatory."  Def. Exh. A (Brantley Dep.) at 124:8-9.  She
conceded that all of her claims of retaliation are based on her EEO activity in 1980.[24]
Def. Exh. A (Brantley Dep.) at 124:25, 125:1-8.  Therefore, Plaintiff's retaliation claims
and her discrimination claims are based on the same underlying actions or events.

---

[24] In her Complaint, Plaintiff refers to a 1990 complaint and "at least three other prior
EEO complaints."  Compl. ¶ 14, FN 1.  Given Plaintiff's concession in her deposition and the
lack of information concerning these other EEO complaints, Defendant's arguments are based on
the 1980 EEO activity.

Although it is undisputed that Plaintiff engaged in statutorily protected activity in 1980, and, therefore, has satisfied the first prong, she has failed to establish a *prima facie* case of retaliation with respect to her claims. Although for purposes of this motion, Defendant will concede that a plaintiff may show a materially adverse action concerning a nonpromotion claim such as that alleged by Plaintiff, this is only true if a plaintiff can demonstrate that he or she was qualified for such a promotion. In this case, Plaintiff has failed to establish such qualifications.[25] In fact, her argument that she is entitled to a promotion is based upon a comparison of Plaintiff to other employees, who are not similarly situated.[26] Plaintiff has simply failed to establish that she was denied a promotion as a result of illegal retaliation.

With respect to all of her other claims, Plaintiff has failed to show that Defendant took any materially adverse actions against her. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context, means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 126 S. Ct. at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219) (internal citations omitted).

---

[25] Plaintiff has suggested that she was entitled to a promotion because she worked hard. Def. Exh. A (Brantley Dep.) at 89:14-25, 90:1. Yet, she has not established that the duties and responsibilities of her job had increased so as to warrant an accretion of duty promotion. *See Wiley v. Glassman*, 511 F.3d 151, 156 (2007).

[26] Defendant is not suggesting that Plaintiff was required to offer evidence of "similarly situated" employees to make out a *prima facie* case, but merely responding to Plaintiff's allegations and evidence. *See Wiley v. Glassman*, 511 F.3d at 156.

34

It is difficult for Plaintiff to establish this prong, considering that she has filed numerous EEO complaints from 1980 until 2005.[27] Compl. ¶ 4.

Even assuming *arguendo* that she has demonstrated a materially adverse action, Plaintiff, nevertheless, has failed to show a causal connection between her protected activity in 1980 and any adverse action. To establish a causal connection, a plaintiff may show that 'the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity.' *Holcomb v. Powell*, 433 F.3d at 903 (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)). However, it is difficult for Plaintiff to argue that she has established a causal connection by asserting a "very close" temporal proximity, when her EEO activity occurred in 1980, and the nearest date of any of her claims is 1989. *See Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001) (citing with approval cases finding temporal proximity of four and three months insufficient to demonstrate a causal connection)); *Mayers v. Laborers' Health & Safety Fund of North America*, 478 F.3d 364 (D.C. Cir. 2007) (finding temporal proximity of eight or nine months "far too long."). In an attempt to meet her burden to establish the causation prong, Plaintiff appears to rely solely on the fact that some of her supervisors[28] had some knowledge of her prior EEO activity in 1980. However,

---

[27] During her deposition, Plaintiff stated that she had filed yet another complaint in 2005, that is presently pending before the EEOC. Def. Exh. A, (Brantley Dep.) at 7:3-24.

[28] James McDivitt indicated during his deposition that he had knowledge of Plaintiff's prior EEO activities. Def. Exh. E (McDivitt Dep.) at 31:4-11. However, he does not indicate that he had knowledge of her 1980 EEO complaint. Moreover, the following supervisors

knowledge alone is not sufficient to establish causation. *Hazward v. Runyon*, 14 F. Supp. 2d 120, 124 (D.D.C. 1998).

Plaintiff has failed to establish a causal connection between any materially adverse action and her 1980 statutorily protected activity. Clearly, no reasonable jury could infer retaliation from the Department's compliance with a federal court order limiting the use of the Internet or its decisions to co-locate staff in one place as part of a reorganization. Likewise, such inference of retaliation could hardly be based upon the Department's failure to authorize the building of a partition wall for an employee on a temporary assignment.

**C.    Claim of Hostile Work Environment**

In an apparent attempt to skirt the administrative exhaustion issue, Plaintiff added a hostile work environment claim during the EEOC proceeding. Def. Exh. S. However, Plaintiff appears to misunderstand the nature of such a claim. To establish a hostile work environment claim, a plaintiff must show that the ''workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

indicated that they had no knowledge of Plaintiff's prior EEO activity: Mary Jane Miller, Diane Murth, Woodrow Hopper, Debbie Clark, and Sally Hampton. Def. Exh. T (Miller Tr.) at 3:17-25, 4:1-3; Def. Exh. J (Affidavit of Diane Murth) at 7; Def. Exh. H (Hopper Tr.) at 4:3-4; Def. Exh. F (Clark Dep.) at 47:5-7, 54:9-16; Def. Exh. L (Hampton Tr.) at 4:12-16. Thus, at the very least, Plaintiff has failed to establish a *prima facie* case of retaliation for any actions taken by these supervisors, who had no knowledge.

environment.'" *Harris v. Forklift Systems, Inc*., 510 U.S. 17 (1993) (quoting *Meritor*

*Savings Bank FSB v. Vinson*, 477 U.S. 57 (1986)).  "Conduct that is not severe or

pervasive enough to create an objectively hostile or abusive work environment-an

environment that a reasonable person would find hostile or abusive is beyond Title VII's

purview." *Id*. at. 21.

Although the Supreme Court in *Nat'l R. R.*, recognized that hostile work

environment claims are different in kind from a discrete acts, a hostile work environment

claim still must be made up of acts which are part of the same unlawful employment

practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 117.  "In determining

whether an actionable hostile work environment claim exists" the Court must examine

'all the circumstances' including "'the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."' *Id*. at 116

(quoting *Harris v. Forklift Systems, Inc*.,  510 U.S. at 23)).

Plaintiff cannot cure her failure to timely administratively exhaust her claims by

attempting to resurrect them under the guise of a hostile work environment claim.  A

hostile work environment claim is composed of a series of separate acts that collectively

constitute one "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. at 117.  In contrast, the incidents alleged by Plaintiff are not the same type of

actions, did not occur frequently, and were not carried out by the same managers.[29]  In short, they are sporadic and isolated incidents which cannot satisfy even the minimum criteria for a hostile work claim under Title VII.

More importantly, in her deposition, Plaintiff stated that the basis of her claim of hostile work environment was the following:

> [P]eople not speaking to me and not giving me work, letting me know of other people being given awards, and it's like a slap in the face when I work hard.  People not speaking to me.  Supervisors allowing, giving out cash awards in my presence, and my knowing that I have worked hard for one, and I didn't get it.  Not given any work.

Def. Exh. A (Brantley Dep.) at 157:19-24, 158:1-13.  However, Title VII is not a "general civility code for the American workplace," *Harris v. Forklift Sys., Inc*., 510 U.S. at 25, and these alleged actions do not constitute unlawful employment practices.

### Conclusion

WHEREFORE, for the above-mentioned reasons, Plaintiff's claims of discrimination, retaliation, and hostile work environment should be dismissed, or alternatively, Defendant should be granted summary judgment on all of Plaintiff's claims.

---

[29] The acts which Plaintiff relies on for a hostile work environment claim appear to be those allegations in her February 23, 2005 amendment, and consist of the denial of a private office when Ms. Miller converted Plaintiff's office to a conference room, the request to return the key to her old office, the request to pack her office supplies, and the cancellation of the vacancy announcement in February 2005.

38

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Alexander Shoaibi
ALEXANDER SHOAIBI
Assistant United States Attorney
555 4th Street, N.W., Room 4218E
Washington, D.C. 20530
(202) 514-7236


  /s/ Judith A. Kidwell
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W., Room 4905E
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

39

EXHIBIT LIST

A – Deposition of Plaintiff Margaret Brantley
B – Transcript of Plaintiff Margaret Brantley
C – Deposition of Jerry Fiely
D – Study of BIA
E – Deposition of James McDivitt
F – Deposition of Debbie Clark
G – Transcript of Donna Brannon
H – Transcript of Woodrow Hopper
I – Woodrow Hopper Memo
J – Diane Murth Affidavit
K – Plaintiff's New Position Description
L – Transcript of Sally Hampton
M – Transcript of Victor Christiansen
N – Plaintiff's Responses to Request For Admissions
O – Transcript of Robert Middleton
P – Plaintiff's Initial Administrative Complaint
Q – August 2003 Amendment
R – February 2004 Amendment
S – EEOC Decision
T – Transcript of Mary Jane Miller
U – Plaintiff's Responses To Interrogatories
V – Fish and Wildlife Notice of Action on Application
W – 1993 EEOC Proceeding Transcript
X – Phillip Haymond Letter to Albert C. Camacho
Y – Phillip Haymond Letter to Personnel Officer

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                      )
**MARGARET R. BRANTLEY,**              )
                                      )
            **Plaintiff,**             )
                                      )
      **v.**                           )      **Civil Action No. 06-1137 (ESH)**
                                      )
**DIRK KEMPTHORNE, Secretary**         )
**United States Department of the Interior,** )
                                      )
            **Defendant.**             )
_____)_

ORDER

Upon consideration of Defendant's Motion for summary Judgment, its Statement

of Material Facts as to Which There Is No Genuine Issue, its Memorandum of Points and

Authorities, Plaintiff's Opposition thereto, Defendant's Reply, and the entire record

herein, it is this _____ day of ____, 2008,

ORDERED that for the reasons stated in Defendant's Memorandum of Points and

Authorities and Reply, Defendant's motion for summary judgment is hereby Granted.


                              _____
                              U.S. District Judge