# EXHIBIT S
EEOC Decision

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
WASHINGTON FIELD OFFICE
1801 L STREET, N.W., SUITE 100
WASHINGTON, D.C. 20507

|  |  |
|---|---|
| Margaret Brantley,<br>　　Complainant,<br><br>　　v.<br><br>U.S. Department of the Interior,<br>　　Agency. | )<br>)<br>)<br>)  EEOC Case No. 100-2004-00917x<br>)<br>)  Agency Case No. OS-03-017<br>)<br>)  FEB 6 2006<br>) |

DECISION

This Decision is issued pursuant to 29 C.F.R. § 1614.109(g) (2004). On February 24, 2005, the Commission issued an order explaining the legal standards for summary judgment.[1] The record before me consists of two Reports of Investigation,[2] the Agency's two Motions for Summary Judgment,[3] the Complainant's oppositions thereto,[4] the Complainant's own motion for summary judgment dated March 25, 2005, and additional responses and pleadings from the parties.[5]

---

[1] The Commission's regulations are patterned after the procedures and guidelines for summary judgment set forth in the Federal Rules of Civil Procedure. *Pedersen v. Reno, Attorney General*, EEOC Request No. 05943339 (Feb. 24, 1995).

[2] The Reports of Investigation are referred to herein as "ROI I" and "Supp. ROI."

[3] As cited in this Decision, the Agency's first Motion for Summary Judgment, dated March 10, 2005, will be referred to as "Agency SJ I", and the Agency's second motion for summary judgment will be referred to as "Agency SJ II."

[4] Complainant did not respond to the Agency's first motion for summary judgment. Therefore, the claims addressed in her opposition of January 3, 2006 that were argued in the Agency's first motion are untimely and will not be considered.

[5] On January 4, 2006, the Agency moved to strike nine pages from the Complainant's opposition to summary judgment, on the grounds that her pleading exceeded the fifteen page limitation set forth in the Washington Field Office Hearing Procedures. Complainant's counsel argues that the WFO Hearing Procedures do not apply to

Claims before me are identified in an Agency acceptance letter dated August 6, 2003 (ROI, Tab C2 at 1), and two subsequent amendments, dated September 17, 2003 (ROI, Tab C2 at 7) and March 3, 2004 (ROI, Tab C3 at 1).

I. The issues are whether the agency discriminated against the Complainant based on her race (African American), color (Black), sex (female), age (55), and reprisal (prior EEO activity),[6] when:

1. She was denied a promotion since 1989 while other employees who worked for the assistant Secretary's Office had higher pay grades;

6.[7] She was denied communication access, *e.g.* e-mail service since March 2002;

7. Her office was taken away, she was not given proper facilities to do her work, and she was made to walk three blocks to perform her work;

II. Complainant was subjected to the following incidents of harassment:

a) On July 22, 2003, in a meeting held with the Directors, she was informed by her supervisor that she would not be receiving a computer that would enable her to perform her daily duties;

b) On August 4, 2003, she was removed from her position and her work was disbursed among three other employees, she was placed in a division under another supervisor, and disallowed to communicate with clients or go to the Main Interior building to complete her work;

c) On August 8, 2003, she was asked about an assignment that was given to someone else to do;

---

them because they did not enter their appearance until December 9, 2005. Complainant's Response (Jan. 9, 2005) at 1. Nothing could be less relevant. Complainant is responsible for her complaint, when she chooses to obtain representation is up to her. Nevertheless, as the Agency has repeatedly failed to comply with more important rules and regulations of the Commission, the Agency is in no position to complain. The Agency's Motion is DENIED. Complainant's Motion for leave to exceed the page limitation is GRANTED.

[6] Complainant's previous EEO activity was a complaint in 1997 against the Office of Audit and Evaluation. ROI I, Tab F-1 at 8. Complainant had an earlier EEO complaint in 1980. Supp. ROI, Tab A at 5. That complaint was settled. Supp. ROI, Tab F-1 at 23. In her Opposition, Complainant states there have been "at least 3 other prior EEO complaints." Complainant Opp at 16 n. 1.

[7] As numbered and lettered in the original acceptance letters. Some claims were not accepted by the Agency (Complainant did not appeal the partial dismissals to the Administrative Judge). Following the Administrative Judge's Order on issues of June 22, 2005, the Agency issued a new acceptance letter, listing each claim by number. Supp. ROI, Tab C. To avoid confusing identically numbered claims, these claims will referred to by letter.

  d) On August 12, 2003, she was asked by her supervisor to submit copies of all e-mails she received that she responded to, and no other staff member was asked to submit their e-mails;

  e) On January 22, 2004, Complainant's supervisor called her into her office and told Complainant to not communicate with anyone without talking with her supervisor first; and

  f) On January 29, 2004, Complainant's supervisor tried to embarrass her by telling another office head that Complainant's co-worker was her best employee, and asking Complainant if she wanted to go work in another area.

In addition, on February 23, 2005, Complainant moved to amend her complaint again; and proposed still more amendments in April 2005. By Order dated June 22, 2005, I accepted these amendments, and Ordered the Agency to investigate them.

III. The additional claims are as follows:

  g.[8] Complainant was subjected to a hostile work environment. Examples include being denied a promotion, having to pack office supplies in spite of her previously injured back, denied a private office, and being denied a key to her office.

  h. Complainant was denied a partition wall for her office space.

I find that the investigative record has been adequately developed, there are no genuine issues of material fact, and I have no need to make findings of fact or credibility. Both parties had the opportunity to engage in discovery.[9] Complainant was given ample notice of the Agency's motions for summary

---

[8] The two newest claims are listed by letter only for the convenience of processing this complaint.

[9] Complainant conducted discovery, or had the opportunity to conduct discovery, on all the original claims that were accepted by the Agency on August 6, 2006. That the Agency failed to investigate some of the claims should have been obvious to her, and either she should have conducted discovery on those claims, or brought the matter of the incomplete investigation to the attention of the Commission. She did not do so. Therefore, there are no grounds for additional or renewed discovery on any of her original claims. As for the 2005 amendments, Complainant's request for discovery is untimely. Complainant received the Supplementary ROI in October 2005. Because the matter was already before the Commission, Complainant could have proceeded with discovery at that time, as, or if she was in doubt about her authority to do so, she could have sought the approval of the Commission. Having failed to do so, she has waived her right to discovery on the new claims.

judgment, the Agency provided comprehensive statements of the allegedly undisputed facts, and Complainant responded to the Agency's second motion. *Petty, Jr. v. Department of Defense*, EEOC Appeal No. 01A24206 (July 11, 2003); *see also Murphy v. Department of the Army*, EEOC Appeal No. 01A04099 (July 11, 2003).

Complainant has satisfied the procedural prerequisites for a hearing, but the evidence does not warrant one. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). I find that the Complainant has not shown that there are any issues requiring a hearing and therefore issue summary judgment in favor of the Agency, and deny Complainant's own motion for summary judgment.

## FINDINGS AND ANALYSIS

Absent direct evidence of discrimination, the complainant in a Title VII case must carry the initial burden under the statute of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination, Complainant must establish that she is in a protected group, and was treated less favorably than other similarly situated employees outside her protected group. *Arias v. Dep't of Interior*, EEOC No. 01942264 (Feb. 22, 1995).

However, in a disparate treatment case, whether Complainant has established a *prima facie* case loses its importance when the Agency, as in this case, responds to Complainant's charges by offering evidence of legitimate, nondiscriminatory reasons for its actions. *United States Postal Service Bd. of Gov. v. Aikens*, 460 U.S. 711, 717 (1983). Complainant then has to prove by a preponderance of the evidence that the proffered explanations are a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Background

In 1989, Complainant was a GS-11 administrative specialist working in the Agency's library. From 1995 to 2003, Complainant worked as an administrative specialist for the Director of the Office of Audit and Evaluation. In 2002, Complainant was moved to a temporary work location at 1800 G Street, N.W., Washington, D.C., which was about three blocks from the main Departmental building. The next year, Complainant was transferred to the Administrative Services Office. In January 2005, Complainant was detailed to the Budget Office in the absence of the previous administrative officer who had left that job. The vacant position was advertised, Complainant applied for it, but it was canceled without ever being filled. Throughout this entire period, Complainant's title, grade and series never changed. ROI I, Tab F-1 at 7.

While working for the Budget Office, Complainant had to move from her private office into another space she was to share with another employee. Preparing for the move, Complainant injured her back packing her office materials. Complainant maintains that she had advised her supervisors that she had a bad back, and could not lift anything. Nevertheless, Complainant maintains she was told to pack her own office. After the move, her old office was made into a conference room, and Complainant had to turn in her keys to that room.

After her detail in the Budget office ended, Complainant worked for the Director of the Office of Indian Energy and Economic Development. The room Complainant was assigned to was large enough to be part office, part kitchenette. Complainant requested that a partition wall be installed to divide the space. Although Complainant believed the wall would be installed, it never was. The Office director, Robert Middleton, declined to spend $1,500 to install the partition, particularly when he expected Complainant's presence there would be temporary.

-5-

There are several other administrative employees in Complainant's division, though none are titled "Administrative Officers." Their grades range from GS-7 to GS-15. ROI I, Tab F-5 at 4.

Analysis

I. 1). <u>Complainant was denied a promotion since 1989 while other employees who worked for the assistant Secretary's Office had higher pay grades[10]</u>

As a threshold matter, Complainant's allegation of non-promotion back to 1989 is untimely. Denial of a promotion is a discrete event, and cannot be contained in a continuing violation. An employee denied a series of promotions cannot string them together to create a continuing violation. Each promotion is a separate and distinct violation subject to the 45-day reporting rule. *Burkett v. Dep't of Agriculture*, 327 F.3d 658, 660 (8th Cir. 2003); *Ornelas v. Justice*, EEOC Appeal No. 01995301 (Sept. 26, 2002). Complainant's initial contact with an EEO counselor was March 26, 2003. ROI, Tab B-1. Therefore, only denials of promotion during the 45-day period before March 26, 2003 (*i.e.*, February 9, 2003), or after, would be timely.

One position Complainant did apply for since initial EEO contact was in February 2005. At that time Victor Christiansen was acting Budget Director and head of the Office of Budget Management and BIA. When he arrived, there was a vacant position that had been advertised, and he encouraged Complainant to apply for it. Supp. ROI, Tab. F-4 at 2. However, Mary Jane Miller became Budget Director, and decided she did not need the position filled. Supp. ROI, Tab F-7 at 2. Miller had someone already working in that office, Emily Thomas (Black female) who was already performing many of the job functions in question. So Miller never looked at any of the applications, and never filled the vacancy. *Id.*

---

[10] Complainant states that settlement of her 1980 EEO complaint provided that Complainant would be trained to be an Administrative Officer at the GS-12 level. Complainant. Opp. at 9. If Complainant believes the Agency failed to comply with the terms of a settlement agreement, she should file an appeal of this matter with the EEOC Office of Federal Operations. EEOC MD-110, at 9-23 (Nov. 9, 1999).

-6-

Therefore, Complainant cannot show she was discriminatorily denied the position.

6. <u>Complainant was denied communication access, *e.g.* e-mail service since March 2002.</u>

The record shows that Complainant's assertion is correct, that she did not have communication access during that time. However, because of a pending lawsuit against the Department, many employees had their internet, email, and other communication technology turned off. Complainant was not alone, she was not singled out for denial of communications. Complainant was well aware of the court order. ROI I, Tab F-1 at 3. There was one computer with internet access available for twenty employees to share; Complainant was one of them. Different employees had different limitations on their access, for example, some had email access to select offices, but not other offices. Complainant wanted more access than she was allowed.

Complainant has not shown that she was aggrieved by her lack of internet access. Had her supervisors and managers determined she was not doing her job – and there is not even a suggestion they ever did so -- and took a performance-based action against her, then she could show harm. Absent that, there was no adverse action.

7. <u>Complainant's office was taken away, she was not given proper facilities to do her work, and she was made to walk three blocks to perform her work.</u>

Numerous employees were moved to a new building location to work, 1800 G Street, N.W., Washington, D.C. Eventually, when the lease on 1800 G Street ended, Complainant and the other employees returned to the main Departmental building.

Complainant suggests that "the Agency cannot cure its discrimination against Complainant by forcing 49 other employees to join her. The Agency could have been actively discriminating against all 50 employees that were forced to move." Complainant's Reply (Jan. 10, 2005) at 4.

Complainant fails to provide any evidence at all for this wholly unsupported theory.

II & III   <u>Whether Complainant was subjected to a hostile work environment.</u>

Harassment is actionable if it is sufficiently severe or pervasive that it results in an alteration of the conditions of the Complainant's employment. To establish a claim of harassment a Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect or unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer.

In assessing whether the Complainant has set forth an actionable claim of harassment, the conduct at issue must be viewed in the context of the totality of the circumstances, considering, *inter alia*, the nature and frequency of offensive encounters and the span of time over which the encounters occurred. *Ornelas v. Department of Justice*, EEOC Appeal No. 01995301 (Sept. 26, 2002). Such conduct must be both objectively and subjectively offensive, such that a reasonable person would find the work environment to be hostile or abusive, and that the victim in fact did perceive it to be so.

Considering all of the circumstances, evaluating these criteria, and applying them to the incidents raised in the instant complaint, I find that the incidents complained of were insufficiently severe and pervasive to rise to the level of harassment.

a)   <u>On July 22, 2003, in a meeting held with the Directors, Complainant was informed by her supervisor that she would not be receiving a computer that would enable her to perform her daily duties</u>

This was discussed above. Complainant did have her own computer to do her work. This involves her request for a *second* computer. ROI I, Tabs F-4 at 5; F-5 at 3. As discussed above, Complainant

-8-

was one of many employees who did not have internet access on her own computer. While Complainant's job performance might have been easier if she had such access, Complainant was singled out for denial of internet access through her own computer. The court order shutting off internet access applied to BIA offices and personnel and lasted about one and one-half years. ROI I, Tab F-4 at 5.

b)   <u>On August 4, 2003, Complainant was removed from her position and her work was disbursed among three other employees, she was placed in a division under another supervisor, and disallowed to communicate with clients or go to the Main Interior building to complete her work.</u>

Complainant was never removed from her position. ROI I, Tab F-3 at 3. In August 2003, there was a reorganization in the Bureau of Indian Affairs where Complainant worked, which became effective July 27, 2003. ROI I, Tab F-4(a). The Assistant Secretary's office grew from 25 employees to over 120 employees. ROI I, Tab. F-4 at 6. The Acting Deputy Assistant Secretary, Woodrow Hopper, created the Administrative Services Office, to handle all administrative services for the Assistant Secretary for Indian Affairs. Complainant and two others were assigned to that new office; subsequently four others were added to that same function. Supervisor Diane Murth analyzed the work load and job functions, and assigned work to the initial three employees, Complainant included, to serve the 120 employees. *Id.*

Complainant's title, series and grade remained the same after the reorganization. The record does show that some of her job duties changed, but there is no material evidence that that resulted from any reason other than the office reorganization. As discussed in No. 7, above, Complainant and other employees were moved to 1800 G Street. Because employees had to walk back and forth between the two buildings, Murth asked all the staff to let her know when they were in transit, and to minimize the number of trips they took to avoid lost time. ROI I, Tab F-4 at 6.

c)   <u>On August 8, 2003, Complainant was asked about an assignment that was given to someone else.</u>

-9-

Murth explained that this occurred in her first few days on the job. She acknowledges she may have assigned something twice, or could not recall to whom she assigned something. After a few days, Murth was able to divide the work, organizing it by function areas, which made it easier for her to determine who was responsible for what.

In any event, there is nothing inherently offensive or abusive about such an inquiry from a supervisor.

d)   <u>On August 12, 2003, Complainant was asked by her supervisor to submit copies of all e-mails she received that she responded to, but no other staff members were asked to submit their e-mails.</u>

Complainant's supervisor, Ms. Murth, received copies of emails from other employees so that she could be aware of what they were working on. Complainant was the only employee Ms. Murth asked for emails because she was the only staff member not already providing them to Ms. Murth. ROI I, Tab F-4 at 7. Furthermore, because Complainant had sent out a document that was not correct factually or grammatically, Murth did not want any more poor quality communications sent out that would reflect poorly on the organization. ROI I, Tab F-5 at 5.

e)   <u>On January 22, 2004, Complainant's supervisor called her into her office and told her to not communicate with anyone without talking with her first.</u>

After Ms. Murth learned that Complainant was giving out incorrect information to clients, she told Complainant not to talk to clients, but to work through Ms. Murth before giving out information in the future. ROI, Tab F-8 at 4; Tab F-9 at 1.

f)   <u>On January 29, 2004, Complainant's supervisor tried to embarrass her by telling another office head that Complainant's co-worker was her best employee, and asking Complainant if she wanted to go work in another area.</u>

Ms. Berwald, the co-worker in question, was reassigned to another office along with a second employee. Ms. Murth, their supervisor, commented to Mr. Hopper that he was "taking my best em-

-10-

ployee." ROI, Tab F-8 at 4; Tab F-9 at 1. Not every comment that an employee finds offensive or annoying is harassment. I find there is nothing offensive about the supervisor's opinion of another employee.

g) <u>Complainant was subjected to a hostile work environment. Examples of that situation include being denied a promotion,[11] having to pack office supplies in spite of her previously injured back, denied a private office, and being denied a key to her office.</u>

In January 2005, Complainant was scheduled to move to another office location. She had recently injured her back, and, according to Complainant, was asked to pack up her office by Sally Hampton, under the director of Ms. Clark. Complainant said she would not pack that day because of her back, but that she would try to pack the following Monday. Complainant Opp. at 13. When Complainant began to pack her office, she re-injured her back. Complainant believes that she was directed to pack her office in retaliation by Clark for her previous EEO complaint.

Clark acknowledged she had heard of Complainant's EEO complaint, but she said she did not have "real specific knowledge." Supp. ROI, Tab F-8 at 2. In fact, Clark was Complainant's second level supervisor, but had only come into Complainant's chain of command in 2003. Clark believed that the previous complaint involved Complainant's previous supervisor. *Id.*

Complainant failed to show any connection between preparation for her office move and her previous EEO activity.

Regarding Complainant's January 2005 change of offices, Complainant was moved from her large office because it was to be converted into a conference room. Complainant argues there was no need for another conference room, as the office already had one, and it was wrong to make her share an office with another employee. Complainant acknowledges that sharing an office was only to be for a short time (she

---

[11] Alleged denial of promotions has been discussed above.

-11-

left about two months later), Complainant Opp. at 14, because Complainant was only on a detail to that office and would return to her regular location. Supp. ROI, Tab F-7 at 3.

The Commission will not micro-manage a Federal agency in its determination of how many conference rooms it should have, or which employees have keys to them. Furthermore, that an employee would be moved from one temporary office to another is not an indication of harassment or a hostile work environment.

h)  <u>Complainant was denied a partition wall for her office space.</u>

Robert Middleton became Director of the new Office of Indian Energy and Economic Development. Supp. ROI, Tab F-6 at 2. According to Middleton, at the beginning there were only two offices available until permanent space was provided. Middleton had one of them, Complainant was placed in the other. Middleton described the spaces as follows:

> [O]ne of the offices, my outer office, it was a fairly good-sized office, already had a refrigerator in there. I had a microwave, which I brought from another job and we have a coffee pot and that's – those are the items that are in the other office, the outer office.

*Id.*

Before the rooms were assigned to Middleton, the space had been used by the Office of Budget Management. Supp. ROI, Tab F-4 at 3. A secretary for that unit, Karen Needy, had her desk there. Even then, there was a refrigerator and microwave. *Id.*

Complainant requested that a wall be installed to divide the outer office into two parts, but Middleton determined that the cost of the work, $1,500, was too much to spend on temporary space. *Id.* It became more of an issue when he learned that in spite of him having told Complainant he would not authorize the construction, she went forward and told Harry Coldough, the contract administrator, that

-12-

Middleton had authorized the work. *Id.* After learning this, Middleton felt he could not trust Complainant, and declined to make her a permanent member of his staff. *Id.*

## CONCLUSION

To summarize the harassment claims, Complainant did not have internet access when she wanted it; she was reassigned to another work location; her supervisor asked her about her work assignments; her supervisor spoke favorably about another employee; she did not get the office space she wanted, and she was not permitted to keep a key to a room she no longer occupied. Finally, Complainant hurt her back when she was preparing for an office move. These events took place over a period of about six months. While Complainant disagrees with the Agency's explanations for these numerous events, she fails to show the explanations were pretext for discrimination or retaliation.

Summary judgement is appropriate in discrimination cases where the non-moving party simply rests on "conclusory allegations, improbable inferences, and unsupported speculation." *Williams v. Frank, Postmaster General*, 757 F. Supp. 112 (D. Mass. 1991). In making all inferences in Complainant's favor, I need not create facts. Complainant has produced no evidence that similarly situated employees received better treatment. Complainant's argument of pretext rests solely on her disagreement with the Agency's articulated reasons for its actions.

There is no dispute over genuine issues of material fact raised by Complainant's speculations and unsupported allegations. There are no questions of credibility that would necessitate a hearing. The Agency is therefore entitled to summary judgment.

*[signature]*
Richard E. Schneider
Administrative Judge

-13-

To:

Ari Taragin, Esq.
Michael J. Snider, Esq.
Snider & Associates, LLC
104 Church Lane, Suite 201
Baltimore, Md. 21208

Kerry E. Creighton, Esq.
U.S. Department of the Interior
1849 C Street, N.W  MS 730
Washington, D.C. 20240

Sharon D. Eller, Director
Office of Civil Rights
Department of the Interior
1849 C Street, B.W, MS 5214
Washington, D.C. 20240



United States Department of the Interior
OFFICE OF THE SECRETARY
Washington, DC 20240

MAR 2 4 2006



CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Ari Taragin, Esq.
Michael J. Snider, Esq.
Snider & Associates, LLC
104 Church Lane, Ste. 201
Baltimore, Maryland  21208

Complainant:                 Margaret Brantley
Agency Docket Number         OS-03-017
EEOC Case Number             100-2004-00917X

## FINAL ORDER

This Final Order is in reference to the subject complaint of discrimination Complainant filed against the Office of the Secretary (OS), U.S. Department of the Interior. The complaint was accepted and investigated by the OS. The Report of Investigation (ROI) was issued. Thereafter, Complaint requested a hearing before the Equal Employment Opportunity Commission (EEOC). The following issues were reviewed by the EEOC, Administrative Judge Richard E. Schneider, Washington Field Office, Washington, D.C., pursuant to Complainant's hearing request:

Complainant alleged discrimination based on her race (African-American), color (Black), sex (female), age (55), reprisal (prior EEO activity), harassment/hostile work environment when:

1. She was denied a promotion since 1989 while other employees who worked for the Assistant Secretary's Office had higher pay grades;

2. She was denied communication access, *e.g.* e-mail service since March 2002;

3. Her office was taken away, she was not given proper facilities to do her work, and she was made to walk three blocks to perform her work;

Complainant was subjected to the following incidents of harassment:

1. On July 22, 2003, in a meeting held with the Directors, she was informed by her supervisor that she would not be receiving a computer which would enable her to perform her daily duties;

2. On August 4, 2003, she was removed from her position and her work was disbursed among three other employees, she was placed in a division under another supervisor

and disallowed to communicate with clients or go to the Main Interior building to complete her work;

3. On August 8, 2003, she was asked about an assignment given to someone else to do;

4. On August 12, 2003, she was asked by her supervisor to submit copies of all e-mails she received which she responded to, and no other staff member was asked to submit their e-mails;

5. On January 22, 2004, Complainant's supervisor called her into her office and told Complainant not to communicate with anyone without talking to her first; and

6. On January 29, 2004, Complainant's supervisor tried to embarrass her by telling another Office Head that Complainant's co-worker was her best employee, and asking Complainant if she wanted to go work in another area.

On February 23, 2005, Complainant moved to amend her complaint again and proposed still more amendments in April 2005. By Order dated June 22, 2005, AJ Schneider accepted the additional amendments and ordered the Agency to investigate them.

The additional claims are as follows:

7. Complainant was subjected to a hostile work environment. Examples include being denied a promotion, having to pack office supplies in spite of her previously injured back, denied a private office and being denied a key to her office.

8. Complainant was denied a partition wall for her office space.

Title 29 C.F.R. 1614.109(g), states that an Administrative Judge (AJ) may issue findings and conclusions without a hearing, either upon motion by a party or upon the AJ's own initiative, if the AJ determines some or all material facts are not in genuine dispute and the record contains no genuine credibility issue. AJ Schneider, after reviewing the Investigative Record, found that the subject complaint was appropriate for the issuance of a decision without a hearing and concluded Complainant failed to establish the Agency discriminated against her based on her race, color, sex, reprisal, nor was she harassed or subjected to a hostile work environment as alleged. The Office of Civil Rights received the AJ's decision on February 14, 2006.

The Judge reviewed all of the evidence and concluded that Complainant was not harmed in any way by being moved from office to office, denied access to e-mail and/or a computer, having a previous office converted to a conference room, having to turn in keys, having to share office space with another employee, denied a partition wall or being present when management expressed an opinion of another employee. There is no evidence showing the actions complained of, affected a term, condition or benefit of Complainant's employment. Complainant could not prove disparate treatment, nor could she show the actions were so severe or pervasive enough to

2

constitute harassment or subjection to a hostile work environment. Finally, DOI articulated legitimate reasons for its actions in all instances.

## FINDINGS AND CONCLUSION

Based on our review of the entire record, we concur with and adopt AJ Schneider's decision finding no discrimination based on race, color, sex, reprisal, nor was Complainant harassed or subjected to a hostile work environment as alleged. The Department of the Interior intends to fully implement this decision. This is the Department of the Interior's final order in this complaint. If Complainant is dissatisfied with the final order, Complainant may exercise the following appeal rights.

## APPEAL RIGHTS TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Title 29 C.F.R. Section 1614.402(a) provides that an appeal of the agency's final order to the EEOC must be filed by a Complainant within thirty (30) days of receipt of an agency's or Administrative Judge's decision. If the Complainant is represented by an attorney of record, the 30-day time limit shall begin to run from the date of receipt by the attorney of the notice of final decision. All such appeals must be filed with the EEOC at the following address:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> Post Office Box 19848
> Washington, D.C. 20036

As an alternative to mailing, appeals may be hand-delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> 1801 L Street, N.W.
> Washington, D.C. 20507

As a further alternative, appeals may be sent by facsimile (fax) to:

> (202) 663-7022

The Complainant must furnish a copy of the appeal to the Agency at the same time it is filed with EEOC. In or attached to the appeal to the EEOC, the Complainant must certify the date and method by which service was made on the opposing party. The Complainant should use EEOC Form 573, Notice of Appeal/Petition (copy enclosed).

## CIVIL ACTIONS

In lieu of an appeal to the EEOC, Complainant may file a civil action in an appropriate United States District Court within 90 calendar days of receipt of this final order.

If Complainant files an appeal with the EEOC, and Complainant is not satisfied with the Commission's decision, Complainant may file a civil action in a United States District Court within 90 calendar days of receipt of the EEOC's final decision.

Complainant may also file a civil action any time after 180 calendar days from the date of filing an appeal with the EEOC, if there has been no final decision by the EEOC. Upon request of the Complainant, the Civil Rights Act and the Rehabilitation Act give the Court discretionary authority to appoint an attorney without payment of fees or costs by the Complainant. The grant or the denial of Complainant's request is within the sole discretion of the Court. Complainant's request and the civil action must be filed within 90 days of the date the final decision is received. Please note that the Age Discrimination in Employment Act contains no specific provision for a court-appointed attorney.

If Complainant files a civil action involving this complaint, Complainant must specifically name the Secretary of the Department of the Interior, Gale A. Norton, as defendant. Failure to do so may result in the loss of any judicial redress to which Complainant may be entitled.

It is important to note that 29 C.F.R. Section 1614.409 states, "Filing of a civil action under 1614.408 or 1614.409 shall terminate Commission processing of the appeal. If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Sincerely,

Sharon D. Eller
Director
Office of Civil Rights

Enclosures - EEOC Appeal Form 573
AJ Decision dated February 14, 2006

cc: Margaret Brantley, Complainant
Complaints Processing and Adjudication, OS
Kerry E. Creighton, Esq., Office of the Solicitor
EEOC AJ Richard E. Schneider

4