UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| MARGARET R. BRANTLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1137 (ESH) |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, SECRETARY, | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff, Ms. Margaret R. Brantley, by and through her undersigned counsel, Snider & Associates, LLC, timely responds in opposition to the Defendant's Motion to Dismiss, or in the alternative, motion for summary judgment in the above captioned manner.

Plaintiff asserts that there are genuine issues of material facts and that the evidence is such that a fact finder could return a verdict for the Plaintiff on the issue of discrimination. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248-251 (1986). In the alternative, Plaintiff proved a prima facie case of discrimination and hostile work environment based on sex, race, color, age and prior protected activity and showed the Defendant's proffered reasons are false, not legitimate and pretext for discrimination.

Respectfully Submitted,

_/s/ JIW_____
Jason Weisbrot, Esq. (MD Bar: 28074)

Snider & Associates, LLC
104 Church Lane, Suite 100
Baltimore, Maryland 21208
Phone: (410) 653-9060
Fax: (410) 653-9061

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MARGARET R. BRANTLEY,                   )
                                        )
        Plaintiff,                      )        Civil Action No. 06-1137 (ESH)
                                        )
v.                                      )
                                        )
DIRK KEMPTHORNE, SECRETARY,             )
DEPARTMENT OF THE INTERIOR,             )
                                        )
        Defendant.                      )
_____)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION
FOR SUMMARY JUDGMENT

        Plaintiff, Ms. Margaret R. Brantley, by and through her undersigned counsel,

Snider & Associates, LLC, timely submits this memorandum of points and authorities in

opposition to the Defendant's Motion to Dismiss, or in the alternative, motion for

summary judgment in the above captioned manner and states in support thereof:

BACKGROUND

        Plaintiff (an African American, dark skin, female, over the age of 40, with prior

protected EEO activity) is a veteran employee of the Federal Government with

distinguished service and highly positive Performance Ratings.  Plaintiff filed the

complaint in this civil action on July 2, 2003.   The complaint alleged disparate treatment

and discrimination based on age, sex, color, and/or retaliation, in violation of Title VII of

the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e-16, *et seq*.  The complaint

involved several allegations of discrimination: (1) the denial of promotions since 1989

while other employees who worked for the Assistant Secretary's Office were higher

3

grades; (2) the denial of communications access since March 2002; (3) Plaintiff's office was taken away, she was not given proper work facilities, and was made to walk three blocks to perform her duties; (4) on February 11, 2005, she was denied a promotion; (5) On January 12 or 13, 2005, Plaintiff was requested to pack up office supplies in spite of previous back injuries, which caused aggravation of her condition; (6) On January 24, 2005, Plaintiff was denied a private office and also denied a key to her office; and (7) Plaintiff was denied a partition wall in her office. Each of these actions was the bases for the disparate treatment, discrimination, and reprisal claims.

<u>STATEMENT OF DISPUTED AND UNDISPUTED FACTS</u>

Plaintiff incorporates by reference Defendant's submission titled, "Statement of Material Facts to Which There Are No Genuine Issue," included in Defendant's Motion. These material facts which are not in dispute are not adequate enough to allow a fact finder to decide in the Defendant's favor. Plaintiff will show below that there are additional material facts in dispute and the Defendant is not entitled to judgment as a matter of law or fact.

1. Plaintiff does not dispute the facts as stated in paragraph 1.

2. Plaintiff does not dispute the facts as stated in Paragraph 2, but states she was placed in a GS-8 secretary position pending the outcome of her discrimination complaint and was only transferred to a GS-9 administrative assistant position, shadowing Nancy Davis, as a result of the settlement agreement in 1988. *See* Exhibit 1, p.28[1].

---

[1] Plaintiff cites to Exhibits in the record as "Exhibit 1, p. n", where n is the page number of the exhibit. Page numbers for Plaintiff's exhibits are located in the footer on the bottom left of the document.

3.    Plaintiff disputes the fact as stated in paragraph 3 to the extent Plaintiff

alleged retaliation from the settlement agreement in 1988, and a claim of

discrimination she filed in 1995 against Linda Richardson, as well as the

pending claim of discrimination filed in 2003. *Id.*, p.29-33.

4.    Plaintiff does not dispute the facts as stated in paragraph 4.

5.    Plaintiff disputes the fact as stated in paragraph 5 to the extent that she was

permanently assigned to BJ Thornberry as a result of the RIF, however, before

she was supposed to report, Mr. Thornberry indicated to her that he did not

want her to work in his section.  Within one month, Plaintiff was forced into

another position under Ms. Linda Richardson. *Id.,* p.29-30.

6.    Plaintiff does not dispute the fact as stated in paragraph 6.

7.    Plaintiff does not dispute the fact as stated in paragraph 7.

8.    Plaintiff disputes the facts as stated in paragraph 8 to the extent that Plaintiff

did request a promotion and/or accretion of duties for a GS-12 administrative

assistant position, but that Linda Richardson denied the requests based on

information she learned from Robin Friedman, an attorney for the Defendant,

regarding Plaintiff's pending EEO complaints. *Id.,* p.30.

9.    Plaintiff does not dispute the facts as stated in paragraph 9.

10.    Plaintiff disputes the facts as stated in paragraph 10 to the extent that her

position was included in the reorganization.  Plaintiff maintained that she was

the only African-American working directly for the assistant secretary of

Indian Affairs.  Mr. McDivitt had previously assured Plaintiff that her position

was not going to be moved. *Id.,* p.30-31.

11.     Plaintiff disputes the facts as stated in paragraph 11 to the extent that Mr. McDivitt was Plaintiff's first line supervisor up until he retired in 2003. Ms. Clark took over supervisory duties at that time. *Id.,* p.32-33.

12.     Plaintiff disputes the facts as stated in paragraph 12 to the extent that Mr. McDivitt did not request the desk audit until after he learned Plaintiff filed an EEO complaint against the Defendant. The auditor, Pearl Ing, was not provided the correct and complete position description, making the conclusion regarding the accretion of duties dubious. *Id.,* p.31, *See* Exhibit 2, p.1-4.

13.     Plaintiff does not dispute the facts as stated in paragraph 13.

14.     Plaintiff does not dispute the facts as stated in paragraph 14.

15.     Plaintiff does not dispute the facts as stated in paragraph 15.

16.     Plaintiff disputes the facts as stated in paragraph 16 to the extent that the Administrative Support Office existed prior to August 2003. Plaintiff and Mr. McDivitt worked in that function. Mr. McDivitt told Plaintiff that she was going to head up the office, with four staff members. Plaintiff does not dispute that the position was ultimately given to Diane Murth. Plaintiff initially provided significant technical support for both Ms. Murth and Ms. Berwald due to their lack of knowledge of administrative support functions. *See* Exhibit 1, p.30-33.

17.     Plaintiff does not dispute the facts as stated in paragraph 17.

18.     Plaintiff disputes the facts as stated in paragraph 18 to the extent that Ms. Murth and Ms. Clark had knowledge of Plaintiff's prior EEO activity in 2003.

19.     Plaintiff does not dispute the facts as stated in paragraph 19.

20. Plaintiff does not dispute the facts as stated in paragraph 20.

21. Plaintiff disputes the facts as stated in paragraph 21 to the extent that Ms. Miller did have knowledge of Plaintiff's prior EEO activity in 2003.

22. Plaintiff does not dispute the facts as stated in paragraph 22.

23. Plaintiff disputes the facts as stated in paragraph 23 to the extent that Mr. Middleton did have knowledge of Plaintiff's prior EEO activity in 2003; he learned directly from Ms. Hampton. *See* Exhibit 10, p.5.

24. Plaintiff disputes the facts as stated in paragraph 24.

25. Plaintiff disputes the facts as stated in paragraph 25.

26. Plaintiff disputes the facts as stated in paragraph 26 to the extent that Plaintiff did not recruit her daughter into the position, but rather provided Ms. Mason, the hiring official, with her daughter's resume.  Ms. Mason had knowledge that the applicant was Plaintiff's daughter when she decided to hire her. Plaintiff did not draft the position description.  Plaintiff was going to draft the position description per the instructions of Ms. Mason, but instead was abruptly stopped and called into Mr. Hopper's office. *See* Exhibit 4, p.3-5; *See* Exhibit 1, p.13-14, 32.

27. Plaintiff does not dispute the facts as stated in paragraph 27.

28. Plaintiff does not dispute the facts as stated in paragraph 28.

29. Plaintiff disputes the facts as stated in paragraph 29 to the extent that the amended claims of retaliation were like or related.

30. Plaintiff disputes the facts as stated in paragraph 30 to the extent that the amended claims of retaliation were like or related. *See* exhibit 5, p.6-7.

31.     Plaintiff does not dispute the facts as stated in paragraph 31. *Id.*

32.     Plaintiff does not dispute the facts as stated in paragraph 32. *Id.*

33.     Plaintiff disputes the facts as stated in paragraph 33 to the extent that Plaintiff

        did provide the names if individuals she asked for promotions between 1990

        and 1995 – she asked Mr. Camacho in 1990 for a promotion when she was

        sent on detail to represent the Department at the Combine Federal Campaign,

        Ms. Patricia Rogers in 1991, Ms. Sandy McCrary when she was on detail to

        the National Park Service, EEO office, Ms. Richardson in 1995 and then Mr.

        McDivitt and Mr. Feely in 2001-2003.  As for similarly situated employees,

        among Ms. Davis and Ms. Watkins, Plaintiff stated that every administrative

        assistant that worked for the Assistant Secretary was similarly situated and at

        a higher graded level. *See* Exhibit 3, p.3.

34.     Plaintiff does not dispute the facts as stated in paragraph 34.

35.     Plaintiff disputes the facts as stated in paragraph 35 to the extent that Ms.

        Davis and Ms. Brantley did the same work for an office of the assistant

        secretary.

36.     Plaintiff does not dispute the facts as stated in paragraph 36.

37.     Plaintiff disputes the facts as stated in paragraph 37 to the extent that

        Plaintiff's duties were assigned to Ms. Berwald, Ms. Winston and Mr. Cravatt

        prior to their promotions.  Furthermore, Plaintiff stated that she taught Ms.

        Berwald and Ms. Winston how to do various aspects of the position, as she

        was working in the support group under Mr. McDivitt prior to the formation

        of the new section. *See* Exhibit 1, p.33-35; *See* exhibit 7, p.2.

38.  Plaintiff does not dispute the facts as stated in paragraph 38.

39.  Plaintiff does not dispute the facts as stated in paragraph 39.

40.  Plaintiff disputes the facts as stated in paragraph 40, to the extent that the individuals were similar situated, as they were given Plaintiff's job duties and assignments prior to promotion. *See* Exhibit 7, p.2.

41.  Plaintiff does not dispute the facts as stated in paragraph 41.

42.  Plaintiff does not dispute the facts as stated in paragraph 42, but notes that the complaint regarding assignment of menial tasks occurred in 2005-present, post the filing of the 2003 complaint of discrimination.

43.  Plaintiff does not dispute the facts as stated in paragraph 43.

44.  Plaintiff does not dispute the facts as stated in paragraph 44.

45.  Plaintiff does not dispute the facts as stated in paragraph 45, but notes that other employees still had BIA LAN connection, whereas Plaintiff lost her OS LAN and BIA LAN connections. *See* Exhibit 1, p.13-15.

46.  Plaintiff does not dispute the facts as stated in paragraph 46.

47.  Plaintiff does not dispute the facts as stated in paragraph 47, but notes that she was the only employee that had to travel to the Main Building everyday. *See* Exhibit 1, p.15.

48.  Plaintiff does not dispute the facts as stated in paragraph 48.

49.  Plaintiff does not dispute the facts as stated in paragraph 49.

50.  Plaintiff does not dispute the facts as stated in paragraph 50.

51.  Plaintiff does not dispute the facts as stated in paragraph 51.

52.  Plaintiff does not dispute the facts as stated in paragraph 52.

53.     Plaintiff disputes the facts as stated in paragraph 53 to the extent that there was already a conference room in Ms. Miller's office prior to relocating Plaintiff into another employee's office.

54.     Plaintiff disputes the facts as stated in paragraph 54 to the extent that Ms. Hampton knew that Plaintiff was suffering from a back injury and out of work for medical reasons when she called to request that she come to the office that day to pack up her items.  Furthermore, Plaintiff was not disciplined because she did go to the office the next available day and packed up her office, aggravating her back injury in the event.

55.     Plaintiff disputes the facts as stated in paragraph 55 to the extent that Plaintiff did not request the detail to Mr. Middleton's office. *See* Exhibit 10, p.3.

56.     Plaintiff disputes the facts as stated in paragraph 56 to the extent that the approval process was followed to have the partition wall built.  Mr. Harry Coldough indicated to Plaintiff that Mr. Middleton approved the request. *See* Exhibit 1, p.10-12.

57.     Plaintiff disputes the facts as stated in paragraph 57 to the extent that Plaintiff did not authorize the construction of the partition wall.  Plaintiff made a request to Mr. Middleton and Mr. Coldough, the individual who built the wall, told Plaintiff that he spoke to Mr. Middleton, who authorized the request. *Id.*

STATEMENT OF ADDITIONAL UNDISPUTED AND DISPUTED FACTS

1.  From 1987 to 1990, Plaintiff worked in the Library of the Department of the Interior as an Administrative Specialist GS – 9/11. *See* Exhibit 1, p.28.

2.  From 1989-1995, Plaintiff worked in the Office of the Assistant Secretary-Policy Management Budget, as an Administrative Specialist. *See* Exhibit 1, p.28.

3.  In the late 1980s, Plaintiff brought an EEO complaint against Mr. Richard Steele and Mr. Albert Comacho for third party sexual harassment. Part of the settlement of this Complaint was that Ms. Nancy Davis, who was a GS-12, would train Plaintiff to be an Administrative Officer at the GS-12 level for Mr. Philip Haymond, Plaintiff's first line Supervisor. *See* Exhibit 1, p.4.

4.  In November 1988, Plaintiff was promoted to Administrative Specialist, GS-11. *Id*.

5.  When Plaintiff began working in this capacity for Mr. Haymond, she requested a promotion to the GS-12 level from Mr. Haymond and Mr. Comacho, because she was performing the same duties for Mr. Haymond that Ms. Davis, who was a GS-12, was doing for her supervisor. *Id*.

6.  Plaintiff was told that because she was now no longer working for the Director's office but rather for a Division Chief, she could not be promoted to GS-12. *See* Exhibit 1, p.5.

7.  In or about 1990, Plaintiff was assigned to the Graphics office. When she asked for a promotion, she was again told that because she was in a Division, she could not be promoted. *See* Exhibit 1, p.6.

8.  Plaintiff was eligible for the GS-12 position from the Office of Personnel Management.  *See* Exhibit 9, p.2.

9.  In 1995, Plaintiff was transferred back to the Director's office under the Assistant Secretary for Indian Affairs. All other Administrative Officers who worked as

Assistant Secretaries were at the GS-12 or 13 levels, who were then promoted to the GS-13 and 14 levels. *See* Exhibit 1, p.6.

10. Plaintiff remained at the GS-11 level. *See* Exhibit 1, p.6.

11. Other Directors' administrative personnel were GS-12 's and performed the same job duties as Plaintiff. *See* Exhibit 1, p.32-34.

12. In or about 2000, the Defendant switched the LAN computer system from the Office of Secretary network to the BIA, (Bureau if Indian Affairs) network. *See* Exhibit 1, p.23.

13. Most of Plaintiff's contacts and assignments came from the Office of the Secretary and she had to contact the employees at the Office of the Secretary as they dictated the rules and regulations for Plaintiff to follow, and Plaintiff needed the DOI network to do all of her work. *Id.*

14. Plaintiff spoke to Jerry Fiely, James McDivitt, Dianne Murth, and Woody Hopper, who did not do anything to help her. *Id.*

15. Mr. McDivitt stated in his affidavit that while Plaintiff did have a computer, it did not have connectivity outside the BIA network. *See* Exhibit 6, p.4.

16. Plaintiff needed access to a computer connected to the main DOI network, for contracting. *See* Exhibit 1, p.23.

17. In 2002, dumb terminal internet hookup was installed into the Human Resources office which allowed access to the Internet. *Id*.

18. However, Plaintiff was unable input her work including budget, contracts, and telecommunication, because her supervisors would not allow her to have the software needed to be place on the dumb terminal for her to do so. *Id*.

19. In 2001, Plaintiff's office was taken away and she was moved from her office in the Main Defendant Building to the G Street Office. *Id*.

20. Prior to the move, Plaintiff was told by her supervisor, Jerry Feely, that she would not be moved because she was working for the Assistant Secretary. *Id.*

21. The move caused Plaintiff to have to walk everyday to the main building in order to do her job. *Id.,* p.23-24.

22. Plaintiff told Mr. McDivitt about the hardship, but Mr. McDivitt did nothing about it until the building lease on G Street terminated. *Id.,* p.15.

23. When Plaintiff was forcibly moved to G Street, she was given inadequate work facilities and she was not given the computer access she needed to do her job which caused her to have to walk 3 blocks everyday between the Main building and the G Street Office, several times a day, in each direction, in order to do her job. *Id.,* p.23-24.

24. In 2004, Mr. Christenson was approached by Debbie Clark who asked if he would be interested in having Plaintiff work in his office. *See* Exhibit 11, p.8-9; *See* Exhibit 12, p.2-3.

25. Mr. Christenson needed help and needed someone in an administrative position, and wanted Complaint to fill that position. *See* Exhibit 11, p.8-9; *See* Exhibit 12, p.2-3.

26. After Ms. Brantley began working for Mr. Christenson, for several weeks, he encouraged her to apply for the position. *See* Exhibit 11, p.8-9; *See* Exhibit 12, p.2-3.

27. Mr. Christenson asked to advertise the position and it was never announced. *See* Exhibit 11, p.8-9; *See* Exhibit 12, p.2-3.

28. Mr. Christenson testified that this was very peculiar and that he had never seen such a delay in advertising a position description in his thirty-one (31) years of experience. *See* Exhibit 11, p.8-9; *See* Exhibit 12, p.2-3.

29. Several months later, in or about late 2004-early 2005, Debbie Clark posted an administrative officer job in the Office of the Budget. *See* Exhibit 1, p.33.

30. Plaintiff applied to be the administrator for that position and once again encouraged her to apply. *See* Exhibit 1, p.33.

31. The Budget Director position was eventually given to Ms. Mary-Jane Miller, and Debbie Clark then cancelled the administrative assistant position. *See* Exhibit 1, p.33.

32. In January 2005, Plaintiff was at home and under a doctor's care because of a back injury. *See* Exhibit 1, p.24.

33. Plaintiff was called at home by Ms. Sally Hampton and was told that Plaintiff was being moved out of her office and Plaintiff needed to come in to pack up her office. *Id.*

34. Plaintiff said no because of her injuries and that she would try to come into the office the following Monday to clean out her desk, and Plaintiff began to pack the office and re-injured her back. *Id.*

35. Plaintiff was asked to pack up her office by Sally Hampton under the direction of Ms. Clark. *Id.*

36. Ms. Clark was aware of Plaintiff's prior EEO activity.

37. This allegation has not been refuted by any Defendant testimony.

38. On January 24, 2005, Ms. Hampton told Plaintiff that her office was being moved. *See* Exhibit 1, p.24.

39. Ms. Miller had ordered this because she wanted to make Plaintiff's office into a conference room. *Id.*

40. In her affidavit, Ms. Miller stated that there was no conference room. *See* Exhibit 11, p.9.

41. The office did have a full conference room with a television, speaker phone, table and chairs.  This room was used for meetings and parties in the past. *See* Exhibit 1, p.16, 24-25.

42. Ms. Miller then placed Plaintiff into an office with Emily Thomas because she knew that Plaintiff would not be there much longer. See Supplemental ROI tab F-7 at 3.

43. All other administrative officers had their own offices. *See* Exhibit 1, p.16, 25.

44. Even after Plaintiff was moved, Ms. Miller refused to give Plaintiff a key to the new conference room (Plaintiff's old office) even though Plaintiff needed it in her capacity as administrative officer.  *Id.*

45. Plaintiff's detail with Ms. Miller ended in or about March, 2005. *See* Exhibit 1.

46. Plaintiff was told to go back to her old office under Ms. Clark when she was told by Sally Hampton that Mr. Middleton was looking for an administrative officer. *Id.*

47. Ms. Hampton said that she would speak to Mr. Middleton and told him about Plaintiff's EEO Complaint and "personality disputes". *See* Exhibit 10, p.5.

48. Mr. Middleton also stated that it was standard operating procedure to ask about prior EEO activity. *Id.*

49. Plaintiff spoke to Mr. Middleton who said that she could work for him and Plaintiff began working that day. *See* Exhibit 1, p.34.

50. When Plaintiff came to the office, she was placed in the same room as the refrigerator, coffee pot, microwave, and food in the cook closet, and a closet with a sink in it. *See* Exhibit 1, p.11, 25, 34.

51. It also smelled and was not nice for customers. *Id.*

52. The room had not been used before as an office. *Id.*

53. Plaintiff spoke to Ms. Hampton about this who said it was ok to get the wall. *Id.*

54. Plaintiff asked Mr. Middleton for a partition wall to be placed in the room and when Mr. Harry Coldough came in to measure the room, he said that he had spoken to Mr. Middleton who said it was ok. *Id.*

55. Later, Mr. Middleton became upset when Mr. Coldough began to measure because he had no knowledge of this and told his supervisor. *Id.*

56. The supervisor said that he thought that Mr. Middleton had given his approval and on the same day, Mr. Middleton held a meeting and told Plaintiff she could no longer work for him. *See* Exhibit 1, p.11, 26, 34-35.

57. Mr. Matt Cravatt, the space manager, was aware of all of the conversations with Harry and knew that Plaintiff did nothing wrong. *Id.*

58. After the meeting with Ms. Brantley, Mathew Cravatt, and Harry Coldough, Mr. Middleton told Ms. Brantley's supervisors that he could no longer work with her. *Id.*

59. Since this time, Plaintiff has not been given any meaningful work or assignments.

*See* Exhibit 1 p.26.

Given that there are substantial questions of material fact in dispute over virtually all of Plaintiff's claims, this Court must deny the Defendant's motion. The familiar three part shifting of burdens analysis under *McDonnell Douglas Corp. v. Green*, and *Texas Dept. of Community Affairs v Burdine*, don't even begin in this case because the Defendant has not established the undisputed facts sufficient to show there is no genuine material issue in dispute. Plaintiff has not been allowed her full and fair opportunity to pierce the actual reasons and motivations behind the Defendant's actions.

It is well settled that the judge's function is not to weigh the lack of material disputed facts or evidence with the purpose of determining the truth of any facts regarding any dispositive legal matter. Instead, at summary judgment, the court must determine whether the moving party has dispelled any genuine issues of material disputed facts over the non moving party's factual evidence. The *"requirement is that there be no genuine issue of material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49, 255 (1986). This Court must also be clear that no material dispute exists *with regard to certain evidentiary burdens that each party will bear to prove their case*. *Id*. This Circuit thus fully recognizes the precedent set by Rule 56(c), Fed. R. Civ. Proc. "Summary judgment is only appropriate, *after adequate time for discovery and upon motion*, against a party who fails to make a showing of evidence sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Rule 56(c), *Celotex Corp., 477 U.S. at 322 (emphasis* supplied). Such

material and disputed evidence will thus always and only be determined at the conclusion of any litigation by the minds of a reasonable jury. *Id.*, *Anderson, 477 U.S. at 248.*

APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Generally, when considering a Rule 12(b)(1) motion to dismiss based upon lack of subject matter jurisdiction, courts should accept the plaintiff's well-pleaded allegations as true and construe the complaint in favor of the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).  The case law is very clear that a Rule 12(b)(6) Motion to Dismiss only tests the legal sufficiency of the complaint, *see Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991) (citations omitted); *see also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Only when considering a factual challenge to the court's subject matter jurisdiction, will "[t]he district court…apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists...." Id. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

When deciding whether to grant a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  Furthermore, when the jurisdictional facts are intertwined with the merits of the dispute, the court should decline to decide the

jurisdictional issue. *Oram v. Dalton*, 927 F.Supp. 180, 184 (E.D.Va.1996) (citing Adams, 697 F.2d at 1219).

Rule 56(c) of the Rules of the Court of Federal Claims provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. of C. P. Rule 56(c).*

Summary judgment is a drastic remedy which should be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-2514 (1986) ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment....").

On a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are" for the trier of fact. *Id.*, 477 U.S. at 249-255. Thus, competent and specific evidence by a single declarant may create a triable issue as to a material fact although opposed by many other declarations to the contrary. *United States v. One Parcel of Real Property*, 904 F.2d 487, 491-92 (9th Cir. 1990).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. "At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct.

2072 (1992). Even if the underlying facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).

The United States Supreme Court stated that summary judgment is appropriate only where the trier of fact determines that, given applicable substantive law, no genuine issue of material fact exists. *Liberty Lobby*, 477 U.S. 242, 255 (1986). An issue is "genuine" if the evidence is such that a reasonable fact-finder could find in favor of the non-moving party. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). In the context of an administrative proceeding under Title VII, summary judgment is appropriate if, after adequate investigation, one of the parties has failed to establish the essential elements of his/her case. *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3d Cir. 1988). In response to a motion for summary judgment, the trier of fact's function is ***not to weigh the evidence*** and render a determination as to the truth of the matter, but ***only to determine*** whether there exists a genuine factual dispute. *Anderson*, 477 U.S. at 248-49.

The courts have been clear that summary judgment is not to be used as a "trial by affidavit." *Redmand v. Warrener*, 516 F.2 766, 768 (1st Cir. 1975). Initially, it is the burden of the complainant to establish that there is some substance to his/her allegation of discrimination. In order to sustain this burden, the complainant must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978). This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination occurred.

Discrimination cases generally turn on circumstantial evidence. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987), *cert. denied*, 484 U.S. 979 (1987).  A presumption of discrimination arises when a prima facie case is established. This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact ***could conclude that unlawful discrimination did occur.***  In the present case Complainant can establish a **prima facie** case of harassment, hostile work environment, and reprisal.

The Supreme Court held that once the plaintiff establishes a prima facie case, the defendant must then produce evidence that it took the action for a legitimate, non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  If the defendant fails to meet its burden, judgment must be entered in favor of the plaintiff as a matter of law.  If the defendant is able to meet its burden, the plaintiff may show that the defendant's proffered reasons are pretextual.  Once the factfinder finds that the proffered reasons are pretext, it may find discrimination. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3rd Cir. 1996)(en banc), *cert denied*, – U.S. –, 128 L.Ed.2d 1031 (1997).  The factfinder need find only that the discriminatory or retaliatory motive was a substantial motivating factor to find that the employer is liable.

In order to prevail, Complainant must show that the Agency's reasons for its actions were a pretext to mask discrimination, either because the agency more likely had a discriminatory motive, or because the stated reasons ***lacked credibility***. In *Texas Dept. Of Community Affairs v. Burdine***,** 450 U.S. 248 (1981)(emphasis added)**:**

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that

it was actually motivated by the proffered reasons. See Sweeney, supra, at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. [450 U.S. 248, 255] To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the [450 U.S. 248, 256] plaintiff will have a *full and fair opportunity to demonstrate pretext*. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

The Plaintiff retains the burden of persuasion. She will demonstrate, supra, that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the Court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See McDonnell Douglas*, 411 U.S., at 804 -805.

Summary Judgment should not be granted as Plaintiff has established the *prima facie* elements necessary for her disparate treatment, reprisal, and harassment claims. Specifically, Plaintiff has established that she was treated differently than those outside of her protected classes, was retaliated against for engaging in protected activity, and that she was actually harassed in a severe and pervasive manner creating a hostile work environment. Furthermore, there are genuine issues of fact in dispute and the credibility of the Defendant's witnesses is at issue. The Defendant is not entitled to a decision, without a hearing, as a matter of law or fact.

<u>ARGUMENT</u>

I.    Plaintiff stated a cause of action in which relief can be granted sufficient to
      defeat Defendant's Motion to Dismiss.

Defendant contends that Plaintiff's complaint must be dismissed because she

failed to exhaust administrative remedies as to many of her stated claims.

Plaintiff did exhaust her administrative remedies by filing an administrative

complaint with the EEOC regarding her Title VII and ADEA claims of discrimination

prior to filing the instant Complaint. *See* 42 U.S.C. § 2000e-16(c); *Brown v. General*

*Services Administration*, 425 U.S. 820, 832-33; *Jarrell v. United States Postal Service*,

753 F.2d 1088, 1091 (D.C. Cir. 1985) (a timely administrative charge is a prerequisite to

initiation of a Title VII action in district court).  Defendant's fear that it will defend

against claims that arise from decisions that were made long ago, *See Delaware State*

*College v. Ricks*, 449 U.S. 250, 256-257 (1980), is relieved by the fact that all but one

claim – that she was denied promotions on a continuous basis since 1989 – occurred after

2001 and were adequately investigated during the administrative proceeding.

In this case, the agency conducted its investigation; Plaintiff, subsequently,

requested a hearing before an EEOC administrative law judge[2] and filed the instant

Complaint pursuant to the code. *See* 29 C.F.R. § 1614.108(f).  As further alleged in the

complaint, and established in the record, Plaintiff was involved in numerous EEO

complaints against Defendant since 1989[3].  In the case at bar, Plaintiff filed the first

complaint of discrimination on July 2, 2003, and amended that Complaint on August 25,

2003 and February 5, 2004, alleging other incidents of discrimination.  On February 24,

---

[2] The case was dismissed pursuant to the decision of the Administrative Judge, dated February 6, 2006.
[3] There have been at least three other prior EEO complaints.

2005, the Court issued a Notice of Intent to Issue a Decision Without a Hearing. The formal complaint was amended in February and April, 2005 and the Judge ordered that a supplemental report be prepared based on the amendments. On or about December 12, 2005, Plaintiff received the Judge's second Notice of Intent to Issue Decision without a Hearing. On February 6, 2006 the Administrative Judge issued an order that dismissed Plaintiff's EEOC Case No. 100-2004-00917x. Plaintiff, subsequently, timely filed this civil action within the 90-day statutory period from the receipt of the final order.

Defendant concedes that Plaintiff's claim are sufficient if they are "like or reasonably related to the allegations of the charge and grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *see* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

    A.    Plaintiff did exhaust her administrative remedies as to the claims of non-promotion in the instant Complaint.

It is undisputed that Plaintiff contacted an EEO counselor in March 2003 and filed a complaint of discrimination in July 2003. *See* Exhibit 11. Furthermore, as Defendant concedes, all of the stated claims in the instant complaint were accepted for investigation as continuous and on-going discrimination[4]. *Id.*

Defendant's argument narrowly portrays the burden on Plaintiff under Rule 12(b)(6). As stated in her complaint of discrimination, Plaintiff was denied an accretion of duties promotion, based on the same job duties that higher graded employees performed, on June 12, 2003, within 45 days of the filing date. Furthermore, she

---

[4] Defendant alleges that Plaintiff did not exhaust her administrative remedies with regard to amended complaints in February and April 2005 because she did not contact an EEO counselor or file a complaint of discrimination. But filing the amended complaints of like or related claims to a pending EEO complaint of discrimination constitutes exhaustion of administrative remedies. *See* MD-110, Chapter 5 ("At any time prior to the agency's mailing of the notice required by § 1614.108(f) at the conclusion of the investigation, § 1614.106(d) permits a complainant to amend a pending EEO complaint to add claims that are like or related to those claim(s) raised in the pending complaint. There is no requirement that the complainant seek counseling on these new claims.")

maintained that the failure to promote Plaintiff through non-competitive, i.e. accretion of duties, and/or competitive means was on-going and continuous since her settlement with the Agency in 1988. *See* Exhibit 11.  Plaintiff established a record of incidents in which she requested promotions based on her duties and was repeatedly denied, detailed and/or relocated. *Id.*, p.16.  In addition, Plaintiff contended in the complaint, and established via the record evidence, that her duties were shared with other employees, between 2003 and 2006, who performed at higher graded levels. *See* Exhibit 1, p.2-7; *see also* Exhibit 7.

While Defendant correctly notes the precedent of *National R.R. Passenger Corp. v. Morgan* as it applies to non-selection claims, Defendant concedes the very flaw in the argument – Plaintiff's claims are generally[5] not allegations of non-selection for competitively posted positions, but rather repeated claims post-settlement that she was supposed to be promoted to the GS-12 administrative officer position in accordance with the work she performed compared to other administrative assistants in assistant secretary's offices. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 122; *see also Shea v. Rice*, 409 F.3d 448, 451 (D.C. Cir. 2005).

  B.    Plaintiff did exhaust her administrative remedies as to the claims in her amended complaints in February and April 2005.

The claims of discrimination in Plaintiff's amended complaints in February and April 2005 were like or related to the initial claims raised because they were retaliatory acts for the filing of the complaint in 2003.  In fact, the amended complaint in August 2003 specifically names Ms. Clark, Ms. Brannon and Ms. Murth as discriminating

---

[5] Plaintiff did claim discrimination when Ms. Miller cancelled a vacancy posting for which Plaintiff applied under advisement of Mr. Christensen that she would be good for the position. *See* Exhibit 1, p.9-10; *see also* Exhibit 11, p.8.  That discriminatory act did occur within 45 days of the February 2005 amended complaint of discrimination.

officials, the same supervisors that were contributing to the hostile work environment[6].

The Defendant's contention that Plaintiff's amended complaints prevented the Agency

from having any opportunity to address Plaintiff's claims is without merit, considering an

entire supplemental record was established with ample investigation into the post-2004

claims of discrimination[7].  Thus, Plaintiff's claims of discrimination alleged in the

amended complaints should not be dismissed as they are like or related retaliatory acts for

the initial filing.

   C. Plaintiff did allege claims of not being assigned meaningful and complex work assignments in her complaint of discrimination and amended complaints, which were investigated in the administrative process.

  Plaintiff does not allege the failure to receive meaningful or complex work

assignments for the first time in federal court.  In her initial complaint, Plaintiff stated

that since 2004 her job duties and work assignments have been diluted, often being taken

away and given to other employees to justify their non-competitive promotions. *See*

Exhibit 11, p. 16.  She further alleged that she was not allowed to take advantage of

opportunities offered by other employees to do higher graded work. *Id.*  Furthermore, she

specifically stated she was not given meaningful and complex work after filing her initial

complaint in her affidavit. *See* Exhibit 1, p.22.

   D. Plaintiff's claims regarding G street and the lack of working facilities and OS LAN connection were timely.

  Defendant contends that Plaintiff's claims of discrimination with regard to the

move to G Street and lack of OS LAN connection were not timely because she was

---

[6] While the issue involving the partition wall did not involve Ms. Clark directly, it was Plaintiff's contention that Mr. Middleton, having knowledge of her prior EEO activity from Ms. Hampton, a subordinate of Ms. Clark, was thereafter acting in retaliation on behalf of Ms. Clark, who controlled finances for Mr. Middleton's office. *See* Exhibit 1, p.11-12.
[7] The fact that the Agency successfully defended against Plaintiff's administrative complaint through a decision to dismiss without a hearing dissipates the argument that there was not ample investigation into the claims.

moved in late 2001. Defendant's argument, however, fails to accord the proper timeline of the claims – by Defendant's own statement of the facts, Plaintiff was still working in the G Street office in 2004 when she was moved to the Main Building, after she filed her initial and amended complaints. *See* Defendant's Statement of Undisputed Facts, p. 13-14; *see also* Exhibit 1, p.14. Even without the contention of a continuing violation, which Plaintiff did claim, as she was forced to walk three blocks between three buildings daily to complete her tasks, whereas other employees moved did not feel the same severe impact of having to coordinate between offices in both buildings, there was a discrete act within the 45 day window. *Id.*

II.    Plaintiff met her burden of showing a prima facie case of discrimination.

Under the tripartite analysis first enunciated in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), the first step and initial burden is on the plaintiff to establish that there is some substance to his/her allegation of discrimination. In order to sustain this burden, the plaintiff must establish a prima facie case of discrimination. *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978). This means that the plaintiff must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur.

The plaintiff can establish a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, *i.e.,* that a prohibited reason was a factor in the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. The plaintiff may also set forth evidence of acts from which, if otherwise unexplained, an inference of discrimination can be drawn. *Furnco,* 438 U.S. at 576.

The second part of the required tripartite analysis enunciated in *McDonnell Douglas*, requires that the defendant must articulate a legitimate, nondiscriminatory reason for its action(s). *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). After the Defendant has offered the reason for its action, the burden returns to the plaintiff to demonstrate, by a preponderance of the evidence, that the Defendant's reason was pretextual, that is, it was not the true reason or the action was influenced by legally impermissible criteria. *Burdine,* 450 U.S. at 253; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993). In order to prevail, Plaintiff must show that the Defendant's reasons for its actions were a pretext to mask discrimination, either because the Defendant ***more likely*** had a discriminatory motive, or because the stated reasons ***lacked credibility***. *Burdine*, at 248. Further, evidence of pre-selection operates to discredit the Defendant's explanation for its decision. *Goostree v. State of Tennessee*, 796 F.2d 854, 861 (6th Cir.1986). Finally, **all that is needed** for a finding of discrimination under Title VVI and the ADEA is that the Plaintiff rebutted the Defendant's alleged non-discriminatory reasons for its actions. *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097 (2000). This circuit applies the same burden shifting analysis to ADEA cases that has evolved in Title VII discrimination and retaliation cases. *See Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984).

The courts have further noted that the third step in the burden-shifting analysis "mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his [or her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel*, 232 F.3d at 90. Plaintiff has set forth sufficient evidence of prima facie

28

discrimination and by affidavit testified to incidents of several adverse material employment actions in this case. *Id.*

The Supreme Court has held in the employment discrimination context that once the plaintiff establishes a prima facie case, the defendant must then produce evidence that it took the adverse material action for a legitimate, non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-509 (1993). If the defendant fails to meet its burden, judgment must be entered in favor of the plaintiff as a matter of law. *Id.* If the defendant is able to meet its burden, the plaintiff may show that the defendant's proffered reasons are pre-textual. This burden shifting allocation does not exist if Plaintiff offers direct proof of unlawful employment discrimination. *Id.* Once the factfinder finds that the proffered reasons are pretext, it may find discrimination. *Id.*; *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3rd Cir. 1996) (en banc), *cert denied*, 521 U.S. 1129, 138 L.Ed.2d 1031 (1997). The factfinder need find only that the discriminatory or retaliatory motive was the sole or substantially motivating factor to find that the employer is liable. *Id.* In order to meet her burden in this case, Plaintiff showed by the facts in the record that the Defendant's reasons for its actions were a pretext to mask discrimination, either because the defendant's sole motive was discriminatory, or because the alleged non discriminatory reasons **have reason to be suspect or *lack credibility***. *Id.* (emphasis supplied).

> "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See Sweeney, supra, at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. [450 U.S. 248, 255] To accomplish this, the defendant must clearly set forth, through the

introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the [450 U.S. 248, 256] plaintiff will have a *full and fair opportunity to demonstrate pretext*. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions."

*Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 254-256 (1981); *See Reeves v. Sanderson Plumbing Products, Inc*, 530 U.S. 133, 143 (2000) [plaintiff may attempt to establish that [s]he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence"] (emphasis supplied), (*citing*) *Texas Dept. of Community Affairs v. Burdine, 450 US 248, 255-56 (1981) (and) St. Mary's Honor Center, 509 U.S. at 511, 517 (1993)* ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination,) ("the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt.") additional cases cited therein omitted. *Id.* at 517. Thus, any rejection of Defendant's proffered reasons for its actions, conduct, and/or omissions in this case permits the Judge in this case to infer the ultimate fact of intentional discrimination by the Defendant. *Id*.

Plaintiff has met her prima facie cases of discrimination and retaliation. Plaintiff has shown that she was a member of a protected class – an African American, dark skin, female, over the age of 40, with prior protected EEO activity. She further proved that she was subject to adverse actions including non-promotions over a lengthy time period, and similarly situated employees outside of her protected class have been treated far better than her. She suffered a series of adverse employment action – she was not promoted despite performing similar work as higher graded administrative assistants, denied access to the computer systems that enable her to perform her job functions and proper work facilities, denied meaningful or complex work assignments, and relocated to the G Street office in 2001, among other discriminatory and harassing actions that constituted hostile work environment, as shown below. *See* Exhibit 11. Those similarly situated employees doing the same exact work have been promoted to higher grade levels. As for retaliation, Plaintiff has filed several EEO complaints, the Defendant has been aware of these Complaints, Plaintiff had been subjected to adverse actions, and there is a nexus between the EEO complaints and the adverse treatment[8].

Plaintiff's heavy burden now merges with the ultimate burden of persuading the Judge that she has been the victim of intentional discrimination. She may succeed in this either by directly persuading the court with any evidence that the Defendant's decision-making was pre-textual or by inference was more likely motivated indirectly by unlawful discrimination. *Id*.

    A.    Plaintiff proved a prima facie claim of discrimination based on race, gender, age, color and prior protected activity.

---

[8] See Argument below regarding Mr. Middleton's knowledge of Plaintiff's EEO activity and his refusal to work with her.

The Plaintiff's complaint involved several allegations of discrimination: (1) the denial of promotions since 1989 while other employees who worked for the Assistant Secretary's Office were higher grades; (2) the denial of communications access since March 2002; (3) Plaintiff's office was taken away, she was not given proper work facilities, and was made to walk three blocks to perform her duties; (4) on February 11, 2005, she was denied a promotion; (5) On January 12 or 13, 2005, Plaintiff was requested to pack up office supplies in spite of previous back injuries, which caused a re-aggravation of her condition; (6) On January 24, 2005, Plaintiff was denied a private office and also denied a key to her office; and (7) Plaintiff was denied a partition wall in her office. There is sufficient evidence to show a prima facie case of disparate treatment, and discrimination based on age, sex, color and/or retaliation for engaging in protected EEO activity.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1).*

Where a plaintiff alleges individual disparate treatment but relies on circumstantial evidence of discrimination, a familiar tripartite burden-shifting test governs the court's analysis of whether there remains a triable issue of fact. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000). First, the plaintiff must establish a prima facie case of discrimination by showing that he or she 1) belonged

to a protected class; 2) suffered an adverse employment action; and that 3) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003).

Title VII, as amended, makes it unlawful for an employer "to discriminate against any of his employees … because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. §2000e-3(a). *Burlington Northern Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2411 (2006). The anti-retaliation provision of Title VII, unlike its substantive sections, is not limited to discriminatory actions that only affect the terms and conditions of employment, the so called "adverse employment action". *Id*. at 2413-2414. The Court of Appeals for the D.C. Circuit specifically held that "[t]he statutory retaliation clauses [including that of Title VII] prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *See Rochon v. Gonzales*, 438 F.3d 1211, 1217-1218 (C.A.D.C.2006), *citing,* EEOC Compliance Manual, §8-II.D.3 (1998). (emphasis supplied).

The Court also held that a "causal connection ⋯ may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse ⋯ action took place shortly after that activity." *Accord, Burlington*, 126 S.Ct. at 2415-2416. ("*a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have*

*dissuaded a reasonable worker from making or supporting a charge of discrimination.*") (emphasis supplied).

In order to establish a **prima facie** case of reprisal, the Plaintiff must demonstrate that:

(1) the plaintiff engaged in Title VII, ADEA or other protected activity;

(2) the Defendant was aware of her protected activity;

(3) she was subjected to adverse treatment by the Defendant; and

(4) a nexus exists between the protected activity and the adverse action.

*See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986); *see also* EEO Compliance Manual, Section 8; *McGuire v. Department of the Interior*, EEOC No. 01974949 (1999), 100 FEOR 3063.

In this case, Plaintiff provided sufficient evidence to show the Defendant's retaliation toward her based on her prior protected EEO activities. Plaintiff engaged in prior protected activity when she filed complaints of discrimination, most recently in 2003, naming Ms. Debbie Clark, among others, as discriminating officials. *See* Exhibit 11. A reasonable fact-finder could find that these actions, particularly when considered collectively, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Edwards v. Town of Huntington*, Slip Copy, 2007 WL 2027913 (E.D.N.Y. 2007), *citing,* Burlington *Northern*, 126 S.Ct. at 2415.

Plaintiff further established by a preponderance of the evidence that she was discriminated against when she was not promoted after her settlement agreement in

1988[9].  Since that time, she has worked as an administrative assistant for the Assistant

Secretary of Indian Affairs and all other administrative assistants in the Department were

higher graded.  Surely, Plaintiff is not expected to know the name of each individual

administrative staff member, but the fact is undisputed that those staff members were

higher graded.  Furthermore, the fact that Plaintiff concedes that the other administrative

assistant of an Assistant Secretary would not work for the same supervisor for which she

worked – Plaintiff was the only administrative assistant working for the Assistant

Secretary of Indian Affairs – does not dispositively cause her claims to fail.

Between 1988 and 1990, Plaintiff performed the same work as Nancy Davis, a

higher graded administrative staff member, who Plaintiff shadowed.  The promotions

Plaintiff received in 1987 and 1988 should not preclude her from being properly graded

nor does it prove that the Agency did not discriminate against her thereafter.

Furthermore, the fact that the Agency continually detailed Plaintiff to new supervisors,

i.e. Mr. Thornberry and Ms. Miller, should not defeat her claims that the Agency failed to

promote her despite performing higher graded work, similar to other higher graded

administrative staff, especially considering the Agency decided to detail her out from Mr.

Thornberry within the month. *See* Exhibit 1, p.29.  Plaintiff did request a promotion from

Ms. Richardson, when she was working for a director,[10] but was thwarted by retaliatory

motives based on Plaintiff's prior protected activity. *See* Exhibit 1, p.30-31.

Plaintiff submitted an updated position description to her supervisor in 2002

because her position description of record did not reflect the duties she was performing

---

[9] Defendant's argument that Mr. Haymond attempted to obtain a GS-12 position for Plaintiff but was
prevented by a hiring freeze serves to prove Plaintiff's contentions that she was eligible and deserving of a
promotion post-1988. *See* Exhibits X and Y.
[10] The alleged hiring freeze is pretext for discrimination, as evidenced by the Agency's failure to promote
Plaintiff after the hiring freeze ceased and she was detailed to work for a Director.

for the office. *See* Exhibit 1, p.30-31.  Mr. McDivitt agreed to have the new position description updated, to reflect the same grade as similarly situated employees in the Department Administrative staff positions, but it was ultimately denied by Ms. Brannon. *Id.*  It was not until MS. Brannon told Mr. McDivitt that Plaintiff filed a claim of discrimination against him that he requested the mock desk audit, for which Plaintiff was not present, to pre-textually deny any chance Plaintiff had of receiving a non-competitive promotion. *Id.*  defendant conce3ded that when Plaintiff's budget duties were transferred to the new department, the staff members that did the work were promptly non-competitively promoted to higher graded positions. *See* Defendant's Motion, p.42.

The non-promotions between 2003 and 2005 were especially discriminatory based on Plaintiff's prior protected activity when she filed a complaint of discrimination and amended complaints in 2003 naming Ms. Clark, Ms. Brannon, Ms. Miller and Ms. Hampton as discriminating officials. *See* Exhibit 11, p. 3.  The non-promotion under Mr. Christiansen was especially retaliatory due to the circumstances surrounding the posting of the vacancy and sudden cancellation by Ms. Miller. *See* Exhibit 11, p.7-8; *see also* exhibit 12.  There is no argument that Ms. Berwald, Ms. Winston and Mr. Cravatt were similarly situated in 2004, *see* Exhibit 1, p.32-33, until Defendant non-competitively and competitively promoted each – Ms. Berwald twice in three years. *See* Defendant's Statement of Undisputed Facts, p.12-13.  It is most interesting that each was promoted after being assigned some of Plaintiff's duties. *See* Exhibit 7.  Thus, the allegations in her complaint and supporting record were sufficient to state prima facie claims of discrimination based on non-promotion[11]. *See* Def. Exh.U.

---

[11] Defendant's counsel alleged that Plaintiff and/or Plaintiff's counsel engaged in some questionable behavior to establish disputed material facts.  Rather, Plaintiff was honestly confused during the deposition

Defendant cancelled the vacancy announcement with knowledge that it was posted for the purposes of having Plaintiff promoted. *See* Exhibit 12. Defendant's contention that there is no evidence of discrimination with regard to the cancellation is without merit. It is inconceivable that Ms. Miller decided to cancel the vacancy announcement because she had a GS-7 administrative assistant that would do the work. Plaintiff alleged, and the facts supported her, that Ms. Clark was motivated by the filing of Plaintiff's amended complaints when she prompted Ms. Miller to cancel the vacancy announcements. *See* Exhibit 11, p.7-8; *see also* exhibit 12.

Even if the non-promotion claims are not actionable, the evidence of discriminatory motive and bias can be used as background evidence to prove the discrimination that occurred post-2003, as discussed below.

Plaintiff similarly can show discrimination occurred when she was forced to move to the G Street offices and walk three blocks daily to perform her job functions without the use of an OS LAN intranet connection. First, prior to the move, Mr. Fiely assured Plaintiff that she would be allowed to remain at the Main office to her work needs. As an administrative assistant in the office, she was responsible for coordinating with other offices in the departments, therefore, required OS connection[12]. *See* Exhibit 1, p.14-15. It was not even necessary for Plaintiff to be moved, but rather was done for convenience. *See* Defendant's motion, p.47.

---

as to questions surrounding her non-promotions as discrimination. It should have come as no surprise to Defendant that Plaintiff alleged the non-promotions were retaliation, as she stated in her complaint and the voluminous administrative record. The proffered modification during the deposition by Plaintiff's counsel, therefore, was specifically to clarify that while Plaintiff stated she did not think the non-promotions were discriminatory, i.e. based on race, gender, color and age, she did believe them to be retaliatory. *See* exhibit A, p.106. In fact, Plaintiff testified that she approached her counsel to discuss the confusion immediately upon taking a break. *See* Exhibit A, p.97.

[12] Plaintiff concedes that all employees did not have internet due to the *Cobel* litigation, but the issue in this case was OS LAN internet and BIA intranet connection.

Furthermore, the Defendant's proffered reasons that many employees were moved are pretext for the discrimination against Plaintiff. First, Plaintiff was moved well after others had already been settled at the G Street. In other words, her move was not planned and implemented with the moves of the other offices. Her position was not even part of the reorganization. Second, Plaintiff was more severely affected by the move – she had to walk daily to Main Building to complete her work assignments. *Id.* She was not given the OS LAN internet or BIA intranet connections that she needed to perform her job duties. *Id.* These actions, taken in context with the other actions complaint of in this action, do constitute adverse employment actions that affected Plaintiff's ability to be promoted and further career advancement.

Defendant contends that Ms. Miller did not discriminate against Plaintiff. Ms. Miller, however, did discriminate against Plaintiff when, under the supervision of Ms. Clark and Ms. Hampton, she removed Plaintiff from her office into a shared office and ended the detail to send Plaintiff to Mr. Middleton. *See* Exhibit 1, p.15-16, 34-35. These actions can constitute discrimination in and of themselves, but are especially discriminatory when considered in light of the other actions, so as to constitute a hostile work environment and continuing harassment. The alleged legitimate reason that Ms. Miller turned Plaintiff's office into a conference is pretext, as there already was a conference room located in the office. *See* Exhibit 1, p.24-25. Furthermore, the fact that Plaintiff did not have a key to the conference room was intended to force Plaintiff to travel between the first and fourth floor every time someone requested her to unlock the office[13].

---

[13] Defendant' couch the issue as not having a key to her old office, but the alleged claim was that as the office administrative assistant she needed the key to the new conference room.

The office move prompted Plaintiff's claim of discrimination regarding being forced to move her office supplies while on sick leave with a known back injury. The facts are generally stipulated that Ms. Hampton called Plaintiff at home to instruct her to return to work to clean out her office[14]. *See* Exhibit 1, p.16, 24. Plaintiff, contrary to Defendant's arguments, did suffer an adverse action that resulted in further aggravation of her back injury.

Plaintiff further alleged discrimination when she was denied a partition wall and detailed out from under Mr. Middleton. Plaintiff's claims with regard to Defendant's actions are primarily based on Mr. Middleton's unreasonable demands to have Plaintiff detailed to another office based on trust issues. The facts of this claims are mostly disputed, but Plaintiff did not authorize a partition wall in her office – she did not have the authority to do so. The partition wall was authorized by Ms. Hampton and Mr. Coldough, after getting approval from Mr. Middleton. *See* Exhibit 1, p.10-12. Plaintiff merely requested information regarding the cost, time and effort to put the partition wall up to provide to Mr. Middleton for further analysis, when Mr, Coldough appeared to install the partition wall. *Id.* She assumed the wall was approved by Ms. Hampton and Mr. Middleton. At no time did Plaintiff ever submit a written authorization for the partition wall.

Plaintiff's allegations regarding lack of meaningful and complex work assignments occurred post-2003. It does not contradict her claims that she was performing similar higher graded work between 1990 and 2003 without receiving a competitive or non-competitive promotion. In fact, the claims of not being given

---

[14] Defendant's motion insinuates that Plaintiff did not come to the office to pack up her supplies, but was not disciplined for her failure. In fact, Plaintiff did come to the office the next business day to pack up her office; it was probably the only reason she was not disciplined. *See* Exhibit 1, p.16.

meaningful work strengthen Plaintiff's contentions that she was performing higher graded work prior to 2004 when her duties were dispersed to other employees, who subsequently were promoted. *See* Exhibit 7. The awards she received between 1997 and 2002 further strengthen Plaintiff's position, as she did not receive any after 2002.

Though Defendant stated that Plaintiff conceded her retaliation claims are based on the protected EEO activity in 1980, it is clear from the record, that she claimed retaliatory acts based on her activities throughout 1989-2003, including the complaints of discrimination and amendments filed in 2003 and 2005. *See* Exhibit 11. On a minimal level, Plaintiff was qualified for a GS-12 administrative position as early as 1990, and the Agency had knowledge thereof. *See* Exhibit 9. Plaintiff further established a causal connection based on both the temporal proximity between the adverse actions and protected activity in 2003 and 2005, as well as the fact that she named the decision-makers, i.e. Ms. Hampton, Ms. Clark and Ms. Miller, as discriminating officials in her initial and amended complaints[15]. *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)

The Defendant's motion repeatedly argues that Plaintiff cannot meet her burden of showing the Defendant's legitimate, non-discriminatory reasons are pretext. But there is ample evidence in the record that establishes the Defendant's proffered reasons are either false and/or pretext for discrimination. However, Defendant's legitimate, non-discriminatory reasons do not serve to overcome Plaintiff's burden. For example, the Defendant has not answered the basic question in this case; why the Plaintiff is still a GS-11 when she was approved for a GS-12 position many years ago, *see* exhibit 9, has been working for Division Chiefs and Directors, *see* Exhibit 1, while many similarly situated

---

[15] Plaintiff's claims of retaliation stem from her continuous claims of discrimination, as well as her 2003 initial complaint and amended complaints filed thereafter, not solely her 1980 complaint of discrimination.

employees outside her protected class performing the exact same duties are either a GS-12, GS-13 or GS-14. *see* Exhibit 11.  Furthermore, why has Plaintiff been detailed over and over without ever being given a permanent position?

Many of the reasons given by the Defendant are either incomplete or conclusory in nature.  For example, the Defendant admits that Plaintiff had to walk to the main office to do her work.  However, the articulated reason that many employees had to do the same thing is incomplete. It is Plaintiff's contention that she was the only employee who had to walk to the main office numerous times every day. *See* Exhibit 11.  Furthermore, her supervisor admitted that Plaintiff did in fact need the internet access in order for her to do her job.  Why wasn't Plaintiff allowed to remain in the main building?

Similarly, the Defendant has not offered any legitimate reason why Plaintiff was not given a GS-12 position in February, 2005.  Her supervisor specifically told her that she was qualified for the job, and even told her to apply. *See* exhibit 12.  That same supervisor stated that in his 31 years of federal service, he had never seen an Agency act in the way they did to deny Plaintiff the position. *Id.*

B.    Plaintiff proved a prima facie claim of hostile work environment.

As discussed above, the cumulative effect of the adverse actions taken between 1990 and 2005 constituted continuous harassment and a hostile work environment based on Plaintiff's sex, race, color, age and prior protected activity.  Plaintiff did not skirt the administrative process, as all of her claims were investigated thoroughly during the administrative process.

To establish a prima facie case of hostile work environment, the Plaintiff must show: (1) that she was harassed because she was a member of a protected class; (2) that

41

the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis for imputing liability to the employer exists. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000). The Court in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), stated the applicable standard quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. *Id.* at 64. This standard requires an objectively hostile or abusive environment-one that a reasonable person would find hostile or abusive-as well as the victim's subjective perception that the environment is abusive. *Harris*, 510 U.S. at 17. Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 18. The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. *Id.* These are only questions of facts for the trier of fact to determine.

The facts and circumstances described above establish a long history of pervasive and severe harassment and hostile work environment that permeated every term and conditions of Plaintiff's employment, particularly career advancement.

It further follows then that any "mixed motive" analysis would also necessarily preclude granting summary judgment to the Defendant. That's because of the reasonable inference that a lawful and unlawful motives existed for Ms. Clark's, Ms. Miller's and

Mr. Middleton's actions. The Defendant cannot through summary judgment argue that it would have made the same decision in the absence of Plaintiff's race, age, color, and/or protected activity.

Reviewing the competing inferences from the available evidence in the record, reasonably and in the light most favorable to Plaintiff, any trier of facts could reasonably conclude that performance, expertise and work experience were not the only factors considered when making the personnel decisions involved in this complaint. In other words, any reasonably minded jury could reasonably conclude that Plaintiff would not have been subjected to the repeated acts of harassment and discrimination but for the Defendant's discriminatory motives and bias, or for Plaintiff's lawful protected activity, in which she opposed unlawful discrimination in the work place. Thus, it is reasonable to infer here that any reasonably minded jury could return a favorable verdict to Plaintiff with regard to her claims of discrimination on the bases of retaliation. These material facts preclude granting summary judgment to the Defendant. *Glover*, 170 F.3d at 414-415.

<u>CONCLUSION</u>

For the foregoing reasons and having shown good cause, Plaintiff respectfully requests that the Administrative Judge **DENY** in full, the Defendant's Motion to Dismiss, or in the alternative, Motion for summary judgment.

Respectfully Submitted,

 _/s/ JIW_____
Jason Weisbrot, Esq. (MD #28074)
Snider & Associates, LLC

43

104 Church Lane, Suite 100
Baltimore, Maryland 21208
Phone: (410) 653-9060
Fax: (410) 653-9061

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
MARGARET R. BRANTLEY,                         )
                                              )
        Plaintiff,                            )        Civil Action No. 06-1137 (ESH)
                                              )
v.                                            )
                                              )
DIRK KEMPTHORNE, SECRETARY,                   )
DEPARTMENT OF THE INTERIOR,                   )
                                              )
        Defendant.                            )
_____)

## PROPOSED ORDER

Having reviewed the Defendant's Motion to Dismiss, or in the alternative, Motion for

Summary Judgment, and the Plaintiff's Opposition thereto, it is hereby **ORDERED** that:

        The Defendant's Motion is **DENIED.**

        It is further **ORDERED** that;

        The hearing shall take place on a date and time to be determined.


_____                    _____
Date                              U.S. District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of March 2008, a copy of Plaintiff's Opposition to the Defendant's Motion for Summary Judgment and attachments was filed electronically with the U.S. District Court, and, pursuant to L.R. 102.1(c), the Court's notice of electronic filing constitutes a certificate of service on all counsel in the action.


   /s/ JIW_____
Jason Weisbrot, Esq. (MD #28074)