# EXHIBIT·ELEVEN

# DEPARTMENT OF THE INTERIOR
## EQUAL EMPLOYMENT OPPORTUNITY COMPLAINT
### SUPPLEMENTAL REPORT OF INVESTIGATION[1]

JUN 8 2005

MARGARET BRANTLEY                          )
2601 HOLLY DRIVE                           )
FORT WASHINGTON, MARYLAND                  )
20744                                      )
                                           )
        COMPLAINANT:                       )
                                           )
                                           )
                                           )
    and                                    )
                                           )
                                           )
                                           ) AGENCY CASE NO: OS-03-017
                                           )
                                           )
GALE A. NORTON                             )
OFFICE OF THE SECRETARY                    )
WASHINGTON, DC 20240                       )
                                           )
                                           )
        AGENCY:                            )
                                           )
                                           )
                                           )
                                           )
                                           )

**EDDIE NEAL, INVESTIGATOR**
**ANNAPOLIS, MARYLAND**
**AUGUST 23, 2005 – SEPTEMBER 9,**
**2005**

---

[1]      The initial complaint was filed on July 2, 2003, and accepted in a letter dated August 6, 2003. On August 25, 2003, the complaint was amended and the amendments were accepted in a letter dated September 17, 2003 and the case was assigned for investigation on October 9, 2003. Another amendment was filed on February 24, 2004, and accepted in a letter dated March 3, 2004. On June 3, 2004, Complainant was issued her initial report of investigation and requested a hearing before the Equal Employment Opportunity Commission (EEOC) on July 23, 2004. In an order dated June 22, 2005, the EEOC ordered the agency to conduct a supplemental investigation into claims identified in a letter dated July 6, 2005. (Exhibit C)

## TABLE OF CONTENTS

| TAB | | | NO. OF PAGES |
|---|---|---|---|
| A | Formal Complaint | | 07 |
| B | Counselor's Report | | 23 |
| C | Acceptance and Amended Acceptance Letters | | 42 |
| D | Attempts at Informal or Formal Resolution | | |
| E | Appellate Activity | | |
| F | Affidavits[2,3] | | |
| | F-1 | Margaret Brantley[4] | 31 |
| | F-2 | Woodrow Wilson Hopper, Jr.[5] | 13 |
| | F-3 | Donna Brannon | 09 |
| | F-4 | Sally S. Hampton | 07 |
| | F-5 | Victor Christiansen | 05 |
| | F-6 | Robert Middleton | 05 |
| | F-7 | Mary Jane Miller | 06 |
| | F-8 | Debbie Lynn Clark | 07 |
| | F-9 | Velma Mason | 05 |
| G | Documentary/Miscellaneous Materials[6] | | |

---

[2]    Copies of the affidavits were forwarded to all parties interviewed for review and signature. (Exhibit G-8) Because the case is expedited, the report does not contain the signature pages of those interviewed. However, all testimony was taken under oath and/or affirmation.

[3]    Names of persons who surfaced during the investigation and/or provided by the Complainant as witnesses who were not interviewed:

Daphne Berwald, Brenda Butler, Harry Coldough, Mathew Cravatt, Wayne Jordan, Karen Needy, Michelle Steele, Emily Thomas and Sandra Wheatley were not interviewed based upon the nature and totality of the testimony, the investigator did not see the relevance of the witnesses testimony.

Albert Camacho, Carolyn Cohen, Nancy Davis, Jerry Fiely, Diane Murth, Linda Richardson and Pearl (last name unknown) were not interviewed because they are retired and were unable to be contacted by the investigator.

James McDivitt was not interviewed because he indicated he is retired and did not want to participate in the process.

[4]    The Complainant was interviewed August 25, 2005. Her affidavit from the interview appears at pages 1-22. During the interview the Complainant also wanted to submit a supplemental affidavit which appears at pages 23-31.

[5]    The affidavit of Mr. Hopper was forwarded to his attention for review and signature on September 7, 2005. Mr. Hopper submitted his changes but did not sign the signature page. (See Exhibit G-8)

[6]    Documentation regarding the following contentions of Complainant was requested: she was denied communication access service since March 2002, her office was taken away and she was not given proper facilities to work, she was denied a private office and denied a key in January 2005, and she was denied a partition wall in her office space in 2005. (Exhibit G-1 at page 1) According to the agency, there is no

G-1  Document Request and Agency Responses  06
G-2  Position Descriptions:
    A.  Administrative Officer, GS-0341-11 (Complainant's position)  09
    B.  Administrative Officer, GS-0341-12/13 (Submitted by Complainant for review)  06
G-3  Employee Listing, Office of the Secretary (2002, 2004 and 2005)  04
G-4  Policy on Promotions and Internal Placement, DOI[7]  03
G-5  Documentation regarding Employees Promoted in the Office of the Assistant Secretary -- Indian Affairs (ASIA) and Notification of Personnel Actions:[8]
    A.  1997-2003  32
    B.  2004-2005[9]  19
G-6  Notification of Personnel Actions (SF-50s) for the following:[10]
    A.  Complainant (1988 – 2005)  14
    B.  Daphne J. Berwald (2003 – 2005)  07
    C.  Karen Needy (2003 – 2004)  17
    D.  Patricia Watkins (1988 – 1990)  08
G-7  Organizational Charts/Employee Listings (1997 – 2005)[11]  39
G-8  Investigator's Correspondence  14

documentation or correspondence on this subject. (Exhibit G-1 at pages 2-5)

[7]  The agency's policy on email and the establishment of offices was requested. (Exhibit G-1 at page 1) According to the agency, there are no applicable human resources policies on email or establishment of offices. (Exhibit G-1 at page 2)

[8]  A listing of promotions for employees during the period of 1989 to the present was requested. According to the agency, the history is only available for 1997 forward and indicates a new personnel system was implemented in 1997.  Also, information regarding the race,  sex, and EEO activity of employees promoted was unavailable. (Exhibit G-1 at pages 1-2)

Also, attached to the listing are the SF-50s of employees promoted. According to the agency, SF-50s for employees who are no longer employed by the Office of the Secretary are unavailable since they no longer have their Official Personnel Files (OPF). Of the employees listed as having been promoted, the following are no longer with the agency: Albania Atencio, Elizabeth Bell, John Curran, Alberta Joseph, Theresa Rosier, Judith Snoich, Pamela Royal, Johnnye Stabler, Robin Jones, Stephanie Cloud, Thomas Young, Katherine Kogut, Frederick Allgaier, Henry Cooper, Kristina Seidlmartini, Bradford Williams, and James Langford. (See Exhibit G-1 at page 3)

[9]  Listing reflects employees promoted under the supervision of Debbie Clark during 2004 and 2005.

[10]  Also requested were the SF-50s of Laura Curlett, Diane Murth, and Nancy Davis. According to the agency, Ms. Curlett's organization was reassigned to the National Business Center on October 5, 2003, and her OPF is not available. Also, Ms. Murth and Ms. Davis have retired and their OPF's were unavailable. (Exhibit G-1 at page 5)

[11]  The organization charts from 1989 to the present were requested. (Exhibit G-1 at page 1) According to the agency, they are unable to access rosters prior to 1997 when the Office of the Secretary implemented the FPPS. (Exhibit G-1 at page 4)

## I.    CLAIMS AND BASIS OF COMPLAINT

The agency accepted the following claims for investigation and further processing:

Whether the Complainant was discriminated against on the bases of race (black), sex (female), age (55),and reprisal (prior EEO activity) when:

1.    She was denied a promotion since 1989 while other employees who worked for the Assistant Secretary's Office were higher grades.

2.    She was denied communication access, e.g., e-mail service since March 2002.

3.    Her office was taken away, she was not given proper facilities to do her work, and she was made to walk three blocks to perform her duties.

4.    On February 11, 2005, she was denied a promotion.

5.    On January 12 or 13, 2005, she was requested to pack office supplies in spite of her previously injured back, which she re-injured while packing.

6.    On or about January 24, 2005, she was denied a private office and denied a key to her office.

7.    She was denied a partition wall in her office space.


## II.    CORRECTIVE ACTION SOUGHT BY COMPLAINANT

The Complainant seeks attorney's fees, back pay, a promotion to the GS-14 level, private office space connected to the Office of the Secretary's LAN and Lotus Notes, and to receive email and budget information and placed in the main Interior building.[12]


## III.    SUMMARY

The testimony of **MARGARET BRANTLEY**, (hereinafter "Complainant"), race (African American), color (Black), sex (female), age (55, DOB: 07/17/47), and reprisal (prior EEO activity), Administrative Officer, GS-0341-11, Office of the Secretary, Department of the Interior (DOI), Washington, D.C., appears at Exhibit F-1.[13] Complainant states that Debbie Clark is her current supervisor.

---

12    *See* Formal Complaint at page 1 of Tab A, Counselor's Report page 5 of Tab B and supplemental affidavit page 33 of Tab F-1.

13    In her testimony, Complainant listed the following managers regarding claim one: Philip Haymon, Nancy Davis, Albert Camacho, Linda Richardson, and James McDivitt, all of whom have retired. Also,

In regard to claim one, Complainant states she began working with Nancy Davis, GS-12, in 1989 and indicates they had been trained on the same level. She states she had been in her position as a GS-11 for a year and asked for a promotion and was told she could not be promoted because she was no longer working in a director's office. She states during that period, she began working for the Graphics Office and states her belief that she was put in a division so that she would not be promoted. Complainant states when she was transferred back to the Assistant Secretary for Indian Affairs, she again asked for a promotion and indicates other employees doing similar work were GS-12s.[14] Complainant states in 1989, she requested a promotion through an accretion of duties from Philip Haymond and Albert Camacho and was told she was not eligible since she was not working in a director's office. She further states she was told the other GS-12 employees were at a higher level because they worked for a director versus a division. Complainant states she was housed under a director, Linda Richardson, and in servicing the Assistant Secretary for Indian Affairs Office, did comparable work as the others who were at the GS-12-13 level. She states in 2000, she was under the supervision of James McDivitt and indicates he tried to assist her in getting a promotion to the GS-12-13 level and states they generated a position description and submitted it to Donna Brannon. She states in 2002, Ms. Brannon said the position description was too vague and Complainant indicates no follow through occurred. She states once Mr. McDivitt retired, she was under the supervision of Woodrow Hopper and then Ms. Clark. She states in 2004, Ms. Clark told her and Daphne Berwald to apply for an Administrative Officer position at the GS-12/13 level but the position was never announced and indicates Ms. Berwald was given a title change and a GS-12. She states Ms. Clark and Mr. Hopper were responsible for this action. Moreover, Complainant states Dr. Velma Mason wanted her to work with her at a higher grade but she was not allowed.

In regard to clam two, Complainant states she was denied the use of email when she moved to 1800 G Street. She states while she did not have access to email at the bureau, other employees did. In regard to claim three, Complainant states when the Office of Audit and Evaluation was moved to another location and states Mr. McDivitt moved four offices to the new location and indicates as a result, she had to walk three blocks every day carrying her coat because she did not have any office space at the main Interior location. Complainant states while she was not the only person impacted, she was the only person severely impacted by this action. In regard to claim four, Complainant states she was detailed to the Office of Budget and indicates Ms. Clark told her to apply for an Administrative Officer position left vacant when the person left for another job. She states Ms. Clark told her she could apply for the position like everyone else and indicates she applied on-line. She states when Mary Jane Miller came onboard, she cancelled the job.

In regard to claim five, Complainant states her office was being moved because Ms. Miller did not want to be near her. She states she had injured her back and was under a doctor's care and while out, Sally Hampton called and asked if she would come in the

---

contact was made with Mr. McDivitt, who declined to be interviewed.

14    The employees referenced by Complainant are Patricia Watkins and Laura Curlett.

next day to pack her office. Complainant states she came in a few days later and re-injured her back trying to pack and states while Ms. Hampton said there would be help to assist her, there were no boxes and nothing was packed. In regard to claim six, Complainant states she had a private office and indicates while the office contained her files, Ms. Miller did not want her to have a key. Complainant states she was the only black person in her position as well as the only aged person and states this was frowned upon by directors meeting with the Assistant Secretary. In regard to claim seven, Complainant states once her detail with the Office of Budget ended, she worked under Robert Middleton, who stated she could permanently work with him as a GS-12 Program Analyst. Complainant states she was later dismissed from that office after requesting that a wall be placed in her office space, which contained a refrigerator, microwave, coffee pot, and was being used as a coat pantry. Complainant states Mr. Middleton opposed the partition being placed although Ms. Clark authorized it. Complainant states Mr. Middleton was aware of her EEO activity and indicates he only accepted her into his office to please Ms. Clark.

The testimony of **WOODROW WILSON HOPPER, JR.**, race (mixed), color (brown), sex (male), age (62, DOB: 08/19/43), aware of Complainant's prior EEO activity, Deputy Director for Human Resources Policy, GS-15, Office of the Assistant Secretary of Indian Affairs, Office of the Secretary, DOI, Washington, D.C., appears at Exhibit F-2. Mr. Hopper states Complainant worked for him during a brief period in 2003 and indicates he does not recall the exact dates. In regard to Complainant's promotion issue, Mr. Hopper states he was not in her chain of command until 2003 and has no knowledge of anything that allegedly occurred in 1989. In regard to her claim that she was not promoted in 2005, Mr. Hopper states while Ms. Clark worked for him, he does not know anything about this position and she was supervised by Dianne Murth,[15] who reported to Ms. Clark. In regard to Complainant's contention regarding nepotism, Mr. Hopper states it appears that Complainant was actively involved in creating a job for her daughter and states his belief that an employee should not be influencing the hiring of a relative. He states the daughter was terminated from a temporary position and indicates after this incident, the Complainant's duties did not change. In regard to her office space, Mr. Hopper states she and several other employees were moved from G Street to space at C Street because they could be accommodated in the Main Interior at less costs and were close to their customers.

The testimony of **DONNA BRANNON**, race (Caucasian), color (white), sex (female), age (67, DOB: 06/06/38), not aware of Complainant's prior EEO activity, Contractor, Office of the Assistant Secretary of Indian Affairs, Office of the Secretary, DOI, Washington, D.C., appears at Exhibit F-3. Ms. Brannon states in 2000, Complainant's position was rewritten and given to her for classification and indicates it did not support a higher grade. She states Complainant felt she should be a higher grade and states she does not recall any of Complainant's supervisors requesting that she be upgraded or that her duties be increased. Ms. Brannon states Complainant kept insisting that her position was a higher grade and did not want her to classify. She states the

---

15     Ms. Murth has retired.

position was given to an personnel classification expert in Fish and Wildlife and it came
back as not even supporting the GS-11 position.[16]

In regard to email, Ms. Brannon states to the best of her knowledge, everyone that
was hooked up to the BIA email communications system was disconnected and still is
based on a court order and indicates she has no knowledge of the email at the G Street
location. She further states she has no knowledge of Complainant's contention that she
was not given proper facilities but indicates Complainant was not the only employee
moved to another building. Additionally, Ms. Brannon states in February 2005,
Complainant was detailed to the Office of Budget and indicates at one time, they were
going to establish a GS-12 or 13. She states a new director was selected who did not need
a GS-12 or 13 secretary since she had a GS-7 secretary and cancelled the vacancy. In
regard to Ms. Berwald, Ms. Brannon state she applied for the GS-12 position and was
moved into the position of Administrative Assistant for the Assistant Secretary of Indian
Affairs. She further states she has no knowledge of Complainant re-injuring her back
while packing her office and indicates the only knowledge of the partition is what Mr.
Middleton relayed to her.

The testimony of **SALLY S. HAMPTON**, race (Scotch-Irish), color (white), sex
(female), age (54, DOB: 10/16/50), not aware of Complainant's prior EEO activity,
Management Analyst, GS-0342-14, Office of the Assistant Secretary of Indian Affairs,
Office of the Secretary, DOI, Washington, D.C., appears at Exhibit F-4. Ms. Hampton
states while working for Mr. Middleton, Complainant's work station was in a small
waiting area for customers as they came through the door. She states the work area was
situated in front of a room with a full-sized refrigerator, microwave, and sink and
indicates Complainant requested the installation of a wall to curtail the odors. She states
there was some discussion with the facilities contact, Complainant, and Mr. Middleton
and indicates she was then moved from Mr. Middleton's supervision. Ms. Hampton states
in speaking to Mr. Middleton, he felt he was blindsided and indicates Complainant's
return to her office was based on the wall incident. In regard to email, Ms. Hampton states
Complainant has email via the Office of the Secretary and indicate she was one of the
approved people in light of the litigation. Ms. Hampton states she has no knowledge about
office space, was not involved the position to which Complainant applied in February
2005, and states she has no knowledge about her re-injuring her back while packing her
office. Additionally, Ms. Hampton states a lot of employees are not given keys to their
offices.

The testimony of **VICTOR CHRISTIANSEN**, race (African American), color
(black), sex (male), age (54, DOB: 09/26/51), not aware of Complainant's prior EEO
activity, Senior Policy Analyst, GS-15, Office of Indian Energy and Economic
Development, Washington, D.C., appears at Exhibit F-5. He states he supervised
Complainant starting in May 2004 until January or early February 2005. He states during
this period, he and Complainant discussed her seeking a promotion and indicates he had a
position that was a grade level higher than her current position. Mr. Christiansen states he

---

16      A copy of the position classification was requested from the Fish and Wildlife Service, it was
researched and reported the document could not be located. (Exhibit G-1 at page 6)

never promised her the position but felt she would be a good match. He states the position was never advertised and indicates he spoke to Ms. Clark who wanted the position advertised. Mr. Christiansen states he spoke to Ms. Brannon and indicates he had never experienced a similar action in announcing a vacancy. He states Complainant came to his division after speaking to Ms. Clark who indicated the need to place her.

The testimony of **ROBERT MIDDLETON**, race (Caucasian), color (white), sex (male), age (57, DOB: 05/27/48), not aware of Complainant's prior EEO activity, Director, SES-00, Office of Indian Energy and Economic Development, DOI, Washington, D.C., appears at Exhibit F-6. Mr. Middleton states Complainant was detailed to his office in 2005. In regard to the partition, Mr. Middleton states they were sitting in swing space, which is temporary quarters, while waiting for the building renovation to take place. He states they were assigned two offices because of limited space and states the outer office was large and already contained a refrigerator. He states Complainant was moved into the outer office and indicates while talking about arranging the office, she mentioned the possibility of putting a wall up that would split her office into two portions. He states he said he needed more information and states the conversation dropped and he did not hear anything else for a couple of months. Mr. Middleton states while sitting in his office one evening, he was approached by workmen in the outer office, who began measuring. He states when asked what they were doing, they said they were there to put up a wall and indicated that Complainant had authorized the action. Mr. Middleton states he sent the workmen away and indicates the wall would cost $1500. He states a meeting was called and states it was discovered that Complainant inaccurately related the thought that he wanted the partition. Mr. Middleton states at that point, he felt Complainant could not be trusted and indicates she was moved from his area. He states the race, color, gender, age, or EEO activity of Complainant were not factors in his action and states he has worked with people of all races and colors.

The testimony of **MARY JANE MILLER**, race (Caucasian), color (white), sex (female), age (56, DOB: 06/25/49), not aware of Complainant's prior EEO activity, Director , SES, Office of Budget Management, Assistant Secretary for Indian Affairs, DOI, Washington, D.C., appears at Exhibit F-7. Ms. Miller states she has been in her position since January 2005 and indicates she has no knowledge of Complainant's contention that she was not promoted in February 2005. In regard the position that was advertised by Mr. Christiansen, Ms. Miller states it was being advertised when she came on board and states she did not fill it because Emily Thomas, a black female who was under employed, had been performing some of the duties so she chose not to fill the position. In regard to Complainant's private office claim, Ms. Miller states when she began, there was no conference room so she requested that Complainant be moved in with Ms. Thomas, who was also in a private office. Ms. Miller states since Complainant was on a detail and would not be with her that long, she states she took the large office where Complainant was and requested that it be converted into a conference room. Ms. Miller further states her belief that she was not at work the week the office move occurred.

The testimony of **DEBBIE LYNNE CLARK**, race (White), color (white), sex (female), age (50, DOB: 03/25/55), aware of Complainant's prior EEO activity, Deputy

8

Assistant Secretary for Management, SES, Assistant Secretary for Indian Affairs, DOI, Washington, D.C., appears at Exhibit F-8. Ms. Clark states Complainant is in her chain of command under the supervision of Ms. Hampton. She states she has no knowledge of Complainant's contention that she was denied a promotion in February 2005 or of injuring her back during an office move. Ms. Clark states she has second-hand knowledge of the issue regarding partition while on detail and states her belief that Mr. Middleton did not trust her once he learned of the wall. She states Mr. Christiansen was under her supervision and was replaced by Ms. Miller. In regard to the position advertised by Mr. Christiansen, Ms. Clark states her impression that he talked about advertising a position and when Ms. Miller came on board, she decided not to fill it and states she does not believe the position ever was advertised. Ms. Clark states she does not recall a conversation referenced by Complainant regarding her first meeting with Ms. Miller.

The testimony of **VELMA MASON**, race (American Indian), color (brown), sex (female), age (59, DOB: 12/21/45), not aware of Complainant's prior EEO activity, Director, Alcohol/Substance Abuse Prevention, GS-0301-15, DOI, Washington, D.C., appears at Exhibit F-9. Ms. Mason states she asked for Complainant's assistance in finding someone immediately on a temporary basis, due to staff shortages and indicates she does not recall the Complainant informing her that the person was her daughter. Ms. Mason states once the person was hired, Mr. Hopper asked to speak to her and was upset and indicates she learned that the person was Complainant's daughter. Ms. Mason states she had worked with Complainant for a long time and trusted her judgment. She states Mr. Hopper indicated that the person be terminated and states he did not indicate how he learned the person was Complainant's daughter. Ms. Mason states she does not believe Complainant tried to deceive her and states she was surprised by his response since he did not supervisor her or run her office. She further states that she has requested that Complainant be detailed to her office and spoke to Ms. Brannon and indicates her belief that the idea was not entertained.

*[handwritten margin note: let her know my daughter after she said she would be able to work with her]*

## IV.    SURVEY OF THE GENERAL ENVIRONMENT

Complainant alleges discrimination on the bases of her race (African American), color (black), sex (female), age (55, DOB: 07/17/47), and reprisal (prior EEO activity). Documents show that Complainant's position is that of Administrative Officer, GS-0341-11, Office of the Secretary, Department of the Interior (DOI). (Exhibit G-2A) Also, documentation submitted by the agency (Exhibit G-3) regarding employees in the Office of the Secretary shows the following:[17]

- In 2002, there were 79 employees, including Complainant, in which 22 were older than Complainant, five were the same age, and 52 were younger.

---

[17]    Data regarding the race, sex, and EEO activity of employees was requested. (Exhibit G-1 at page 1) According to the agency, the information was not available. (Exhibit G-1 at pages 2-3)

- In 2004, there were four employees in the Office of the Secretary, in which all were younger than Complainant.

- In 2005, there were six employees in the Office of the Assistant Secretary for Indian Affairs, in which all were younger than Complainant.

Documentation submitted by the agency shows there were 44 promotions during the period of 1997-2003, in which eight of those promoted were older than Complainant, 35 were younger, and one was the same age. (Exhibit G-5A) The documents also show that six employees under Ms. Clark's supervision were promoted during 2004-2005 in which one older than Complainant and five were younger. (Exhibit G-5B) Moreover, the SF-50s for Complainant and other employees she referenced appears at (Exhibits G-6A-6C) Documents showing the organizational structure appear at Exhibit G-7. The policy on promotions appear at (Exhibit G-4)

| Form DI-1892 REV. 3/98 | U. S. Department of the Interior Complaint of Discrimination |
|---|---|

1. Complainant's Name: _Margaret R Brantley_   Place of Employment: _DOI_
Street Address: _2601 Holly Dr_   Address: _1849 C St NW, MS 1800 G_
City, State, Zip Code: _Ft Wash Md 20744_   City, State, Zip Code: _Wash DC 20240_
Home Phone: _301-265-5327_   Work Phone: _202-343-2504_

2. DOI Office which you believe discriminated against you?
Bureau: _Department of the Interior Office of the Secretary, PAS/IA_   Division/Office:
Address: _1849 C St NW_   Region
City/State: _Wash DC_

3. Basis(es) for believing you were discriminated against?  (Check one or more, and provide the specific Information.)

_X_ Race _African American_        _X_ Age (Date of Birth) _55_
_X_ Color _dark_          ___ Physical Handicap _____
___ Region _____          ___ Mental Handicap _____
_X_ Sex _female_          _X_ Reprisal
___ National Origin _____       (Date of previous EEO activity)_____

4. Allegation(s) of discrimination? (For each allegation, state the date and the specific incident causing you to believe that you have been discriminated against.  FOR EXAMPLE: I was discriminated against on January 1, 1992, when I was not selected for the position of Analyst.  (Use additional pages as necessary.)

_see attachments_

5. Have you discussed your complaint with an EEO Counselor?  Yes _X_  No _____  (If yes, name of Counselor):
_Janice Harrell_   Date you first contacted the Counselor: _4/1/03_

6. Are you agreeabel to using the Alternative Dispute Resolution (ADR) process?   Yes _____  No _X_

7. Have you presented these allegations to any other forum?  If so, please indicate:
_____ Negotiated Crievance Procedure _____ Merit Systems Protection Board _____ Court (Civil Action)

8. List the remedies which you believe will resolve your complaint: (Use additional pages, as necessary.)
_torney fees, back pay, ~~attorney fees~~, promotion to GS-14, office space (private), connected to OSS and lotus notes to receive E mail and badge information and placed in main Interior Building and have Donna removed from working with compensatory damages_

_OS-03-077_

Exhibit _A_
Page _1 of 7_

Formal Discrimination Complaint

On March 24·2003, I received a phone call from my daughter Michelle Steele informing me that she has been trying to contact someone to let her into the building to meet with Donna Brannon, I told her I'll be there. Michelle was to work with Dr. Velma Mason's office(Alcohol and Substance Abuse Prevention) for two weeks only.

I assisted in letting her into the Main Interior Building and was taking her to Donna Brannon when we ran into Brenda Butler (who works with Donna Brannon). who was taking other new recruits to be sworn in. Brenda told us to follow her. So we did.

Brenda informed Michelle that Donna wanted to see her before she filled out her papers. So we all walked to see Donna.

Once Donna came out to meet with Michelle she proceeded to inform Michelle that she did not have a PD for that of the GS-6 she only had a GS-5 and a GS7 and would Michelle take a GS-5 and Michelle stated that was unacceptable. Donna proceeded to stated Michelle did not put a dollar amount on her resume'
so I asked Michelle did she know approximately how much she made and Donna interceded with giving her a GS-5 and I said no can we give her the GS-7 and can we pull up her records to find out what she made the last time she worked here. Donna said she did not think so because it has been 11 years ago. Donna again said that she did not have a GS-6 PD. I told Donna what Michelle would be doing for Dr. Mason. Donna had informed me that she would use a generic GS-6PD. Donna repeated that she did not have a PD for a GS-6 again so I informed Donna I'll get one for her. As I was leaving Donna stated "make sure it is a GS-6PD". On my way to Dr. Mason's office, I ran into Sandra Wheatley who asked if we got things straight and I said we need a GS-6 PD and Sandra said we have only a few of them. It hit me then that Donna again was holding up the process that she did not want to happen. After I got to Dr. Mason's office I proceeded to tell her that Donna is now claiming she does not have a GS-6 PD after telling me she would use a generic GS-6 PD. I told Dr. Mason that I got a GS-6 PD from the Solicitor's office and I will change it to suite her needs (Velma's ) I asked Velma a few questions and proceeded to compose the PD. Michelle Steele was brought down by Brenda Butler who had sworn her in to work and she and Dr. Mason began to work. Michelle did some xeroxing and note taking for she was to set up a meeting for the Wellbriety Journey for the Office of Alcohol and Substance Abuse Prevention.

Once I finished I found that I could not print it because I had not logged onto LAN for I was using the secretary's PC who was absent. I had called the LAN administrator he informed me I could not print because I had not logged on the LAN and he left when Woody Hopper and Donna Brannon came into the office in a demanding tone (like it was a riot) and proceeded to split up Michelle, Velma and myself. I who was African American was told by Woody Hopper to go with Donna Brannon, he told Michelle who is African American to come with him and told Velma, Director who is Native American Indian he wanted to talk with her later and for her not to leave

her office.

As I was walking with Donna I questioned her as to what was going on and she said Woody would tell me. I was sitting in her office for about 40 minutes before Woody came up. He asked that I follow him into another office where he proceeded to question me about Nepotism. Wanting to know if I knew what is was. I told him what I felt Nepotism was and asked was there another meaning I knew nothing about. He did not answer my questions. I then asked Woody what was Nepotism? And he said "how long have you been working in the Federal Government and I told him 36 years and he said and you don't know what Nepotism is? I told him that I only know that Nepotism is if I was hiring a relative to work for me is Nepotism. He again did not say anything. I sited all the people that I knew that committed nepotism. I again asked if there was another meaning. He did not answer. I told him Michelle would not be working with me but with Dr. Mason.

I went to Dr. Mason's office and proceeded to tell her was had just happen when Michelle walked in and told us she was fired because she refused to write down how she was hired. Woody Hopper walked in just as she told us that and stated she (pointing to Michelle) is terminated. I asked why Michelle was terminated then Michelle repeated telling us that Woody asked her to write down how she was hired and because she did not Woody stated that she was fired. Woody and Michelle went through the routine of no I did not and yes you did. Woody finally told us the same thing that Michelle had said why he fired her and I called him on it. Woody shouted at my daughter and she shouted back, I started to intercede but saw that Michelle was able to handle the situation . Woody then pointed to me and told me to go to my office and pointed to Michelle and told her to leave the building and pointing to Dr. Mason stating I suggest you get them out of your office .

I told Woody that Dr. Mason office is one of the offices I assist and he told me "if you don't leave that office he will take me to McDivitt (my supervisor) I said "let's go". Michelle stated that she was going to the credit union and asked if I needed anything and I said no.

Upon arriving to McDivitt's office, Woody said to McDivitt in a demanding voice "Tell her to go to her office now" before I could ask of Woody did McDivitt know what was going on Woody left McDivitt's office. I then asked McDivit if he knew what was going on and he said "something about nepotism" I proceeded to asked what was Nepotism? He stated that an official hiring a relative to work for them. I then said right! Michelle was being hired to work with Dr. Mason not me. He proceeded to tell me not to do any work. I then asked if I am not to work at all and he said "oh no just don't work with Velma's office. I stated you know I have no problems not working with her office and I left his office.

I told Velma Mason that McDivitt instructed me not to work with her office and she wanted to know who should she ask and give her questions to I said give them to McDivitt.

On March 25, I met with McDivitt to ask about my office space and I also stated to him "you know that was not nepotism don't you?" He did not respond so I said Oh no comment. He answered no. McDivitt then proceeded to state that Velma e-mailed him with a problem

regarding a payment she had made and want to know how she would get her money back and he asked me "who should I give this to you or Debbie Clark? Debbie Clark can override things.

Debbie Clark is a SES and I felt if I told him don't give it to me then I could have been cited for refusal of work assignment so I said give it to me if I have any questions I'll turn it over to Debbie Clark and I left his office.

On March 26, 2003, I returned my findings to McDivitt and informed him as to what to informed Dr. Mason giving him back the paperwork he had given to me to solve. I asked him if he wanted me to write it down and he said no he will tell her. He then said "you can tell her" I looked startled then he said "you can work with her office". I did not say anything and left his office.

I told Dr. Mason that McDivitt give me the assignment regarding the money situation and how she would be able to retrieve her money. She wanted to know would she be getting some help I said I don't know since they fired Michelle check with them again.

My thought as to once again Donna is trying to block an action she thinks is linked to me. I had received four(4) cash awards from various offices I work with, and Donna did not like it so she contacted James McDivitt. McDivitt asked me why "was I going around begging for money"? I stated "you just had a supervisor in your office that gave me a cash award why did you not asked him if I begged him for it? I told McDivitt that my cash awards was held up for at lease a month. The ironic thing was that even the one McDivitt gave to me was held up as well. Another incident was McDivitt wanted to have my position description we generated reviewed for accurate grading of a GS-12/13 and Donna told McDivitt it was too vague and nothing else. Nothing was done with the position description.

I feel Donna have a personal problem with me and is finding ways to antagonize me and this incident with Michelle hit home. When I see Michelle upset with this situation of Woody and Donna I get highly stressed and cannot function. I can not function because of Donna's actions and I find it is harder and harder to work directly with her. I feel she is prejudice against me. Maybe she knew I had filed a suite before and feels she'll find a way to hurt me. She did by her actions handling the incident with my daughter Michelle and her calling Woody to harass Michelle and me. My name again has been slandered by Donna through her actions with Woody's.

Filed an informal complaint on April 1, 2003.

June 12, 2003 -. I was given a fake desk audit (not allowing me to have the audit at my desk so that I would be able to better articulate what I do and show examples) initiated by my ex-supervisor James McDivitt the desk audit was given by Fish and Wildlife Services personnel (Pearl) for Mr. James McDivitt said he did not trust Donna Brannon.

My work was not in questioned by my ex-supervisor James McDivitt except when Donna Brannon and Sandra Wheatley who are friends and work in MMS personnel tried to discredit me

to him. I feel it is because I am an African American and at the age of 55 and I have filed discriminations suites before that I am not considered for promotion..

I have been working under stress since the settlement of my first discrimination complaint of 1980.

Since 1988 when I received the last of my settlement agreement from a prior complaint of 1980 I have had the following reprisals bestowed upon me:

| | |
|---|---|
| 1989-present | 1. Not promoted |
| 1992-1995 | 2. Lied upon by Lisa Mahan (Graphics office) |
| Nov 1995 | 3. Was Rifed from the Graphic's Office |
| Dec 1995 | 4. Kicked out of the office I was Rifed to for no reason by Holly Tomilson |
| 1995-1998 | 5. Not given cash awards by Linda Richardson – all others received one |
| Aug 1998 | 6. Refused training by my supervisor Linda Richardson |
| 3/02-present | 7. Not given the E-mail or any other device I would need to communicate with the Department by James McDivitt |
| 4/02-present | 8 Had my office taken from me and given to a secretary by James McDivitt |
| "      " | 9. Not given proper facilities to do my work by James McDivitt |
| "      " | 10. Made to walk three blocks to perform my work by James McDivitt |
| 4/02 - present | 11. Made sick more often (pneumonia, upper respiratory, stressed, colds and flu) by the actions of James McDivitt |
| Dec 02 | 12. Was asked why was I begging for money after Donna Brannon in personnel told my supervisor James McDivitt of the various awards I was receiving |
| March 24/03 | 13. Was accused of Nepotism by Woody Hooper (Personnel) when he knew it was not and he fired my daughter who would have been working with Dr. Velma Mason in the Office of Alcohol and Substance Abuse Prevention |
| 1999-present | 14. Not being acknowledge for the position I am in grade wise. All the individuals who work for an Assistant Secretary in the Department are that of a GS-13 or 14. |

Exhibit A
Page 5 of 7

Amendment to Complaint Filed on April 1, 2003
Margaret R. Brantley

On Tuesday, July 22, 2003, I was in a meeting with the Directors and Woody Hopper wanted to know if I was able to connect with Lotus Notes. I told him no he wanted to know why I don't know and I stated because know one has informed me of anything. Debbie Clark told Woody that she was handling it. Woody was trying to embarrass me. Woody Hopper mentioned dumb terminal computers being distributed out and that one computer was coming to 1800G Street NW. I informed him that two was coming to 1800G and he did not like the fact I stated that and said Margaret (nasty)we will have a side bar on that, Before the side bar begun Kathy Kogut told Woody (close to his ear) she only know of one computer to come to 1800G. During the side bar I told Woody that I was to have a computer for myself and one was for the group. Kathy Kogut stated "its unfair for you to have one to your self". I told her "you only knew about the one" Kathy then stated I knew about the two McDivitt told me" Woody said no one told him about me getting two computers. I told Woody he may call McDivitt to find out. Woody stated "no computer is going into your section he'll decide were they are going". I asked him if I could move into my office now and he said "what office""no" I explained that there are four offices slotted for Administration Woody stated that he know nothing of this Kathy interrupted and said that she did not know of this "were". I told them were the office were located and Woody wanted to see the plans and Kathy said "show him the original plans. I told her those are the plan I had intended to show to him. Every question I asked Woody said no to even one he wanted to say yes to because after he said no he said I mean yes.. Mr. Hopper is making sure I do not the proper equipment to do my job so there will be complaints against me.

On July 30, 2003, I was called in for a meeting in the ASIA conference room to meet with Debbie Clark Director of Financial Management on TAs for the new employees. The meeting consisted of Debbie Clark, Beth Tarranova an employee of Debbie's and Allison Beard of BIA personnel and myself the Administrative Officer for the ASIA.. After the meeting Beth stated to Debbie "now that did not go as bad as you thought."

August 4, 2003, There was a meeting called stripping me from the status position and disbursing my duties among three others which included giving me a new supervisor. Woody did not want me working with him so I was placed in a Division under the CFO with Diane Murth as my supervisor. I was not allowed to talk to clients nor was I allowed to go to Interior to work until it was seen that I needed to. I was told that Daphne will be the one to meet and greet people Daphne is Indian and so is my supervisor. I am asked how to do my job and is expected to tell them. I am also asked "what to tell clients" when questions arise.

August 8, 2003, I was approached by Kathy Kogut stating that Woody Hopper want to know the status of bring Amy Courson on board. I told her that I had spoke to Amy this morning and she was waiting for someone from the moving company to contact her again. Woody had asked my supervisor to bring Amy on board therefore I should not have been approach directly by Woody or his subordinate for information. Mr. Hopper is harassing me.

August 12, 2003, I was asked by my supervisor to give her copies of all my e mails then Daphne

Exh:       A
Page 6 of 7

stated just the ones I answer. She did not ask Daphne or anyone else to do this. Woody is using his position to harass me through my supervisor Diane Murth.

I was the only African American in a status position in the Assistant Secretary-Indian Affairs Office, therefore, Woody eliminated my position by placing under and Director into a Division instead of with the Deputy Assistant Secretary-Indian affairs for Management or under the Assistant Secretary-Indian Affairs where I should have been. I am now having to go to Interior more that once a day to do my work I need an office at Interior. I have been setup to fail in my position by having complaints stated to my superiors for not doing my work when I am stifled by not being able to work directly with my contacts and clients.

*Margaret R. Beantly*

8/15/03

343-2504