UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**MARGARET R. BRANTLEY,**          )
                                   )
    **Plaintiff,**              )
                                   )
  v.                               )   **Civil Action No. 06-1137 (ESH)**
                                   )
**DIRK KEMPTHORNE, Secretary**     )
**U.S. Department of the Interior,** )
                                   )
    **Defendant.**              )
_____)

**MEMORANDUM OPINION**

Plaintiff Margaret R. Brantley is a 57-year-old African-American female employed at the U.S. Department of the Interior ("DOI"). She alleges that the defendant discriminated and retaliated against her and subjected her to a hostile work environment because of her race, color, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] Before the Court is defendant's Motion to Dismiss, or alternatively, Motion for Summary Judgment. For the reasons set forth below, defendant's motion will be granted.

**BACKGROUND**

**I.    FACTUAL HISTORY**

Plaintiff is currently an administrative officer (GS-11, Step 10) at the DOI, where she has

---

[1] Plaintiff's complaint also alleges "harassment" in violation of Title VII. (Compl. 11.) However, because this claim is indistinguishable from her hostile work environment claim, the Court merges the two for purposes of analysis.

worked since 1977. (Def.'s Statement of Facts As To Which There Is No Genuine Issue, Feb. 15, 2008, ¶ 2 (hereinafter "Def.'s Facts ¶ __").)[2] Plaintiff filed her first formal complaint against the DOI in 1980, alleging discrimination with respect to a non-promotion. (*Id.*) She then filed a second non-promotion claim while the first one was still pending. (*Id.*) The parties settled both claims in 1987, and as a consequence, plaintiff was transferred to another office and received several grade increases until she reached her current level of GS-11 in 1988. (*Id.*)

However, this did not end plaintiff's grievances regarding promotions. From 1989 through 2005, plaintiff claims to have been denied promotions by seven different managers (Pl.'s Interrog. No. 9), although she has only provided specifics about one incident in February 2005. Victor Christiansen, Director of the Office of Budget Management, had encouraged plaintiff to apply for a GS-12 position that he intended to fill, although he never promised her the job. (Def.'s Facts ¶ 51.) By January 2005, Mary Jane Miller had become the new director, and she decided to delay filling the position until she learned more about the office. (*Id.* ¶ 52.) Rather than filling the GS-12 position, Ms. Miller cancelled the vacancy announcement and had another employee, an African-American female, perform the relevant duties. (*Id.*)

Plaintiff does not dispute the above explanation for the job vacancy cancellation. (Pl.'s Opp'n 9.) Nevertheless, she has asserted an alternative theory for why she did not get the position. Plaintiff believes that Debbie Clark, her supervisor at the time, cancelled the vacancy in retaliation for plaintiff's complaints to the Equal Employment Opportunity Commission ("EEOC") in 2003 and 2004. (Pl.'s Opp'n 37.)

---

[2] Because the Court examines all facts in the light most favorable to plaintiff, it relies on defendant's statement of facts only when they are not disputed by plaintiff.

Plaintiff's claims are not limited to non-promotions. She has cited several incidents that she claims constitute evidence of the DOI's discriminatory and retaliatory animus and a hostile work environment. First, beginning in March 2002, plaintiff was denied access to the internet, as well as other computer systems. (Pl.'s Opp'n 4.) Plaintiff acknowledges that this occurred during a period when others, including white males under the age of 40, were also denied access because of an ongoing class-action lawsuit against the DOI. (Def.'s Facts ¶ 49.) *See also Cobell v. Kempthorne*, No. 96-CV-1285 (JR) (D.D.C. filed June 10, 1996).

Second, as part of a reorganization in 2001, plaintiff was moved from her office in the main DOI building to another location on G Street. (Def.'s Facts ¶ 44.) Plaintiff found the work facilities at the G Street building to be "inadequate" and she had to walk three blocks to the main building in order to perform her duties. (Compl. ¶¶ 32, 36.) Plaintiff complained to James McDivitt, her supervisor at the time, but no changes were made until the end of the lease on the G Street building. (*Id.* ¶ 35.)

Third, in January 2005 plaintiff was at home on leave because of a back injury. (Compl. ¶ 46.) Debbie Clark had a subordinate ask plaintiff to come into the office to pack up her belongings because her office was being converted into a conference room. (*Id.* ¶¶ 47, 49; Def.'s Facts ¶ 54.) Plaintiff said that her back injury prevented her from going into the office that day, but she indicated that she would try to come in on the following Monday. (Compl. ¶ 48.) Plaintiff re-injured her back when she tried to pack up her office. (*Id.*)

Fourth, because plaintiff's office had been turned into a conference room, she was deprived of a private office and was not allowed to have a key to the room. (Compl. ¶ 50.) All of the other administrative officers had private offices. (*Id.* ¶ 51.) Also, part of the room was

used as a kitchen sometime starting in March 2005, and plaintiff was disturbed by the smells emanating from the kitchen. (*Id*. ¶ 55; Pl.'s Opp'n 15-16.) Plaintiff requested that a partition be installed so that the kitchen area would be separated from her work area, but this request was denied. (Compl. ¶¶ 56-58.)

Finally, plaintiff alleges that she did not receive any "meaningful or complex work assignments" between 1989 and 2005. (Compl. ¶ 59.)

## II.  PROCEDURAL HISTORY

Plaintiff contacted an EEOC counselor on March 26, 2003, and then filed an administrative complaint on July 2, 2003. (Def.'s Facts ¶ 27.) This initial complaint mentions three of the discrete acts of alleged discrimination and retaliation raised in the instant suit: 1) non-promotions since 1989; 2) lack of access to communications services; and 3) removal from the main DOI building to another location three blocks away. (Def.'s SJ Mot., Exh. P.) Plaintiff amended her complaint in August 2003 and February 2004, but these amendments do not refer to any claims currently before the Court. (*Id*., Exhs. Q, R.) Plaintiff made additional amendments in February and April of 2005, alleging a hostile work environment, as well as discrete acts of discrimination and retaliation with respect to a failure to promote on February 11, 2005; a request to pack office supplies that led to a back injury; the denial of a private office and a key to that office; and the denial of a partition wall. (Pl.'s Admis. No. 24; Def.'s SJ Mot., Exh. S.)

Administrative Law Judge Richard E. Schneider reviewed plaintiff's allegations, as well as two EEOC investigative reports and pleadings from both parties. (Def.'s SJ Mot., Exh. S,1.) On February 6, 2006, the ALJ rejected all of plaintiff's claims and granted summary judgment to defendant. (*Id*. 13.) Plaintiff filed this action on June 22, 2006, alleging seven discrete acts of

discrimination and retaliation, as well as a hostile work environment. (Pl.'s Opp'n 3-4; Compl. 1.) Now that discovery is complete, defendant has moved to dismiss, or in the alternative, for summary judgment.

## ANALYSIS

### I.  EXHAUSTION

Defendant moves to dismiss many of plaintiff's discrimination and retaliation claims on the basis that she failed to exhaust her administrative remedies before bringing suit. (Def.'s SJ Mot. 8-13.) Lodging a timely administrative charge is a prerequisite to filing a Title VII or ADEA claim in federal court. *See Jarrell v. U.S. Postal Serv.*, 753 F. 2d 1088, 1091 (D.C. Cir. 1985). An employee of the federal government complaining of discrimination or retaliation must consult an EEOC counselor within forty-five days of the allegedly discriminatory action, or in the case of a personnel action, within forty-five days of its effective date, in order to try to informally resolve the matter. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally, the employee may then file a formal complaint of discrimination against the agency, following which the agency is obligated to investigate the matter within 180 days. *Robinson v. Chao*, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); *see also* 29 C.F.R. §§ 1614.105(d), 108(e). After the conclusion of the agency's investigation, the employee may either request a hearing and decision from an administrative law judge or seek an immediate final decision from the agency. *Robinson*, 403 F. Supp. 2d at 28; *see also* 29 C.F.R. § 1614.108(f). A complainant may either appeal a decision to the EEOC or file a civil action in federal district court, where he can challenge only those allegations that were contained in the EEOC complaint, or those that are "like or reasonably related to the allegations of the charge and grow[] out of such allegations."

*Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  The exhaustion requirement also "precludes recovery for discrete acts of discrimination or retaliation that occur outside of the statutory time period" even when the acts "are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 113 (2002).

These procedural requirements governing a plaintiff's right to bring a Title VII or ADEA claim in federal court are not trivial.  "[I]t is part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining non-discrimination in employment."  *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983) (internal citations omitted).  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."  *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  The deadlines allow an employer to quickly investigate before evidence becomes stale.  *See Delaware State College v. Ricks*, 449 U.S. 250, 256-57 (1980) (noting that the exhaustion requirement protects employers from the burden of defending claims that arise from decisions that were made long ago).  Dismissal results when a plaintiff fails to exhaust administrative remedies.  *See Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing plaintiff's Title VII claim because he failed to exhaust his administrative remedies).  But failure to exhaust is an affirmative defense, and the burden rests with the defendant.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Marsh*, 777 F.2d at 13.

Given that plaintiff first contacted her EEOC counselor on March 26, 2003, any discrete acts of discrimination or retaliation arising more than forty-five days earlier than this date (*i.e.*,

February 9, 2003) were not exhausted. *See* 29 C.F.R. § 1614.105(a)(1). Consequently, the only surviving non-promotion claim is the alleged denial of a promotion on February 11, 2005, as this is the only specific claim occurring after February 9, 2003.[3] Likewise, plaintiff's claims regarding her lack of internet access, and her move to the G Street building, arose prior to February 9, 2003, and were therefore not properly exhausted.[4]

In contrast, plaintiff's hostile work environment claim was properly exhausted. The exhaustion requirement for a hostile work environment claim is more forgiving than that for discrete acts of discrimination or retaliation, for if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered." *Morgan*, 536 U.S. at 117.

---

[3]Plaintiff also makes a conclusory claim that she was denied promotions from 1989 to 2005. (Comp. ¶ 13.) However, vague allegations of ongoing discrimination are insufficient, since a plaintiff is required to identify specific incidents of discrimination. *See Morgan*, 536 U.S. at 114.

[4]Plaintiff argues that she has exhausted her claims even though they occurred prior to February 9, 2003, since they continued past this date. (Pl.'s Opp'n 26-27.) As an example, she notes that she was still working at the G Street building in 2004 and thus had to walk the three blocks to the main DOI building during the relevant time period. (*Id*. 27.) This argument is simply legally incorrect. As made clear by the Supreme Court, "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts bec[o]me most painful," and "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257-58. *See also Chardon v. Fernandez*, 454 U.S. 6 (1981); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162 (2007).

## II. PLAINTIFF'S TITLE VII/ADEA CLAIMS

### A. Governing Law

Traditionally, courts have examined Title VII and ADEA claims for discrimination and retaliation under the familiar three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973): 1) plaintiff has the burden of making a *prima facie* showing of discrimination or retaliation; 2) the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action; and 3) plaintiff must prove that the employer's stated reason was mere pretext for discrimination or retaliation). *See also Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying the *McDonnell Douglas* framework to ADEA cases as well). However, the D.C. Circuit has recently clarified the *McDonnell Douglas* analysis where an employer has moved for summary judgment in cases where plaintiff is a member of a protected class and has alleged an adverse action, but the employer has proffered a legitimate, non-discriminatory explanation for its action. In such cases, a court need not decide if plaintiff has produced evidence sufficient to support an inference of discrimination or retaliation, but instead it should proceed directly to the third step of *McDonnell Douglas* and decide whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." *Brady v. Office of the Sergeant at Arms*, No. 06-5362, 2008 WL 819989, at *3 (D.C. Cir. Mar. 28, 2008).

### B. Adverse Action Inquiry

Plaintiff has alleged four discrete claims of discrimination that survive defendant's

exhaustion challenge.[5]  In considering the merits of these claims, the Court must first determine whether any of the conduct underlying the claims constituted an adverse action.  "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find *objectively tangible harm*."  *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)) (emphasis added).  "[N]ot everything that makes an employee unhappy is an actionable adverse action."  *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (internal quotation marks omitted).  "Mere idiosyncracies of personal preference are not sufficient to state an injury."  *Brown*, 199 F.3d at 457.  Accordingly, the D.C. Circuit has defined an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (internal citations omitted).  Applying this precedent, the Court concludes that three of the surviving claims do not constitute adverse actions.

As for her claim that she hurt her back packing office supplies, plaintiff contends that in January 2005 she was at home on leave because of a previous back injury.  (Compl. ¶ 46.)  Debbie Clark, Deputy Assistant Secretary for Management, had a DOI employee call plaintiff at home and ask her to come pack her belongings because her office was being converted to a conference room.  (*Id*. ¶ 47; Def.'s Facts ¶ 54.)  Plaintiff said that her back injury prevented her

---

[5]These include her claims relating to: 1) the non-promotion on February 11, 2005; 2) the DOI's request that she pack office supplies, which led to a back injury; 3) the denial of a private office and a key to that office; and 4) the denial of a partition wall in her office.

from doing any packing that day, but she offered to do it on the following Monday. (Compl. ¶ 48.) When plaintiff did pack her belongings, she re-injured her back. (*Id.*)

Plaintiff argues that defendant "forced" her to do something that it knew would injure her. (Pl.'s Opp'n 39.) While this alleged conduct might sustain some other type of claim, it is not an adverse action within the meaning of Title VII or the ADEA. There was no "significant change in employment status." *Taylor*, 350 F.3d at 1293 (internal citations omitted). Nor was there a material affect on the "terms, conditions, or privileges" of plaintiff's employment. *Forkkio*, 306 F.3d at 1131 (internal citations omitted). To qualify as an adverse action, the incident must be inherently related to plaintiff's employment status, such as a termination, demotion or change in benefits. Events that merely have an *effect* on plaintiff's work environment are legally insufficient. *See Russell*, 257 F.3d at 818. Therefore, plaintiff's claim regarding the packing request must be dismissed.

Two of plaintiff's other claims fail for similar reasons. Plaintiff complains that she was deprived of a private office and was not given a key to her office because it had been turned into a conference room, and that she was not allowed to install a partition in her office in order to separate her workspace from a common area that included a kitchen. (*Id.* ¶¶ 50, 55-58.) Again, both claims deal with plaintiff's work environment rather than her employment status and therefore, they must be dismissed as well. Thus, with the exception of her claim that she was not promoted in February 2005, her remaining discrimination claims fail because they do not constitute adverse actions.

### C.  Pretext Inquiry

For the sole remaining discrimination claim, the non-promotion on February 11, 2005,

the Court utilizes the *Brady* test. Under *Brady*, the Court must determine if plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." *Brady*, 2008 WL 819989, at *3.

Defendant has asserted a non-discriminatory explanation for cancelling the February 2005 vacancy. Upon assuming the role of Director of the Office of Budget Management in January 2005, Mary Jane Miller decided to delay any hiring decisions until she learned more about her new office. (Def.'s Facts ¶ 52.) She soon decided that she did not need to hire anyone because an existing employee, who was an African-American female, was already performing the duties associated with the proposed position. (*Id.*) Ms. Miller never reviewed any applications for the open position. (*Id.*)

Plaintiff has failed to rebut this legitimate explanation.[6] Importantly, plaintiff does not even dispute any of the facts underlying defendant's non-discriminatory reason for cancelling the vacancy.[7] (Def.'s Facts ¶¶ 51-52; Pl.'s Opp'n 9.) Summary judgment is appropriate when an

---

[6]Plaintiff appears to believe that her sole burden is to establish a *prima facie* case. (Pl.'s Opp'n 40-41.) However, this is clearly wrong. Under *Brady*, plaintiff must also demonstrate sufficient evidence to prove that a reasonable juror could find that the employer's asserted non-discriminatory reason is mere pretext. *See Brady*, 2008 WL 819989, at *3.

[7]Instead of contesting defendant's asserted reason, plaintiff argues, without evidentiary support, that "[i]t is inconceivable that Ms. Miller decided to cancel the vacancy announcement because she had a GS-7 administrative assistant that would do the work." (Pl.'s Opp'n 37.) Plaintiff also contends that the vacancy was cancelled in retaliation for her filing amended EEOC complaints. (*Id.*) However, under *Brady*, plaintiff must produce sufficient evidence that defendant's asserted reason for cancelling the vacancy was mere pretext, *Brady*, 2008 WL 819989, at *3, which is impossible here because plaintiff has conceded the factual basis for defendant's assertion. *See* Pl.'s Opp'n 9. Thus, plaintiff's speculative explanation for the cancellation of the vacancy is insufficient under *Brady* to raise an issue of fact for a jury.

employer cancels a vacancy for legitimate, non-discriminatory reasons. *See e.g.*, *Lester v. Natsios*, 290 F. Supp. 2d 11, 26 (D.D.C. 2003) (granting summary judgment when "defendant has convincingly explained that the vacancy was cancelled because the responsible manager wanted to recast the position differently, as to both its grade and function. Plaintiff offers no rebuttal of this explanation, nor does she cast any doubt on its validity."); *Carter v. Pena*, 14 F. Supp. 2d 1, 6 (D.D.C. 1997) ("the plaintiff failed to establish a prima facie case because no one was ever hired for the vacant position, and the vacancy was ultimately canceled"), *aff'd* 1998 WL 315616, at *1 (D.C. Cir. Apr. 8, 1998). Therefore, the Court will grant summary judgment with respect to the February 2005 non-promotion claim.

### D. Plaintiff's Retaliation Claims

Having dismissed several discrete retaliation claims because of failure to exhaust, the Court will now turn to the remaining acts of alleged retaliation. To establish a *prima facie* case of retaliation, plaintiff must demonstrate that (1) she engaged in a statutorily protected activity; (2) the employer took an adverse employment action; and (3) there is a causal relationship between the two.[8] *Clipper v. Billington*, 414 F. Supp. 2d 16, 25 (D.D.C. 2006); *Brown*, 199 F.3d

---

[8]There are two ways to show causation. First, "a plaintiff may raise a presumption of causation by showing that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter." *Vance v. Chao*, 496 F. Supp. 2d 182, 186 (D.D.C. 2007) (relying on *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). When plaintiffs rely on a presumption of causation, this Court typically requires that no more than three months have elapsed from the time of the protected activity to the occurrence of the adverse action. *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007). Second, a plaintiff can introduce direct evidence that the adverse action would not have occurred but for the protected activity. *See Vance*, 496 F. Supp. 2d at 186 (relying on *Timmons v. U.S. Capital Police Bd.*, 407 F. Supp. 2d 8, 12 (D.D.C. 2005). Plaintiffs demonstrating retaliation with direct evidence are not limited by the temporal proximity requirements of the presumption method. *See id.* Because plaintiff has not presented direct evidence of retaliation, her claims are subject to the Court's "three-month rule." *Id.* Three of the surviving retaliation claims -- *i.e.*, the request to pack her office,

at 452; *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). Again, while plaintiff is not required to plead each element of this *prima facie* case to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), the Court may explore the plaintiff's *prima facie* case at the dismissal stage to determine "whether the plaintiff can ever meet his initial burden to establish a *prima facie* case." *Rochon v. Ashcroft*, 319 F. Supp. 2d, 23, 29 (D.D.C. 2005).

As discussed herein, the Court has determined that three of the four surviving claims do not constitute adverse actions for discrimination purposes. The question here is whether these allegations can nonetheless survive as retaliation claims.

In *Burlington N. & Sante Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the Supreme Court explained that the "anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 2414. The *White* Court defined the requisite harm for a retaliation claim as an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 2415 (quoting *Rochon*, 438 F.3d at 1219). An adverse action in the retaliation context may involve something short of what ordinarily would be considered a "personnel action" (*e.g.*, denial of promotion, discharge, salary reduction), but a plaintiff nonetheless must point to an action that a "reasonable employee would have found . . . materially adverse." *White*, 126 S. Ct. at 2415; *see also Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

---

the lack of a private office, and the non-promotion -- fail the temporal proximity test, as they took place approximately one year after plaintiff amended her complaint in February 2004, but before she amended her complaint on February 24, 2005. (Compl. ¶¶ 4, 5, 37, 45, 50.) However, as explained below, these claims fail for other reasons as well.

For the reasons already explained, even under this more expansive definition, these three claims are not actionable as retaliation under Title VII or the ADEA. Plaintiff does not allege any adverse consequence, much less a *materially* adverse consequence, that resulted from having to pack her office supplies. At most, this incident could raise other causes of actions, such as a worker's compensation claim. Likewise, the two claims involving her office are merely minor grievances about a workplace environment and have nothing to do with her status as an employee. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 126 S. Ct. at 2415. Therefore, because no reasonable juror could find that these common workplace grievances would deter a *reasonable* employee from making or supporting a charge of discrimination, these three retaliation claims must be dismissed.

Plaintiff's remaining retaliation claim, which involves the non-promotion in February 2005, also fails. As previously discussed, defendant has asserted a legitimate, non-discriminatory reason for cancelling the job vacancy, and plaintiff does not dispute the factual basis underlying defendant's explanation. (Def.'s Facts ¶¶ 51-52; Pl.'s Opp'n 9.) She has therefore failed to introduce any evidence that would permit a trier of fact to believe that defendant's proffered rationale for its decision to cancel the vacancy was pretextual or that its decision was motivated by a retaliatory animus. *See Brady*, 2008 WL 819989, at *3.

### III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

In addition to plaintiff's discrete claims of discrimination and retaliation, she also argues that these incidents, along with her claim that she "has not been given any meaningful or complex work assignments" (Compl. ¶ 59), collectively constitute a hostile work environment.

This claim is legally insufficient. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117 (internal quotation marks omitted). The workplace becomes "hostile" for purposes of a Title VII claim only when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

While a plaintiff is not required to plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must be able to support such a claim. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). In determining whether an environment is sufficiently hostile or abusive to support a claim, courts must look at "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23). "[N]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Stewart*, 275 F.3d at 1133 (quoting *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999)). The "conduct must be *extreme* to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (emphasis added). This standard is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs.* 523 U.S. 75, 80 (1998)).

It is apparent that plaintiff fundamentally misunderstands the nature of a hostile work

environment claim. Title VII does not provide a cause of action for the "ordinary tribulations of the workplace," *Faragher*, 524 U.S. at 788, and "not everything that makes an employee unhappy is an actionable adverse action" under Title VII. *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C. 1997) (quoting *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692-93 (8th Cir. 1997)) (internal quotation marks omitted), *aff'd*, 1998 WL 389101, at *1 (D.C. Cir. Jun. 30, 1998). Instead, a hostile work environment claim must be based on incidents comprising "one unlawful employment practice" of intimidation, insult and ridicule that pervades plaintiff's day-to-day working life. *Morgan*, 536 U.S. at 118; *see also Harris*, 510 U.S. at 21-22; *Singletary v. Dist. of Columbia*, 351 F.3d 519, 527 (D.C. Cir. 2003) (Plaintiff must demonstrate that "the acts about which [he] complains are part of the same actionable hostile work environment practice." (quoting *Morgan*, 536 U.S. at 120) (internal quotation marks omitted)).

Plaintiff cannot satisfy this standard. None of the acts alleged by plaintiff, whether considered alone or cumulatively, meets the demanding standards for a hostile work environment claim under Title VII. In fact, even genuinely troublesome conduct is not sufficient when the incidents are spread out over a period of years, as is the case here. *See Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97-99 (D.D.C. 2007) (granting employer's summary judgment motion despite five incidents of sexual harassment over a two-year period, including physical acts such as the unconsented touching of the plaintiff's buttocks). Moreover, the acts that plaintiff complains about are simply common workplace grievances, and are not the type of "extreme" conduct necessary to support a hostile work environment claim, *Faragher*, 524 U.S. at 788, and they certainly "do not demonstrate a work environment that was pervaded by discrimination." *Singh v. U.S. House of Reps., Comm. on Ways & Means*, 300 F. Supp. 2d 48,

56 (D.D.C. 2004).

In addition, plaintiff cannot rely on the discrete acts on which she bases her discrimination and retaliation claims, including her claim that she was denied promotions from 1989 to 2005, for she should not be permitted to "bootstrap" her alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim. *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005). "Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33; *see also Wada v. Tomlinson*, 517 F. Supp. 2d 148, 210-11 (D.D.C. 2007); *Silver v. Leavitt*, Civ. No. 05-0968 (JDB), 2006 WL 626928, at *12 (D.D.C. Mar. 13, 2006). "[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address." *Parker v. State Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998). A hostile work environment under Title VII must be based on "one unlawful employment practice" of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely "abusive." *Morgan*, 536 U.S. at 118; *Oncale*, 523 U.S. at 81. Therefore, cobbling together a number of distinct, disparate acts will not create a hostile work environment. For example, if an employee is discriminatorily denied ten promotions over a period of time, that pattern of conduct may give rise to ten separate disparate treatment claims under Title VII, but it would not create a hostile work environment claim based on pervasive intimidation, insult and ridicule. This is particularly true here because plaintiff

failed to exhaust administrative remedies with respect to many of the discrimination and retaliation claims that she now appears to incorporate into a hostile work environment claim. *See Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005) (A "plaintiff cannot cure his failure to timely exhaust his complaints about [certain] incidents by sweeping them under the rubric of a hostile work environment claim.").

Therefore, even assuming the truth of all of plaintiff's allegations and drawing all inferences in her favor, the Court nonetheless holds that plaintiff cannot state a claim for hostile work environment. Plaintiff must show far more than a lack of resources, arguably insensitive requests that she pack her office, or less than ideal working conditions to establish a hostile work environment. Even assuming that the actions plaintiff cites were all motivated by unlawful discrimination (an assumption that has no support in the record),[9] the totality of the incidents alleged does not establish a pattern of "severe or pervasive" conduct that altered the conditions of plaintiff's working environment. *See Oncale*, 523 U.S. at 81. Accordingly, plaintiff's hostile work environment claim fails as a matter of law.

---

[9]Although plaintiff points to a handful of isolated incidents over a five-year span, she has failed to produce any evidence that they are motivated by a discriminatory or retaliatory animus. *See Lester*, 290 F. Supp. 2d at 32 (without "evidence of any racial element to either [alleged] event," defendants were entitled to summary judgment on hostile work environment claim); *Irvine v. Video Monitoring Servs. of Am. L.P.*, No. 98 Civ. 8725 (NRB), 2000 WL 502863, at *4 (S.D.N.Y. May 4, 2000) (four e-mails "reflect[ed] a clash of personalities between co-workers and general animosity rather than specifically age-based harassment."); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 140 (D.D.C. 2006) ("Rather than arising from any discriminatory [or retaliatory] animus . . . , this harassment appears quite clearly to have arisen from personal conflicts between plaintiff and her . . . supervisors."); *Moses v. City of New York*, No. 06 Civ. 5974 (JSR), 2007 WL 2600859, at *1 (S.D.N.Y. Aug. 28, 2007) ("The anti-discrimination laws do not require defendants to be good managers; they require only that defendants not discriminate on the basis of a protected status.").

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, or in the alternative, motion for summary judgment [Dkt. # 19] is granted. A separate Order accompanies this Memorandum Opinion.

```
                                    /s/
                        ELLEN SEGAL HUVELLE
                        United States District Judge
```

Date: May 13, 2008